TRENTON H. NORRIS (CA Bar No. 164781)
trent.norris@hoganlovells.com
DAVID M. BARNES (CA Bar No. 318547)
david.barnes@hoganlovells.com
ALEXANDER TABLAN (CA Bar No. 346309)
alexander.tablan@hoganlovells.com
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone:     415.374.2300
Facsimile:      415.374.2499

GREGORY G. SPERLA (CA Bar No. 278062)
greg.sperla@dlapiper.com
DLA PIPER LLP
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Telephone:     916.930.3200
Facsimile:      916.930.3201

Attorneys for Plaintiff
THE PERSONAL CARE PRODUCTS COUNCIL

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PERSONAL CARE PRODUCTS COUNCIL,<br><br>        Plaintiff,<br><br>    v.<br><br>ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>        Defendant. | No.  2:23-CV-01006-TLN-JDP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge:       Hon. Troy L. Nunley<br>Date:        November 16, 2023<br>Time:       2:00 p.m.<br>Room:     2 (15th Floor)<br>Action Filed:  May 26, 2023 |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATUTORY BACKGROUND............................................................................................ 2

FACTUAL BACKGROUND ................................................................................................ 5

ARGUMENT ........................................................................................................................ 7

    I.    PCPC Is Likely To Succeed On The Merits. ........................................................ 8

        A.    The Required Warning Does Not Satisfy Zauderer. .................................. 9

            1.    Proposition 65 requires a message that products containing Listed Titanium Dioxide will increase consumers' risk of cancer............. 9

            2.    The required warning for Listed Titanium Dioxide is false.......... 11

            3.    The required warning is highly controversial. .............................. 13

        B.    The Required Warning Is Unjustified and Unduly Burdensome. .............. 14

        C.    The Required Warning Cannot Withstand Heightened Scrutiny............... 17

    II.    The Remaining Equitable Factors Weigh In Plaintiff's Favor............................. 18

CONCLUSION .................................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

1

**Cases**

2

*A Woman's Friend Pregnancy Res. Clinic v. Becerra*,

3

    901 F.3d 1166 (9th Cir. 2018)................................................................8

4

*Abrams v. United States*,

    250 U.S. 616 (1919) (Holmes, J., dissenting) ........................................13

5

*AFL-CIO v. Deukmejian*,

6

    212 Cal. App. 3d 425 (1989).................................................................3

7

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,

8

    916 F.3d 749 (9th Cir. 2019)......................................................... *passim*

9

*B&G Foods N. Am., Inc. v. Embry*,

    29 F.4th 527 (9th Cir. 2022)................................................................16

10

*Bonta v. Nat'l Ass'n of Wheat Growers, et al.*,

11

    No. 20-16758 (argued and submitted Apr. 19, 2023) .............................1

12

*Brown v. Cal. Dep't of Transp.*,

13

    321 F.3d 1217 (9th Cir. 2003)..............................................................19

14

*Cal. Chamber of Com. v. Becerra*,

    529 F. Supp. 3d 1099 (E.D. Cal. 2021) (Mueller, C.J.) .................... *passim*

15

*Cal. Chamber of Com. v. Brown*,

16

    196 Cal. App. 4th 233 (2013)...............................................................14

17

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,

    29 F.4th 468 (9th Cir. 2022)......................................................... *passim*

18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,

19

    447 U.S. 557 (1980)..............................................................8, 17, 18

20

*Consumer Cause, Inc. v. SmileCare*,

21

    91 Cal. App. 4th 454 (2001) (Vogel, J., dissenting) ..............................17

22

*Consumer Def. Grp. v. Rental Hous. Indus. Members*,

23

    137 Cal. App. 4th 1185 (2006)..........................................................5, 17

*CTIA-The Wireless Ass'n v. City of Berkeley*,

24

    928 F.3d 832 (9th Cir. 2019)..............................................................19

25

*DiPirro v. Bondo Corp.*,

26

    153 Cal. App. 4th 150 (2007)................................................................5

27

*Doe v. Harris*,

    772 F.3d 563 (9th Cir. 2014)..............................................................19

28

**MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.**

## TABLE OF AUTHORITIES

**Page(s)**

*Dowhal v. SmithKline Beecham Cons. Healthcare,*
    32 Cal. 4th 910 (2004) .................................................................................9, 10

*Edenfield v. Fane,*
    507 U.S. 761 (1993) .........................................................................................18

*Elrod v. Burns,*
    427 U.S. 347 (1976) .........................................................................................19

*Env't Law Found. v. Beech-Nut Nutrition Corp.,*
    235 Cal. App. 4th 307 (2015) ..........................................................................17

*Italian Colors Rest. v. Becerra,*
    878 F.3d 1165 (9th Cir. 2018) ..........................................................................18

*Johnson v. Am. Standard, Inc.,*
    43 Cal. 4th 56 (2008) ................................................................................14, 20

*Lopez v. Brewer,*
    680 F.3d 1068 (9th Cir. 2012) ............................................................................8

*Maryland v. Joseph H. Munson Co.,*
    467 U.S. 947 (1984) .........................................................................................15

*McCullen v. Coakley,*
    573 U.S. 464 (2014) .........................................................................................13

*Monsanto v. OEHHA,*
    22 Cal. App. 5th 534 (2018) ..............................................................................3

*Nat'l Ass'n of Wheat Growers v. Becerra,*
    468 F. Supp. 3d 1247 (E.D. Cal. 2020) .......................................................1, 18

*Nat'l Ass'n of Wheat Growers v. Zeise,*
    309 F. Supp. 3d 842 (E.D. Cal. 2018) (Shubb, J.) ................................. *passim*

*Nat'l Inst. of Family & Life Advoc. v. Becerra,*
    138 S. Ct. 2361 (2018) ............................................................................ *passim*

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) .........................................................................................15

*Nicolle-Wagner v. Deukmejian,*
    230 Cal. App. 3d 652 (1991) .....................................................................14, 20

*Nken v. Holder,*
    556 U.S. 418 (2005) .........................................................................................19

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.,*
    475 U.S. 1 (1986) (plurality opinion).................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
  487 U.S. 781 (1988) ...............................................................................8, 15, 16

*In re Roundup Prods. Liab. Litig.*,
  390 F. Supp. 3d 1102 (N.D. Cal. 2018) ...............................................................3

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) ...........................................................................................18

*Styrene Info. & Rsch. Ctr. v. Off. of Env't Health Hazard Assessment*,
  210 Cal. App. 4th 1082 (2012) .............................................................................2

*Thompson v. Cnty. of Alameda*,
  27 Cal. 3d 741 (1980) ...................................................................................19, 20

*Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) .............................................................................................9

*Video Software Dealers Ass'n v. Schwarzenegger*,
  556 F.3d 950 (9th Cir. 2009) ...................................................................9, 12, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...........................................................................................7, 19

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
  471 U.S. 626 (1985) .........................................................................................8, 9

**Statutes**

United States Code

21 U.S.C. § 379e(b)(5)(B).......................................................................................5

21 U.S.C. § 355h(a)(2)............................................................................................5

California Code of Civil Procedure

Cal. Code Civ. P. § 1021.5......................................................................................5

California Health & Safety Code

Cal. Health & Safety Code § 25249.6...............................................................2, 3, 9

Cal. Health & Safety Code § 25249.7(a)................................................................4

Cal. Health & Safety Code § 25249.7(b)................................................................4

Cal. Health & Safety Code § 25249.7(c)................................................................4

Cal. Health & Safety Code § 25249.7(d)................................................................4

iv

## TABLE OF AUTHORITIES

Page(s)

Cal. Health & Safety Code § 25249.7(d)(1) .......................................................5

Cal. Health & Safety Code § 25249.8 ...............................................................2

Cal. Health & Safety Code § 25249.8(a) ........................................................2, 3

Cal. Health & Safety Code § 25249.8(b) ...........................................................3

Cal. Health & Safety Code § 25249.10(b) ..........................................................7

Cal. Health & Safety Code § 25249.10(c) ..................................................4, 5, 17

Cal. Health & Safety Code § 25249.12(d) .......................................................4, 5

California Labor Code

Cal. Labor Code § 6382(b)(1) .........................................................................3

**Regulations**

Code of Federal Regulations

21 C.F.R. § 73.157 ........................................................................................5

21 C.F.R. § 73.575 ........................................................................................5

21 C.F.R. § 73.2575(b) ...................................................................................5

California Code of Regulations

Cal. Code Regs. Tit. 11, § 3200 .......................................................................10

Cal. Code Regs. Tit. 27, § 25501 .....................................................................20

Cal. Code Regs. Tit. 27, § 25601 ..................................................................3, 10

Cal. Code Regs. Tit. 27 § 25603(a)(2)(A) .......................................................4, 10

Cal. Code Regs. Tit. 27, §§ 25703 *et seq.* ..........................................................4

Cal. Code Regs. Tit. 27, § 25703(b) .................................................................16

Cal. Code Regs. Tit. 27, § 25705 ......................................................................4

Cal. Code Regs. Tit. 27, § 25721(d)(4) ..............................................................16

Cal. Code Regs. Tit. 27, § 25904(a) ...................................................................3

Cal. Code Regs. Tit. 27, § 25904(b) ...................................................................3

Cal. Code Regs. Tit. 27, § 25904(c) ...................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

This case calls on this Court for the third time to evaluate whether a California Proposition 65 warning requirement can be squared with the First Amendment's requirement that government-compelled speech be "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics* ("*CalChamber*"), 29 F.4th 468, 477 (9th Cir. 2022) (quoting *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019)).  This Court has twice ruled in as-applied challenges that Proposition 65 fails or is likely to fail this Constitutional standard.  It should do so again here.

The first challenge addressed the warning requirement for glyphosate, a pesticide that the U.S. EPA has determined is unlikely to cause cancer in humans.  This Court preliminarily enjoined the enforcement of Proposition 65 as to glyphosate because "[i]t is inherently misleading for a warning to state that a chemical is known to the state of California to cause cancer based on the finding of one organization . . . when apparently all other regulatory and governmental bodies have found the opposite."  *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 852 (E.D. Cal. 2018) (Shubb, J.) ("*Wheat Growers I*").  The Court ultimately found that Proposition 65's warning requirement as to glyphosate violates the First Amendment and therefore granted summary judgment against the State.  *Nat'l Ass'n of Wheat Growers v. Becerra*, 468 F. Supp. 3d 1247, 1265 (E.D. Cal. 2020) ("*Wheat Growers II*").[1]

In the second challenge, this Court preliminarily enjoined the enforcement of Proposition 65 as to acrylamide, a chemical formed naturally in cooking many foods, because, among other things, "[t]he State has not shown that the cancer warnings it requires are purely factual and uncontroversial," and they are "controversial because [they] elevate[] one side of a legitimately unresolved scientific debate about whether eating foods and drinks containing acrylamide increases the risk of cancer."  *Cal. Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1103, 1117 (E.D. Cal. 2021) (Mueller, C.J.).  The Ninth Circuit upheld that decision and this Court's determination

---

[1] The Ninth Circuit is now reviewing that judgment on appeal.  *Bonta v. Nat'l Ass'n of Wheat Growers, et al.*, No. 20-16758 (argued and submitted Apr. 19, 2023).

that the challenge was likely to succeed on the merits. *CalChamber*, 29 F.4th at 480. That injunction remains in place while the case proceeds to summary judgment.

This case presents a similar challenge, this time with respect to "titanium dioxide (airborne, unbound particles of respirable size)"—a substance referred to for brevity as Listed Titanium Dioxide. As with the chemicals at issue in the prior two cases, the State of California has not determined that this substance causes cancer in humans. Instead, California law required it to be listed based solely on a determination by a foreign "authoritative body"—the International Agency for Research on Cancer ("IARC")—based on studies in laboratory animals. *Styrene Info. & Rsch. Ctr. v. Off. of Env't Health Hazard Assessment*, 210 Cal. App. 4th 1082, 1089 (2012) (describing "Labor Code" listing mechanism under Health & Safety § 25249.8). Notably, IARC determined that the chemicals at issue in the prior two cases (glyphosate and acrylamide) are "*probably* carcinogenic to humans" but that Listed Titanium Dioxide is only "*possibly* carcinogenic to humans" with "inadequate evidence" of that it causes cancer in humans.

Indeed, as discussed below, experts agree that it is all but certain that Listed Titanium Dioxide does *not* cause cancer in humans. Nevertheless, Proposition 65 still requires warnings for Listed Titanium Dioxide in cosmetic products used by humans. And those humans overwhelmingly interpret the warnings to mean that using these products increases their risk of cancer. As with warnings for glyphosate and acrylamide, with respect to Listed Titanium Dioxide the State of California therefore compels speech that is far from factual, at best controversial, and in the context of a private enforcement regime that is unjustified and unduly burdensome. Because the First Amendment prohibits such compulsion, the Court should enter a preliminary injunction against enforcement of Proposition 65 as to Listed Titanium Dioxide in cosmetics.

## STATUTORY BACKGROUND

Proposition 65 prohibits businesses with ten or more employees from knowingly and intentionally exposing Californians to chemicals "known to the state to cause cancer" without providing required warnings. Cal. Health & Safety Code § 25249.6. The State's Office of Environmental Health Hazard Assessment ("OEHHA") maintains "a list of those chemicals known to the state to cause cancer." *Id.* § 25249.8(a). OEHHA is required to list a chemical as "known to

the state to cause cancer" if it is so identified by an "authoritative body." *Id.* § 25249.8(b). OEHHA can list chemicals under this mechanism based on evidence they cause cancer in laboratory animals alone. *AFL-CIO v. Deukmejian,* 212 Cal. App. 3d 425, 441 (1989).

Indeed, California law *requires* that a chemical be placed on OEHHA's list of "known" carcinogens if IARC classifies it as only "possibly carcinogenic to humans" based on "sufficient evidence . . . [from] experimental animals." Cal. Code Regs. tit. 27, § 25904(b); Cal. Labor Code § 6382(b)(1).   This automatic listing is immune to scientific challenge, despite the weight of scientific authority.   Cal. Code Regs. tit. 27, § 25904(c) (instructing that OEHHA "shall not consider comments related to the underlying scientific basis for classification of a chemical by IARC as causing cancer" before listing a chemical as a carcinogen).  Even if the State's own experts determine there is no evidence the chemical causes cancer in humans, the State still must place it on the list of chemicals "known to the state to cause cancer."  *Monsanto v. OEHHA*, 22 Cal. App. 5th 534, 541 (2018).  Furthermore, considerations of risk are ignored.  Once IARC concludes that a chemical may in any amount be carcinogenic, OEHHA must designate the substance as known to the State to cause cancer, regardless of whether exposures in humans can plausibly reach that amount.  Cal. Code Regs. tit. 27, § 25904(a); *see also In re Roundup Prods. Liab. Litig.*, 390 F. Supp. 3d 1102, 1108 (N.D. Cal. 2018) (explaining that IARC identifies hazards without "evaluat[ing] the risk that the hazard poses at particular exposure levels").

If a product contains a chemical on Proposition 65's list, businesses must provide Californians a "clear and reasonable warning" before "expos[ing] any individual to" the listed chemical. Cal. Health & Safety Code § 25249.6. Proposition 65 does not define the term "clear and reasonable warning." But, for decades, OEHHA's regulations required that the message "clearly communicate that the chemical in question is known to the state to cause cancer." Cal. Code Regs. tit. 27, § 25601 (adopted as Cal. Code Regs. tit. 22, § 12601 (1988); abrogated Aug. 30, 2018). Now, those regulations deem cancer warnings for consumer products, including the cosmetic and personal care products at issue in this case, to be "clear and reasonable" if they state:

⚠ "**WARNING:** This product can expose you to chemicals including [name of one or more chemicals], which is [are] known to the State of California to cause cancer. For more information, go to www.P65Warnings.ca.gov."

27 Cal. Code Regs. § 25603(a)(2)(A). Alternatively, the warning can be provided in a short form:

⚠ "**WARNING:** Cancer – www.P65Warnings.ca.gov."

27 Cal. Code Regs. § 25603(b)(2)(A). These are known as "safe harbor warnings" because they are approved by the State as compliant with Proposition 65 and protect businesses from liability if they use these warnings.  Although other forms of warning are technically permitted, "only the safe harbor warning is actually useable in practice."  *CalChamber*, 29 F.4th at 479.

Proposition 65 provides an affirmative defense to the warning requirement if the business "can show that the exposure poses no significant risk assuming lifetime exposure at the level in question . . . ." Cal. Health & Safety Code § 25249.10(c). This threshold is commonly referred to as the "No Significant Risk Level," or "NSRL." For some listed substances, OEHHA has published a "safe harbor" NSRL, which is a presumptive limit such that a court cannot apply a more stringent NSRL in litigation. Cal. Code Regs. tit. 27, § 25705. The NSRL is not a concentration limit; rather, it is a daily exposure-based limit based on lifetime exposure at that amount each day. Thus, unlike other laws that set concentration-based thresholds, it is not readily apparent from the NSRL and a laboratory test whether there is a duty to warn for a given product.  For other listed substances, including Listed Titanium Dioxide, OEHHA has not designated a "safe harbor" NSRL.  In those circumstances, a defendant must establish in litigation what the appropriate NSRL is for the listed chemical in addition to proving that its product exposes average consumers to a level of the chemical below that standard. *Id.* §§ 25703 *et seq.*

The Attorney General, a district attorney, and certain city attorneys may bring an enforcement action under Health & Safety Code § 25249.7(c).  Absent an affirmative defense, Proposition 65 imposes penalties of up to $2,500 *per day* for *each* failure to provide an adequate warning.  Cal. Health & Safety Code § 25249.7(b).  Proposition 65 authorizes courts as well to enjoin any person who "threatens to violate" the warning requirement. *Id.* § 25249.7(a).

Notably, the statute also permits individuals (even those who have not been injured) to bring private enforcement actions. *Id.* § 25249.7(d). Indeed, it encourages private enforcement by providing a "bounty" of 25 percent of the civil penalty to the private enforcer. *Id.* § 25249.12(d).[2]

---

[2] Attorney fees are also available to private attorneys bringing such claims.  Cal. Code Civ. Proc. § 1021.5.

1   Private enforcers need only file a "certificate of merit" that indicates a legitimate basis for their

2   claim. *Id.* § 25249.7(d)(1). An attorney for a private enforcer can execute a certificate of merit by

3   identifying any product with "a few molecules" of a listed substance and having an expert confirm

4   that "at least in sufficient quantities, substances in those common objects will cause cancer, and are

5   in fact on [OEHHA's] list." *Consumer Def. Grp. v. Rental Hous. Indus. Members*, 137 Cal. App.

6   4th 1185, 1215 (2006). Proposition 65 does not require private enforcers to provide any proof that

7   an exposure exceeds the NSRL. Instead, the burden to prove the opposite—that the exposure *does*

8   *not* exceed the NSRL—rests on the business. Health & Safety Code § 25249.10(c); *DiPirro v.*

9   *Bondo Corp.,* 153 Cal. App. 4th 150, 185 (2007).

10   **FACTUAL BACKGROUND**

11   **Safe Use of Titanium Dioxide in Cosmetics and Personal Care Products**

12   Titanium dioxide is made from minerals and has been widely used in cosmetics and personal

13   care products for decades. Myers Decl., ¶ 7 (noting that over 94,000 such products are currently

14   registered with the State of California). The U.S. Food & Drug Administration has concluded that

15   titanium dioxide may be safely used as a color additive in many products. *Id.*, ¶ 4; 21 C.F.R.

16   § 73.2575(b) (cosmetics); *id.* at § 73.2575(b) (cosmetics intended for use around the eye); *id.* at

17   § 73.575 (food and supplements); *id.* at § 73.157 (drugs); 21 U.S.C. § 355h(a)(2) (sunscreen). The

18   FDA could not have reached these conclusions if it had found that titanium dioxide "induce[s]

19   cancer when ingested by man or animal." *Id.* § 379e(b)(5)(B). The FDA's assessment of the safety

20   of titanium dioxide is consistent with the views of regulators across the globe, including in Canada,

21   Australia, New Zealand, and the United Kingdom. Myers Decl., ¶ 6.

22   **IARC's Classification of Titanium Dioxide**

23   In 2010, IARC published its formal determination that titanium dioxide is "possibly

24   carcinogenic to humans" due to "sufficient evidence" of carcinogenicity in experimental animals.

25   Madl Decl., ¶ 4 (citing *IARC Monographs on the Evaluation of Carcinogenic Risks to Humans*

26   (Vol. 93), at 5 (RJN Ex. A)). IARC based its classification on two studies of titanium dioxide

27   inhalation in rodents:

28   (1) K.P. Lee, et al., *Pulmonary response of rats exposed to titanium dioxide (TiO2)*

*by inhalation for two years*, 79 Toxicology and Applied Pharmacology 179-92
(1985); and
(2) U. Heinrich, et al*., Chronic Inhalation Exposure of Wistar Rats and two
Different Strains of Mice to Diesel Engine Exhaust, Carbon Black, and Titanium
Dioxide*, 7 Inhalation Toxicology 533-56 (1995).

Madl Decl., ¶ 17.   At the same time, IARC also concluded there is "inadequate evidence" of carcinogenicity in humans.   *Id.* ¶ 4.   IARC stated in more detail:   "In summary, the [epidemiological] studies do not suggest an association between occupational exposure to titanium dioxide as it occurred in recent decades in western Europe and North America and risk for cancer." RJN, Ex. A.   To date, there is no reliable epidemiological evidence that inhaled titanium dioxide causes cancer in humans.  Madl Decl., ¶ 2, 43.

In the years that followed, the Lee and Heinrich studies continued to be discredited as evidence that titanium dioxide is carcinogenic in humans.  Madl Decl., ¶ 21.  For example, in 2017, the Committee for Risk Assessment of the European Chemical Agency determined that the Lee study was not "reliable and acceptable" because the doses of airborne titanium dioxide to which the rats were subjected were excessive and caused the rats to experience lung overload.  RJN, Ex. B at 39 (explaining that Lee's "exposure conditions represent excessive exposure which invalidates the results of the Lee et al. (1985) study on their own for classification purposes").  The Committee initially accepted Heinrich's study, prompting the European Commission to issue a regulation that labeled certain forms of titanium dioxide as carcinogenic to humans. RJN, Ex. B.  But, upon finding that it was "implausible" to accept the lung overload in Heinrich's study, the General Court of the European Court of Justice annulled the regulation in 2022.  RJN, Exs. C, D, E (finding that the European Commission's assessment of the "reliability and acceptability" of Heinrich's study was "manifest error").

**OEHHA Listing of Titanium Dioxide (Airborne, Unbound Particles of Respirable Size)**

In 2011, solely "based on IARC's classification," OEHHA placed a form of titanium dioxide—airborne, unbound particles of respirable size—on California's list of chemicals known to the State to cause cancer.  *See* Answer, ¶¶ 5, 43.  OEHHA itself made no determination that titanium dioxide, or more specifically Listed Titanium Dioxide, causes cancer in humans, and it

1    has not done so in the intervening 12 years.  *See id.* ¶ 6.  The listing became effective a year later.

2    Cal. Health & Safety Code § 25249.10(b).

3    **Proposition 65 Enforcement Against Products with Listed Titanium Dioxide**

4    Within just months of the opening enforcement date for this listing, a private enforcer sent

5    the first notices of violation based on Listed Titanium Dioxide in cosmetic products.  Norris Decl.,

6    ¶ 4.  Since then, five other private enforcers have pursued three more rounds of notices, naming

7    hundreds of manufacturers and securing hundreds of thousands of dollars in settlement payments.

8    *Id.*, ¶¶ 5-7.

9    The most recent, and most prolific, round of notices began in July 2021 and continues today.

10   It includes over 300 notices of violation to manufacturers and retailers of color cosmetics and has

11   resulted in settlement agreements with more than two dozen companies for $101,600 in civil

12   penalties and $985,400 in attorney's fees.  *Id.*, ¶ 7.  These notices have resulted in 124 lawsuits by

13   private enforcers now pending in state trial courts across five counties.  *Id.*, ¶ 8.  A petition to

14   coordinate 108 of these suits and refer them to one judge for resolution of pre-trial issues was

15   granted by the statewide Judicial Council in August 2023.  *Id.*  Notices continue to be served on

16   cosmetic companies, with the most recent one issued on September 29, 2023.  *Id.*, ¶ 9.

17                                          **ARGUMENT**

18   PCPC is entitled to a preliminary injunction barring enforcement of Proposition 65's

19   required warnings for Listed Titanium Dioxide in cosmetics and personal care products.  A court

20   may preliminarily enjoin a challenged law that compels speech upon a showing that (1) the plaintiff

21   is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm absent

22   preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in

23   the public interest.  *CalChamber*, 29 F.4th at 477 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555

24   U.S. 7, 20 (2008)).  Within the First Amendment context, where the government must justify its

25   compelled speech, the moving party need only make "a colorable claim that its First Amendment

26   rights have been infringed, or are threatened with infringement" before the burden "shifts to the

27   government to justify the restriction on speech."  *Id.* at 478 (citation and internal quotation marks

28   omitted).

The prerequisites to preliminary injunction exist along a sliding scale—"a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks omitted). For example, a plaintiff may obtain preliminary relief "by showing serious questions go to the merits of its claims and a balance of hardships that tips sharply towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (internal quotation marks omitted). Here, however balanced, all four factors favor PCPC and warrant preliminary injunctive relief.

## I.    PCPC Is Likely To Succeed On The Merits.

Proposition 65's required warning violates the First Amendment as applied to Listed Titanium Dioxide in cosmetics and personal care products.

Proposition 65's warning requirement is a content-based regulation of speech. By requiring manufacturers to provide "a government-drafted script" regarding their products, the required warning "alte[rs] the content" of companies' speech and is therefore "presumptively unconstitutional." *Nat'l Inst. of Family & Life Advoc. v. Becerra* ("*NIFLA*"), 138 S. Ct. 2361, 2371 (2018). That California's law compels speech instead of silence "is without constitutional significance." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988). The First Amendment's protections "necessarily compris[e] the decision of both what to say and what *not* to say." *Id.* at 797. As a result, commercial speech may not be compelled or prohibited unless the regulation of speech "directly advance[s]" a substantial government interest and is no more "extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

A narrow exception to the default rule of heightened scrutiny applies when the government compels speech that is "purely factual and uncontroversial." *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985). Compelled disclosures of this sort may be upheld "unless they are unjustified or unduly burdensome." *NIFLA*, 138 S. Ct. at 2372. The Attorney General cannot invoke *Zauderer*'s narrow exception here, where Proposition 65's

1  required warning for Listed Titanium Dioxide would compel misleading and controversial speech.

2  Heightened scrutiny under *Central Hudson* applies, and Proposition 65's warning cannot survive.

3      **A.**    **The Required Warning Does Not Satisfy *Zauderer*.**

4      The Attorney General cannot avail itself of the relaxed standard that *Zauderer* offers

5  because Proposition 65's required warning for Listed Titanium Dioxide is misleading and

6  controversial. *Zauderer* extends only to regulations on speech that compel disclosure of "purely

7  factual and uncontroversial information." *NIFLA*, 138 S. Ct. at 2372 (quoting *Zauderer*, 471 U.S.

8  at 651). This makes sense. "[T]he extension of First Amendment protection to commercial speech

9  is justified principally by the value to consumers of the information such speech provides."

10  *Zauderer*, 471 U.S. at 651 (citing *Va. Pharmacy Bd. v. Va. Citizens Consumer Council, Inc.*, 425

11  U.S. 748 (1976)). When compelled information about a product is objective, accurate, and

12  undisputed, a commercial speaker's "constitutionally protected interest in *not* providing [it] . . . is

13  minimal." *Id.* That calculus does not hold when the compelled information is misleading or

14  controversial because the information holds little value. *CalChamber*, 29 F.4th at 478-79. That is

15  why the First Amendment protects businesses from being an involuntary mouthpiece for the

16  government's subjectively preferred, but nonfactual, views. *See, e.g., Pac. Gas & Elec. Co. v. Pub.*

17  *Utils. Comm'n of Cal.*, 475 U.S. 1, 13–14 (1986) (plurality opinion); *Video Software Dealers Ass'n*

18  *v. Schwarzenegger,* 556 F.3d 950, 965–67 (9th Cir. 2009).

19         *1.*    *Proposition 65 requires a message that products containing Listed*

20               *Titanium Dioxide will increase consumers' risk of cancer.*

21      Because Listed Titanium Dioxide is on California's list of chemicals "known to the state to

22  cause cancer," businesses must provide a "clear and reasonable warning" that the chemical *is* in

23  fact known to the State to cause cancer. Cal. Health & Safety Code § 25249.6. The "clear and

24  reasonable" requirement compels businesses to convey that their product "contains [chemical], a

25  chemical known to the state of California to cause reproductive harm [or cancer],' or words to that

26  effect." *Dowhal v. SmithKline Beecham Cons. Healthcare*, 32 Cal. 4th 910, 918 (2004). Indeed,

27  businesses' only safe harbor from Proposition 65 liability is a warning that states either:

28     ⚠ **WARNING:** This product can expose you to chemicals including titanium dioxide

(airborne, unbound particles of respirable size), which is known to the State of California to cause cancer. For more information, go to www.P65Warnings.ca.gov.

or:

⚠ "**WARNING:** Cancer – www.P65Warnings.ca.gov."

27 Cal. Code Regs. § 25603(a)(2)(A), § 25603(b)(2)(A).

Businesses cannot stray from Proposition 65's safe harbor warnings without risking substantial liability. California's hardline view of the "clear and reasonable warning" requirement subjects business to suit for even minor deviations. For decades, OEHHA's regulations maintained that a warning could not be clear and reasonable unless it "clearly communicate[d] that the chemical in question is known to the state to cause cancer." Cal. Code Regs. Tit. 27, § 25601 (adopted as Cal. Code Regs. Tit. 22, § 12601 (1988); abrogated Aug. 30, 2018)). And California, through OEHHA and the Attorney General, has time and again rejected alternative warnings that suggest anything other than an unequivocal, causal relationship between a particular chemical and cancer in humans. *See, e.g.*, OEHHA, Final Statement of Reasons (Nov. 1, 1998) (stating that a chemical is known to cause cancer "in animals" would likely not comply with Proposition 65); Cal. Code Regs. Tit. 11, § 3200 (warning with "additional words or phrases that contradict or obfuscate otherwise acceptable warning language" would not comply with Proposition 65); *see also Wheat Growers I*, 309 F. Supp. 3d at 852 (noting Attorney General's "repeated[]" rejections at oral argument of "various alternative warnings . . . which would provide more context or use more accurate language"). In practice, the safe harbor language must be used. *See CalChamber*, 529 F. Supp. 3d at 1119 ("If the seas beyond the safe harbor are so perilous that no one risks a voyage, then the State has either compelled speech that is not purely factual, or its regulations impose an undue burden."); Norris Decl., ¶¶ 11-16, 27-35; RJN, Exs. I and J.

Consumers understand this required warning, when placed on or near a cosmetic product intended to be used by humans, to mean "that using that product increases their risk of getting cancer." Nowlis Decl., ¶ 9. Of course, this is exactly what Proposition 65 intends. A consumer survey may not be necessary to prove such a commonsense proposition. *See Wheat Growers I*, 309 F. Supp. 3d at 851 (evaluating the reasonable views of "[o]rdinary consumers" without reference

to a consumer survey).  But here, PCPC's expert Dr. Stephen Nowlis conducted an extensive survey of consumers and determined that approximately three quarters of cosmetic purchasers understand the safe harbor warning—whether long-form or short-form—to mean that using the product will increase their risk of cancer.  Nowlis Decl., ¶¶ 9-11.

### 2.    The required warning for Listed Titanium Dioxide is false.

But this message that Proposition 65 requires businesses to convey is far from "purely factual."  IARC itself found "inadequate evidence in humans for the carcinogenicity of titanium dioxide" at the time of its classification in 2010.  Madl Decl., ¶ 4.  And the two studies on rats that were the basis for the IARC decision—which in turn was the sole basis for the Proposition 65 listing—have been shown to have no relevance to humans.  *Id.*, ¶¶ 17-21.  Most significantly, the rats were forced to inhale levels of titanium dioxide dust that they could not clear from their lungs— a condition that does not occur in humans.  *Id.*  The author of the 1985 publication expressly cautioned that "the biological relevance" of the rat tumors in his study "[is] negligible." *Id.*, ¶ 19. And the 1995 publication was expressly rejected as a basis for human carcinogenicity by the European Court of Justice, which found it "implausible" that the lung overload in this study was relevant to humans.  RJN, Exs. C, D, and E.

Indeed, after years of study by toxicologists, the "available animal and human evidence does not support that titanium dioxide in any form is a human carcinogen."  Madl Decl., ¶ 2.  As Dr. Madl explains:

> Tumors have been observed in rats following exposure to titanium dioxide, however these effects are only shown in rats at particle overload dosing conditions and are not observed in other rodent species (mice, hamsters), non-human primates (monkeys), or *humans* following exposure to poorly soluble low toxicity particles (such as titanium dioxide). . . .  The tumorigenic effects of titanium dioxide observed in experimental animal studies are *exclusive to rats* and are not relevant for determining the lung cancer risks to humans.

*Id.* (emphasis added). Likewise, "the weight of the epidemiological evidence on the potential association between exposure to TiO2 and the risk of lung or other cancers in humans … strongly suggests that exposure to TiO2 in any form, does not increase the risk of any cancer in humans."

**MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.**

1   Boffeta Decl., ¶ 8; *see also*, ¶ 99 ("In other words, if TiO2 were a human carcinogen, the existing

2   literature would have detected a strong signal.").[3]

3       Not only is it false to state that Listed Titanium Dioxide is "known"—to anyone—to cause

4   cancer in humans; it is also false to convey, as the required warning does, that exposure to Listed

5   Titanium Dioxide in a consumer product will increase the consumer's risk of cancer.

6       As in *Cal. Chamber of Commerce*, Proposition 65's safe harbor language could only be

7   "factual" here if "consumers can discern its underlying logic":

8       • [Rodents] more frequently develop cancerous tumors when they consume
          doses of the chemical many hundreds of times larger than the amounts in
9         [cosmetic and personal care products],
        • Toxicologists presume that chemicals causing cancer in [rodents] also cause
10        cancer in people, even in much smaller doses, absent evidence to the
          contrary, and
11      • As a result, following a cascade of self-referential state and federal
          regulations, the chemical is, by definition, "known" to cause cancer in
12        humans. [citation omitted].

13  529 F. Supp. 3d at 1118.   But, as in *CalChamber*, "[s]uch discernment is unlikely."  *Id.*

14  Furthermore, for titanium dioxide, there is no absence of "evidence to the contrary."  The required

15  message is contrary to the great weight of scientific authority.

16      Now, the AG may argue, as he has before, that the term "known to the state" is a term of

17  art simply meaning "on the Proposition 65 list." But this Court has rightly dispatched that argument:

18      Ordinary consumers do not interpret warnings in accordance with a complex web of
        statutes, regulations, and court decisions, and the most obvious reading of the
19      Proposition 65 cancer warning is that exposure to [the chemical] in fact causes cancer.

20  *Wheat Growers I*, 309 F. Supp. 3d at 851.  *See also Cal. Chamber of Commerce v. Becerra*, 529 F.

21  Supp. 3d at 1118 (statements that invite misleading conclusions are not "factual" even if they are

22  "technically true"), *aff'd by* 29 F.4th 468 (9th Cir. 2022); *see also Video Software Dealers Ass'n*,

23  556 F.3d at 966-67 (mandatory label invited misleading conclusions about what the law required).

24      Furthermore, even IARC has not said it *knows* titanium dioxide causes cancer in humans.

25  Indeed, it has not even concluded it *probably* does so.  IARC found only that titanium dioxide is

26  *possibly* carcinogenic to humans and even concluded there was "inadequate evidence" of

27  carcinogenicity in humans.  Madl Decl., ¶ 4.  With respect to glyphosate, this Court found that it

28

---

[3] The abbreviation TiO2 means titanium dioxide.

**MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.**

1   was misleading to imply the chemical causes cancer where all but one health organization had

2   determined the opposite. *Wheat Growers I*, 309 F. Supp. 3d at 852-53.  And it is even more

3   misleading, with respect to Listed Titanium Dioxide, to imply the substance causes cancer in

4   humans when even the organization that prompted its Proposition 65 listing admits it is only

5   "possible" and states there is "inadequate evidence" that it does.  *See* RJN, Ex. A.  This mere hunch

6   by a far-off organization, which itself has not even been evaluated by California officials, cannot

7   justify compelling businesses to denigrate the safety of their products.

8                    ***3.       The required warning is highly controversial.***

9           "[R]obust disagreement by reputable scientific sources" is good evidence that compelled

10   speech is controversial. *CalChamber*, 29 F.4th at 478, n.10 (cancer warning for acrylamide "easily

11   meets" the definition of controversial "because of the scientific debate" about its veracity).

12   Compelling speech that takes a particular view about disputed facts is completely at odds with the

13   First Amendment's desire to "preserv[e] an uninhibited marketplace of ideas in which the truth will

14   ultimately prevail." *NIFLA*, 138 S. Ct. at 2374 (quoting *McCullen v. Coakley*, 573 U.S. 464, 476

15   (2014)).  The far better test of truth is "the power of the thought to get itself accepted in the

16   competition of the market." *Abrams v. United States,* 250 U.S. 616, 630 (1919) (Holmes, J.,

17   dissenting).

18           As shown by the opinions of Drs. Madl and Boffetta, there is no substantial evidence that

19   titanium dioxide in any form causes cancer in humans, even though studies indicate that it can cause

20   cancer in rats at very high doses that overwhelm their smaller lungs and less efficient clearance

21   mechanisms.  Thus, the message that Listed Titanium Dioxide causes cancer in humans, or that its

22   presence in a cosmetic product increases the consumer's risk of cancer, is simply false.  But to the

23   extent there may be some marginal disagreement on this point—evidenced perhaps by Proposition

24   65's presumption (however unwarranted) that an IARC determination of carcinogenicity based

25   solely on animal studies implies carcinogenicity in humans, or perhaps by the initial decision (now

26   overturned) of the Committee for Risk Assessment of the European Chemical Agency—then the

27   required warning is at best controversial.  In either case, the Attorney General cannot show that

28

**MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.**

Proposition 65's required warning for Listed Titanium Dioxide is either purely factual or uncontroversial. *Zauderer* does not apply, and the warning requirement is unconstitutional.

### B. The Required Warning Is Unjustified and Unduly Burdensome.

In addition, "[e]ven under *Zauderer*, a disclosure requirement cannot be unjustified or unduly burdensome." *NIFLA*, 138 S. Ct. at 2377 (internal quotation marks omitted). The compelled message must be "reasonably related to a substantial government interest," *Am. Beverage Ass'n*, 916 F.3d at 755, meaning that the disclosure must "remedy a harm that is potentially real, not purely hypothetical" and "extend no broader than necessary." *NIFLA*, 138 S. Ct. at 2377 (internal quotation marks omitted). Otherwise, the compelled message is unjustified.

Proposition 65's required warning for Listed Titanium Dioxide is not reasonably related to a substantial government interest because it addresses a purely hypothetical harm. The State's purported interest in Proposition 65's required warnings is in informing Californians "about exposures to chemicals that cause cancer." *Cal. Chamber of Com. v. Brown*, 196 Cal. App. 4th 233, 258 (2013) (quoting preamble to Proposition 65 ballot initiative). Indeed, the proponents of the Proposition 65 ballot initiative expressly advised voters, "Chemicals that are only suspect [of causing cancer] are not included" in the statute's aims. RJN, Ex. H. Courts have also recognized that unjustified warnings are inconsistent with Proposition 65's aims. *See, e.g.*, *Nicolle-Wagner v. Deukmejian*, 230 Cal. App. 3d 652, 660-61 (1991) (upholding OEHHA's exemption for "naturally occurring" chemicals because it reduces "unnecessary warnings, which could distract the public from other important warnings on consumer products"); *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 70 (2008) (over-warning "invite[s] mass consumer disregard and ultimate contempt for the warning process"). And OEHHA, for its part, advises that "[a]lthough a business has the burden of proving a warning is not required, a business is discouraged from providing a warning that is not necessary." RJN, Ex. G. Meanwhile, the Attorney General cannot point to a single study that shows a connection between Listed Titanium Dioxide and a risk of cancer in humans. There simply is no evidence of such a risk. Madl Decl., ¶ 2. The State's health-and-safety interest falters when a compelled disclosure does not in fact advance health and safety. *NIFLA*, 138 S. Ct. at 2377; *CalChamber*, 529 F. Supp. 3d at 1121. The warning here is unjustified.

Moreover, the compelled warning for Listed Titanium Dioxide is unduly burdensome.  This is not because the required warning takes up too much space on a cosmetic package.  *See, e.g., Am. Beverage Ass'n*, 916 F.3d at 754.  Instead, it is because of the burden Proposition 65 places on a business to rebut the presumption that the warning is required.  The Supreme Court has previously rejected as unduly burdensome regulatory schemes that subject commercial speakers to a presumption that they must rebut in order justify their speech on a "case by case" basis, guided only by an ill-defined standard.  *Riley*, 487 U.S. at 793.  In *Riley*, the challenged law prohibited professional fundraisers from retaining an "unreasonable" or "excessive" portion of the funds raised as their fee, with fees of 35% or more presumed to be unreasonable, subject to the fundraiser being able to rebut the presumption by showing, inter alia, that "otherwise the charity's ability to raise money or communicate would be significantly diminished."  *Id.* at 785-86.  The statute's "fundamental flaw" was that "the burden is placed on the [commercial speaker] in such cases to rebut the presumption of unreasonableness."  *Id.* at 793.  The Supreme Court noted that the speaker "must bear the costs of litigation and the risk of a mistaken adverse finding by the factfinder . . . ."  *Id.* at 794.  And it concluded:  "This scheme must necessarily chill speech in direct contravention of the First Amendment's dictates."  *Id.* (citing *Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 969 (1984); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964)).

Proposition 65 places a similar burden on commercial speech because it compels a warning if any amount of the listed chemical is shown to be present in the consumer product, unless the business can rebut the presumption that a warning is required by showing that the level of exposure to average consumers is below the NSRL.  That is a heavy burden, with multiple layers of ambiguity, accompanied—as in *Riley*—by litigation expense and risk.  Indeed, in *Riley*, there was only one ambiguous standard:  "reasonable."  But with respect to Listed Titanium Dioxide in cosmetics, to rebut the presumption that a warning is required, the business must satisfy multiple ambiguous standards. The defendant business must prove the following, in court, with expert testimony that will be contested:

- The amount of airborne, unbound titanium dioxide particles of respirable size present in the product at issue, even though the law has not defined the terms "unbound" or "respirable."  Madl Decl. ¶ 4; Norris Decl. ¶ 18.

- The No Significant Risk Level for titanium dioxide (airborne, unbound particles of respirable size), defined as the level "calculated to result in one excess case of cancer in an exposed population of 100,000, assuming lifetime exposure at the level in question, except where sounds considerations of public health support an alternative level . . . ."  Cal. Code Regs. tit. 27, § 25703(b).  Again, the law has not defined the terms "unbound" or "respirable."  Nor does the law give more than a few indications of "sound considerations of public health."  *Id.* (providing three examples not relevant to Listed Titanium Dioxide in cosmetics).

- The level of exposure from use of the product at issue based on "the average rate of intake or exposure for average users of the consumer product" that is "based on data for use of a general category or categories of consumer products . . . ."  Cal. Code Regs. tit. 27, § 25721(d)(4).  In other words, how often and in what quantities do consumers use different types of cosmetic products (e.g., mascara or blush).

This is a heavy burden with great expense for the defendant business.  *See* Norris Decl. ¶¶ 18-20; *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 533 (9th Cir. 2022) (observing that "businesses often choose to settle Prop. 65 cases" because establishing a safe harbor defense is "very burdensome").

Indeed, Proposition 65's promise of an affirmative defense is all but illusory.  To avoid liability, businesses must show that exposure to the chemical "poses no significant risk assuming lifetime exposure at the level in question." Cal. Health & Safety Code § 25249.10(c).  Proving this negative is a costly and time-consuming endeavor that requires complex testing, scientific analyses, consumption surveys, and expert testimony.  *CalChamber*, 29 F.4th at 480 (noting expense of testing).  All of this will be contested.  *See Env't Law Found. v. Beech-Nut Nutrition Corp.*, 235 Cal. App. 4th 307, 314 (2015) (safe harbor defense litigated at trial).

**MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.**

Furthermore, unlike for acrylamide and glyphosate, here OEHHA has not set a default NSRL for Listed Titanium Dioxide. Madl Decl., ¶ 4; Norris Decl., ¶ 19. As a result, defendants in cases over Listed Titanium Dioxide in cosmetics must first establish the NSRL in an expensive and uncertain battle of the experts, and then undertake the tasks that this Court found, as to glyphosate and acrylamide, were unduly burdensome. In essence, there is no posted speed limit, and no calibrated speedometer. It is no surprise, then, that even judges have understood the prospect of Proposition 65 litigation as "intended to frighten all but the most hardy of targets . . . into a quick[] settlement." *Consumer Def. Grp.*, 137 Cal. App. 4th at 1216.

Required disclosures are unduly burdensome when "they risk chilling protected speech." *NIFLA*, 138 S. Ct. at 2377. Here, as in *Riley*, the burdensome scheme certainly risks chilling protected speech. Private enforcement of Proposition 65 combines with the statute's $2,500 per day penalty to create an atmosphere so coercive that businesses agree to staggering settlements on meritless claims and to tag their products with the State's false messaging. *See Consumer Cause, Inc. v. SmileCare*, 91 Cal. App. 4th 454, 477-79 (2001) (Vogel, J., dissenting) (detailing the "judicial extortion" caused by some private enforcement of Proposition 65); Norris Decl., ¶¶ 7, 22. Accordingly, Proposition 65's required warning for Listed Titanium Dioxide is unduly burdensome.

**C.     The Required Warning Cannot Withstand Heightened Scrutiny.**

As noted above, California's compelled cancer warning for Listed Titanium Dioxide cannot survive the more lenient *Zauderer* standard. But "[t]heoretically, even if a compelled disclosure failed the *Zauderer* test because, for example, it was controversial, the government could get a 'second bite at the apple' by showing that even if controversial, the compelled speech passed *Central Hudson*'s intermediate scrutiny hurdle." *CalChamber*, 29 F.4th at 480; *Am. Beverage Ass'n*, 916 F.3d at 756 n.5. In reality, this required warning cannot withstand heightened scrutiny. Heightened scrutiny requires a compelled disclosure to "directly advance" that interest through means that are no more extensive than is necessary. *Central Hudson*, 447 U.S. at 566. A disclosure does not "directly advance" the State's interest unless it "will in fact alleviate [the asserted harms]

1    to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993).  This burden is a heavy one

2    and it is borne by the state.  *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018).

3          As explained above, California's purported interest in informing the public about cancer

4    risks dissipates when, as here, a warning does not accurately inform the public about cancer risks.

5    This court said it best: "misleading statements about [a chemical's] carcinogenicity, and the state's

6    knowledge of that purported carcinogenicity, do not directly advance [California's] interest."

7    *Wheat Growers II*, 468 F. Supp. 3d at 1264.   Neither the toxicological evidence nor the

8    epidemiological evidence supports the proposition that exposure to titanium dioxide in any form

9    increases the risk of cancer in humans.  Boffetta Decl. ¶ 8; Madl Decl. ¶ 2.  Therefore, Proposition

10   65's required warning for Listed Titanium Dioxide does not advance a substantial government

11   interest. There is simply no "nonhypothetical justification" for this warning.  *NIFLA*, 138 S. Ct. at

12   2377.

13         Nor is the required warning sufficiently tailored to an interest in informing the public about

14   cancer risks.   The existence of "numerous and obvious less-burdensome alternatives to the

15   restriction on commercial speech," are relevant "in determining whether the 'fit' between ends and

16   means is reasonable."  *Italian Colors Rest.*, 878 F.3d at 1178.   And, here, less-burdensome

17   alternatives are legion.  The most obvious alternative to "coopt[ing] [a private speaker] to deliver

18   its message for it" is for the State to convey its message through its own "public-information

19   campaign."  *NIFLA*, 138 S. Ct. at 2376; *see also Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 578

20   (2011) ("The State can express [its] view through its own speech.").  Funding scientific research,

21   pursuing public awareness campaigns, and modifying the safe harbor warnings to eliminate

22   inaccuracies and controversial statements would have also been substantially more tailored than

23   one that compelled businesses to make misleading disclosures about their products.  *Cal. Chamber*

24   *of Com.*, 529 F. Supp. 3d at 1121.

25         The Court need not linger long on the *Central Hudson* test.  This warning flunks it.

26   **II.    The Remaining Equitable Factors Weigh In Plaintiff's Favor.**

27         PCPC satisfies the remaining three prerequisites to preliminary injunctive relief.   Its

28   members are likely to suffer irreparable harm absent a preliminary injunction; the balance of

1    equities tips (and tips *sharply*) in PCPC's favor; and an injunction is in the public interest.  *Winter*,

2    555 U.S. at 20.

3         "Irreparable harm is relatively easy to establish in a First Amendment case."  *CalChamber*,

4    29 F.4th at 482 (quoting *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir.

5    2019)).  A plaintiff "need only demonstrate the existence of a colorable First Amendment claim."

6    *Id.* (quoting *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003)).  PCPC has

7    readily made that showing, as it is likely to succeed on its First Amendment challenge to Proposition

8    65's required warnings.  *Supra* 8-17; *see also CalChamber*, 29 F.4th at 482 (movant shows

9    "existence of a colorable First Amendment claim" when she demonstrates a likelihood of success

10   on the merits of that claim).  A loss of First Amendment freedoms "unquestionably constitutes

11   irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

12        The final two factors—balance of equities and public interest—"merge when the

13   Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2005).  Both favor

14   upholding First Amendment principles, *CalChamber*, 29 F.4th at 482 (citing *Doe v. Harris*, 772

15   F.3d 563, 583 (9th Cir. 2014)), and disfavor enforcement of unconstitutional laws, *Am. Beverage*

16   *Ass'n*, 916 F.3d at 758.

17        Here, the public harm of unconstitutionally compelled speech is particularly acute.

18   Proposition 65 risks flooding the market with cancer warnings about a chemical for which there is

19   at best "inadequate evidence" that it causes cancer in humans, and indeed for which a close review

20   shows there is no reliable epidemiological evidence that it does so.  Madl Decl., ¶ 4.  At best, these

21   excessive warnings "produce a cacophony . . . that by reason of their sheer volume would add little

22   to the effective protection of the public."  *Thompson v. Cnty. of Alameda*, 27 Cal. 3d 741, 754-55

23   (1980).  At worst, California's insistence on over-warning *detracts* from effective protection of the

24   public, "invit[ing] mass consumer disregard and ultimate contempt for the warning process."  *Id.*;

25   *see also* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY §2 cmt. j (1998) (noting that

26   excessive, multitudinous warnings "may be ignored by users and consumers and may diminish the

27   significance of warnings about [other] risks" and "could reduce the efficacy of warnings

28   generally"); *Nicolle-Wagner*, 230 Cal. App. 3d at 661 ("'[U]nnecessary warnings . . . could distract

the public from other important warnings on consumer products.'  Since one of the principal purposes of [Proposition 65] is to provide 'clear and reasonable warning' of exposure to carcinogens and reproductive toxins, such warnings would be diluted to the point of meaninglessness if they were to be found on most or all food products.") (quoting the Final Statement of Reasons for the "naturally occurring" regulation now found at Cal. Code Regs. tit. 27, § 25501)); *accord Johnson*, 43 Cal. 4th at 70.  In either event, the equities and public interest strongly favor preliminary injunctive relief.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court should preliminarily enjoin the Attorney General and all those in privity with and/or acting in concert with him (including private enforcers of Proposition 65) from filing and/or prosecuting new lawsuits to enforce the Proposition 65 warning requirement as applied to Listed Titanium Dioxide in cosmetics and personal care products.

Dated: October 6, 2023

Respectfully submitted,

By: */s/ Trenton H. Norris*
Trenton H. Norris (CA Bar No. 164781)
David M. Barnes (CA Bar No. 318547)
Alexander Tablan (CA Bar No. 346309)
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111
Tel:  (415) 374-2300
trent.norris@hoganlovells.com

*Attorneys for Plaintiff*
*Personal Care Products Council*

<b>MEM. OF POINTS AND AUTHORITIES IN SUPP. OF PLAINTIFF'S MOT. FOR PRELIM. INJ.</b>