# EXHIBIT H

# 65 Restrictions on Toxic Discharges into Drinking Water; Requirement of Notice of Persons' Exposure to Toxics. Initiative Statute

Official Title and Summary Prepared by the Attorney General

RESTRICTIONS ON TOXIC DISCHARGES INTO DRINKING WATER; REQUIREMENT OF NOTICE OF PERSONS' EXPOSURE TO TOXICS. INITIATIVE STATUTE. Provides persons doing business shall neither expose individuals to chemicals known to cause cancer or reproductive toxicity without first giving clear and reasonable warning, nor discharge such chemicals into drinking water. Allows exceptions. Requires Governor publish lists of such chemicals. Authorizes Attorney General and, under specified conditions, district or city attorneys and other persons to seek injunctions and civil penalties. Requires designated government employees obtaining information of illegal discharge of hazardous waste disclose this information to local board of supervisors and health officer. Summary of Legislative Analyst's estimate of net state and local government fiscal impact: Costs of enforcement of the measure by state and local agencies are estimated at $500,000 in 1987 and thereafter would depend on many factors, but could exceed $1,000,000 annually. These costs would be partially offset by fines collected under the measure.

## Analysis by the Legislative Analyst

### Background

Currently, the state has a number of programs designed to protect people against possible exposures to harmful chemicals. The major programs involve the regulation of:

- **Waste Discharges.** The State Water Resources Control Board and the regional water quality control boards regulate the discharge of wastes into state waters, including rivers, streams, and groundwater that may be used as sources of drinking water. The Department of Health Services regulates the disposal and cleanup of hazardous waste, including hazardous waste that may contaminate drinking water.
- **Drinking Water.** Current law prohibits local water agencies from supplying drinking water to the public that contains dangerous levels of certain harmful chemicals. Local water agencies must inform customers when the level of these chemicals exceeds certain limits. The Department of Health Services enforces these limits.
- **Workplace Hazards.** The Department of Industrial Relations regulates exposure to cancer causing materials and other harmful substances in the workplace. Current law also requires employers to inform workers of possible exposure to dangerous substances.
- **Pesticides.** The Department of Food and Agriculture regulates the use of pesticides in agriculture and in other business applications, such as maintenance of landscaping and golf courses.

These regulatory agencies must make judgments about the amounts of harmful chemicals that can be released into the environment. In doing so, they try to balance what it costs to prevent the release of chemicals against the risks the chemicals pose to public health and safety. As the level of allowable exposure goes down, the cost of prevention typically goes up. The risk that some substances pose to health is not always known. Often, scientists cannot determine precisely the health impact of low-level exposures that occur over 20 or 30 years.

### Proposal

This measure proposes two additional requirements for businesses employing 10 or more people. First, it generally would prohibit those businesses from knowingly releasing into any source of drinking water any chemical in an amount that is known to cause cancer or in an amount that exceeds 1/1000th of the amount necessary for an observable effect on "reproductive toxicity." The term "reproductive toxicity" is not defined. Second, the measure generally would require those businesses to warn people before knowingly and intentionally exposing them to chemicals that cause cancer or reproductive toxicity. The measure would require the state to issue lists of substances that cause cancer or reproductive toxicity.

Because these new requirements would result in more stringent standards, the practical effect of the requirements would be to impose new conditions for the issuance of permits for discharges into sources of drinking water. In order to implement the new requirements, state agencies that are responsible for issuing permits would be required to alter state regulations and develop new standards for the amount of chemicals that may be discharged into sources of drinking water.

The measure also would impose civil penalties and increase existing fines for toxic discharges. In addition, the measure would allow state or local governments, or any person acting in the public interest, to sue a business that violates these rules.

### Fiscal Effect

It is estimated that the administrative actions resulting from the enactment of this measure would cost around $500,000 in 1987. Starting in 1988, the costs of these actions are unknown and would depend on many factors, but these costs could exceed $1 million annually.

In addition, the measure would result in unknown costs to state and local law enforcement agencies. A portion of these costs could be offset by increased civil penalties and fines collected under the measure.

Beyond these direct effects of the measure, state and local governments may strengthen enforcement activities to ensure compliance with the new requirements. The costs of any additional enforcement could be significant.

**Text of Proposed Law**

This initiative measure is submitted to the people in accordance with the provisions of Article II, Section 8 of the Constitution.

This initiative measure amends and adds sections to the Health and Safety Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new.

### PROPOSED LAW
### SAFE DRINKING WATER AND TOXIC ENFORCEMENT ACT OF 1986

SECTION 1. The people of California find that hazardous chemicals pose a serious potential threat to their health and well-being, that state government agencies have failed to provide them with adequate protection, and that these failures have been serious enough to lead to investigations by federal agencies of the administration of California's toxic protection programs. The people therefore declare their rights:

(a) To protect themselves and the water they drink against chemicals that cause cancer, birth defects, or other reproductive harm.

(b) To be informed about exposures to chemicals that cause cancer, birth defects, or other reproductive harm.

(c) To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety.

(d) To shift the cost of hazardous waste cleanups more onto offenders and less onto law-abiding taxpayers.

The people hereby enact the provisions of this initiative in furtherance of these rights.

SECTION 2. Chapter 6.6 (commencing with Section 25249.5) is added to Division 20 of the Health and Safety Code, to read:

### CHAPTER 6.6.
### SAFE DRINKING WATER AND TOXIC ENFORCEMENT ACT OF 1986

*25249.5. Prohibition On Contaminating Drinking Water With Chemicals Known to Cause Cancer or Reproductive Toxicity. No person in the course of doing business shall knowingly discharge or release a chemical known to the state to cause cancer or reproductive toxicity into water or onto or into land where such chemical passes or probably will pass into any source of drinking water, not withstanding any other provision or authorization of Law except as provided in Section 25249.9.*

*25249.6. Required Warning Before Exposure · To Chemicals Known to Cause Cancer Or Reproductive Toxicity. No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10.*

*25249.7. Enforcement.*

*(a) Any person violating or threatening to violate Section 25249.5 or Section 25249.6 may be enjoined in any court of competent Jurisdiction.*

*(b) Any person who has violated Section 25249.5 or Section 25249.6 shall be liable for a civil penalty not to exceed $2500 per day for each such violation in addition to any other penalty established by law. Such civil penalty may be assessed and recovered in a civil action brought in any court of competent jurisdiction.*

*(c) Actions pursuant to this section may be brought by the Attorney General in the name of the people of the State of California or by any district attorney or by any city attorney of a city having a population in excess of 750,000 or with the consent of the district attorney by a city prosecutor in any city or city and county having a full-time city prosecutor, or as provided in subdivision (d).*

*(d) Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation.*

*25249.8 List Of Chemicals Known to Cause Cancer Or Reproductive Toxicity.*

*(a) On or before March 1, 1987, the Governor shall cause to be published a list of those chemicals known to the state to cause cancer or reproductive toxicity within the meaning of this chapter, and he shall cause such list to be revised and republished in light of additional knowledge at least once per year thereafter. Such list shall include at a minimum those substances identified by reference in Labor Code Section 6382(b)(1) and those substances identified additionally by reference in Labor Code Section 6382(d).*

*(b) A chemical is known to the state to cause cancer or reproductive toxicity within the meaning of this chapter if in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity, or if a body considered to be authoritative by such experts has formally identified it as causing cancer or reproductive toxicity, or if an agency of the state or federal government has formally required it to be labeled or identified as causing cancer or reproductive toxicity.*

*(c) On or before January 1, 1989, and at least once per year thereafter, the Governor shall cause to be published a separate list of those chemicals that at the time of publication are required by state or federal law to have been tested for potential to cause cancer or reproductive toxicity but that the states qualified experts have not found to have been adequately tested as required.*

*(d) The Governor shall identify and consult with the state's qualified experts as necessary to carry out his duties under this section.*

*(e) In carrying out the duties of the Governor under this section, the Governor and his designates shall not be considered to be adopting* or *amending a regulation within the meaning of the Administrative Procedure Act as defined in Government Code Section 11370.*

*25249.9 Exemptions from Discharge Prohibition.*

*(a) Section 25249.5 shall not apply to any discharge or release that takes place less than twenty months subsequent to the listing of the chemical in question on the list required to be published under subdivision (a) of Section 25249.8.*

*(b) Section 25249.5 shall not apply to any discharge or release that meets both of the following criteria:*

*(1) The discharge or release will not cause any significant amount of the discharged or released chemical to*

*Continued on page 62*



## Proposition 65 Text of Proposed Law

*Continued from page 53*

enter any source of drinking water.

(2) The discharge or release is in conformity with all other laws and with every applicable regulation, permit, requirement, and order.

In any action brought to enforce Section 25249.5, the burden of showing that a discharge or release meets the criteria of this subdivision shall be on the defendant.

25249.10 <u>Exemptions from Warning Requirement.</u> Section 25249.6 shall not apply to any of the following:

(a) An exposure for which federal law governs warning in a manner that preempts state authority.

(b) An exposure that takes place less than twelve months subsequent to the listing of the chemical in question on the list required to be published under subdivision (a) of Section (a) of Section 25249.8.

(c) An exposure for which the person responsible can show that the exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer, and that the exposure will have no observable effect assuming exposure at one thousand (1,000) times the level in question substances known to the state to cause reproductive toxicity, based on evidence and standards of comparable scientific validity to the evidence and standards which form the scientific basis for the listing of such chemical pursuant to subdivision (a) of Section 25249.8. In any action brought to enforce Section 25249.6, the burden of showing that an exposure meets the criteria of this subdivision shall be on defendant.

25249.11 *Definitions.*
*For purposes of this chapter:*
(a) "Person" means an individual, trust, firm, joint stock company, corporation, company, partnership, and association.

(b) "Person in the course of doing business" does not include any person employing fewer than ten employees in his business; any city, county, or district or any department or agency thereof or the state or any department or agency thereof or the federal government or any department or agency thereof; or any entity in its operation of a public water system as defined in Section 4010.1.

(c) "Significant amount" means any detectable amount except an amount which would meet the exemption test in subdivision (c) of Section 25249.10 if an individual were exposed to such an amount in drinking water.

(d) "Source of drinking water" means either a present source of drinking water or water which is identified or designated in a water quality control plan adopted by a regional board as being suitable for domestic or municipal uses.

(e) "Threaten to violate" means to create a condition in which there is a substantial probability that a violation will occur.

(f) "Warning" within the meaning of Section 25249.6 need not be provided separately to each exposed individual and may be provided by general methods such as labels on consumer products, inclusion of notices in mailings to water customers, posting of notices, placing notices in public news media, and the like, provided that the warning accomplished is clear and reasonable. In order to minimize the burden on retail sellers of consumer products including foods, regulations implementing Section 25249.6 shall to the extent practicable place the obligation to provide any warning materials such as labels on the producer or packager rather than on the retail seller, except where the retail seller itself is responsible for introducing a chemical known to the state to cause cancer or reproductive

toxicity into the consumer product in question. 25249.12

*Implementation.* The Governor shall designate a lead agency and such other agencies as may be required to implement the provisions of this chapter including this section. Each agency so designated may adopt and modify regulations, standards, and permits as necessary to conform with and implement the provisions of this chapter and to further its purposes.

25249.13 *Preservation Of Existing Rights, Obligations, and Penalties.* Nothing in this chapter shall alter or diminish any legal obligation otherwise required in common law or by statute or regulation, and nothing in this chapter shall create or enlarge any defense in any action to enforce such legal obligation. Penalties and sanctions imposed under this chapter shall be in addition to any penalties or sanctions otherwise prescribed by Law.

SECTION 3. Subdivision (d) of Section 25189.5 of the Health and Safety Code is amended to read:

(d) The court shall also impose upon a person convicted of violating subdivision (b) or (c) a fine of not less than five thousand dollars ($5,000) or more than fifty *one hundred* thousand dollars ($50,000) *($100,000)* for each day of violation *except as further provided in this subdivision. If the act which violated subdivision (b) or (c) caused great bodily injury or caused a substantial probability that death could result, the person convicted of violating subdivision (b) or (c) may be punished by imprisonment in the state prison for up to 36 months, in addition to the term specified in subdivision (b) or (c), and may be fined up to two hundred fifty thousand dollars ($250,000) for each day of violation.*

SECTION 4. Section 25180.7 is hereby added to the Health and Safety Code as follows:

*(a) Within the meaning of this section, a "designated government employee" is any person defined as a "designated employee" by Government Code Section 82019, as amended.*

*(b) Any designated government employee who obtains information in the course of his official duties revealing the illegal discharge or threatened illegal discharge of a hazardous waste within the geographical area of his jurisdiction and who knows that such discharge or threatened discharge is likely to cause substantial injury to the public health or safety must, within seventy-two hours, disclose such information to the local Board of Supervisors and to the local health officer. No disclosure of information is required under this subdivision when otherwise prohibited by law, or when law enforcement personnel have determined that such disclosure would adversely affect an ongoing criminal investigation, or when the information is already general public knowledge within the locality affected by the discharge or threatened discharge.*

*(c) Any designated government employee who knowingly and intentionally fails to disclose information required to be disclosed under subdivision (b) shall, upon conviction, be punished by imprisonment in the county* jail for not more than one year or by *imprisonment in state prison for not more than three years. The court may also impose upon the person a fine of not less than five thousand dollars ($5000) or more than twenty-five thousand dollars ($25,000). The felony conviction for violation of this section shall require forfeiture of government employment within thirty days of conviction.*

*(d) Any local health officer who receives information pursuant to subdivision (b) shall take appropriate action to notify local news media and shall make such information available to the public without delay.*

SECTION 5. Section 25192 of the Health and Safety Code is amended to read:

25192. (a) All civil and criminal penalties collected pursuant to this chapter *or Chapter 6.6 (commencing with Section 25249.5)* shall be apportioned in the following manner:

(1) Fifty percent shall be deposited in the ~~Hazardous Waste Control Account~~ *Hazardous Substance Account* in the General Fund.

(2) Twenty-five percent shall be paid to the office of the city attorney, *city prosecutor,* district attorney, or Attorney General, which ever office brought the action, *or in the case of an action brought by a person under subdivision (d) of Section 25249.7 to such person.*

(3) Twenty-five percent shall be paid to the department and used to fund the activity of the local health ~~officers~~ *officer* to enforce the provisions of this chapter pursuant to Section 25180. *If investigation by the local police department or sheriffs office or California Highway Patrol led to the bringing of the action, the local health officer shall pay a total of forty percent of his portion under this subdivision to said investigating agency or agencies to be used for the same purpose: If more than one agency is eligible for payment under this provision, division of payment among the eligible agencies shall be in the discretion of the local health officer.*

(b) If a reward is paid to a person pursuant to Section 25191.7, the amount of the reward shall be deducted from the amount of the civil penalty before the amount is apportioned pursuant to subdivision (a).

*(c) Any amounts deposited in the Hazardous Substance Account pursuant to this section shall be included in the computation of the state account rebate specified in Section 25347.2.*

SECTION 6. If any provision of this initiative or the application there of is held invalid, that invalidity shall not affect other provisions or applications of the initiative which can be given effect without the invalid provision or application, and to this end the provisions of this initiative are severable.

SECTION 7. To further its purposes this initiative may be amended by statute, passed in each house by a two-thirds vote.

SECTION 8. This initiative shall take effect on January 1, 1987.



# 65 Restrictions on Toxic Discharges into Drinking Water; Requirement of Notice of Persons' Exposure to Toxics. Initiative Statute

## Argument in Favor of Proposition 65

Nearly every week sees a new toxic catastrophe. Children in Fullerton, Riverside, McFarland, Sacramento, and San Jose have already been exposed to chemicals that may make them sterile or give them cancer.

There are certain chemicals that are scientifically known not merely suspected, but known to cause cancer and birth defects. Proposition 65 would:
- Keep these chemicals out of our drinking water.
- Warn *us* before we're exposed to any of these dangerous chemicals.
- Give private citizens the right to enforce these laws in court
- Make government officials tell the public when an illegal discharge of hazardous waste could cause serious harm.

The cost to taxpayers will be negligible, according to the Attorney General's official estimate.

Our present toxic laws aren't tough enough. Despite them, polluters contaminate our drinking water and expose us to extremely toxic chemicals without our knowing it. The health of innocent people is jeopardized. And the public must pay massive costs for cleanup.

The Governor's Toxics Task Force found:
- Toxic chemicals can cause cancer, birth defects, and genetic damage.
- Much of our drinking water is polluted by toxic chemicals.
- Exposure to toxics costs Californians more than $1.3 *billion* per year in medical care, lost income, and deaths.

Proposition 65 turns that report into action, with requirements that are clear, simple, and straightforward.

Proposition 65 gets tough on toxics.

### SAFE DRINKING WATER

Proposition 65 singles out chemicals that are scientifically known to cause; cancer or reproductive disorders (such as birth defects). Effectively, it tells businesses: Don't put these chemicals into our drinking water supplies.

### WARNING BEFORE EXPOSURE

Proposition 65 also tells businesses: Don't expose us to any of these same chemicals without first giving us a clear warning. We each have a right to know, and to make our own choices about being exposed to these chemicals.

### TOUGHER ENFORCEMENT

Both public prosecutors and ordinary citizens can enforce these health protections directly in court.

Proposition 65 also toughens enforcement for criminal laws already on the books. Fines and jail terms are doubled for toxic crimes like midnight dumping. Police and prosecutors are given extra rewards for enforcing toxics laws.

Proposition 65's new civil offenses focus only on chemicals that are *known to the state* to cause cancer or reproductive disorders. Chemicals that are only suspect are not included. The Governor must list these chemicals, after full consultation with the state's qualified experts. At a minimum, the Governor must include the chemicals already listed as known carcinogens by two organizations of the most highly regarded national and international scientists: the U.S.'s National Toxicology Program and the U.N.'s International Agency for Research on Cancer.

These new laws will not take anyone by surprise. They apply only to businesses that *know* they are putting one of the chemicals out into the environment, and that *know* the chemical is actually on the Governor's list.

Proposition 65 will give California the clearest, most effective toxic control laws in the nation.

VOTE *YES* ON PROPOSITION 65.

IRA **REINER**
*District Attorney, Los Angeles County*

ART TORRES
*State Senator, 24th District*
*Chair, Senate Toxics and Public Safety Management Committee*

**PENNY NEWMAN**
*Chair, Concerned Neighbors in Action (Stringfellow Acid Pits)*

## Rebuttal to Argument in Favor of Proposition 65

WE JOIN SCIENTISTS, HEALTH PROFESSIONALS AND FARMERS IN URGING A "NO" VOTE ON PROPOSITION 65.

Everybody wants safe drinking water. Proposition 65 simply won't give it to us.

*PROPOSITION 65 WILL NOT PRODUCE SAFE DRINKING WATER.*

FACT: Proposition 65 EXEMPTS the biggest water polluters in the state.

FACT: Proposition 65 *limits* funds available to district attorneys to enforce the law.

FACT: IT UNDERMINES CALIFORNIA TOXICS LAW-THE TOUGHEST IN THE COUNTRY.

*PROPOSITION 65 WONT PRODUCE USEFUL WARNINGS.*

It requires "warnings" on millions of ordinary and safe items. We won't know what products are really dangerous anymore. THE WARNINGS WE REALLY NEED WILL GET LOST IN LOTS OF WARNINGS WE DON'T NEED.

*PROPOSITION 65 IS THE WRONG APPROACH.*

*A* leading spokesman for the proponents recently said, "We have plenty of laws on the books already ... you can't clean up anything by loading on more legislation."

We couldn't agree more.

FACT: Toxics enforcement personnel has *increased* 48% in the last four years.

FACT: The toxics cleanup budget has *increased* nearly 150% in the last four years.

FACT: Several million dollars in fines have *already* been collected, used for cleanup and future enforcement.

Proposition 65 will take environmental regulation out of the hands of lawmakers and prosecutors and create a system of vigilante justice with bounty hunters seeking rewards.

*PROPOSITION 65 IS FILLED WITH EXCEPTIONS, HURTS FARMERS, AND WILL NOT GIVE US SAFE DRINKING WATER.*

*VOTE NO* on the Toxics Initiative.
*VOTE NO* on Proposition 65.

EDWARD R. JAGELS
*District Attorney, Kern County*

MICHELE BEIGEL CORASH
*Former General Counsel*
*U.S. Environmental Protection Agency*

**CATHIE WRIGHT**
*Member of the Assembly, 37th District*
*Member, Assembly Committee* on Environmental Safety and Toxic Materials

# Restrictions on Toxic Discharges into Drinking Water; Requirement of Notice of Persons' Exposure to Toxics. Initiative Statute



## Argument Against Proposition 65

TOXIC POLLUTION IS A SERIOUS MATTER REQUIRING SERIOUS ATTENTION. Proposition 65 is a *simplistic response* to a *complex problem*.

As scientists, health professionals, and farmers, we are on *solid ground* when we say that *Proposition 65* is *faulty* from a scientific point of view, is so *full of exemptions* as to be meaningless from, a health point of view, and is *unfair* and *devastating to farmers.*

FACT: UNDER PROPOSITION 65 THE GOVERNMENT AND MANY BUSINESSES ARE EXEMPT.
• Publicly owned nuclear power plants *ARE EXEMPT!*
• Cities which dump raw sewage into freshwater streams *ARE EXEMPT!*
• Public water systems *ARE EXEMPT!*
• Military bases which contaminate residential drinking water *ARE EXEMPT!*
• County landfills *ARE EXEMPT!*
• Thousands of businesses *WOULD BE EXEMPT.*
• A GOOD LAW APPLIES EVENLY AND EQUALLY TO EVERYONE.
• This is a bad law made worse because it is *loaded with exemptions.*

FACT: PROPOSITION 65 UNFAIRLY TARGETS CALIFORNIA FARMERS.

Normally, manufacturers-not users-must prove the safety of their product. But Proposition 65 *puts that burden on farmers.*

Many common fertilizers, weed and pest control materials perfectly safe when properly *used-would be effectively banned for most farmers but* allowed for many nonfarmers.

FARMERS MAY EVEN HAVE TO STOP IRRIGATING.

Farmers are having a tough time as it is providing quality food, in adequate supply, at the lowest possible price. Proposition 65 would add to their burden and may be the final straw to break the back of many.

FACT: PROPOSITION 65's BOUNTY HUNTER PROVISION IS A BONANZA FOR PRIVATE LAWYERS.

Proposition 65 creates a lawyer's paradise: anyone can sue; almost anyone can be sued. People who sue will get a reward from penalties collected. *Thus, environmental regulation is taken from the hands of government regulators and prosecutors and handed to private lawyers and judges.*

WE HAVE THE LAWS; WE NEED BETTER ENFORCEMENT.

We have many thoughtful laws relating to toxic pollution on the books. They include:
• Porter-Cologne Water Quality Act.
• Toxic Air Contaminants Program.
• Water Supply Testing Program.
• Pesticide Contamination Prevention Act.
• Birth Defect Prevention Act.
• Toxics Pit Clean-up Act.

*Over 50 new laws have been passed* in the last two years to *control* chemicals and toxics.

We *need to build* on the system we have, *not* abandon it in favor of extreme "solutions."

The simple *scientific fact* of the matter is that manmade carcinogens represent only a tiny fraction of the total carcinogens we are exposed to most of which are natural substances such as tobacco, alcohol, and chemicals in green plants, Significant amounts of manmade carcinogens are highly regulated in California under the most stringent laws in the United States. This initiative will result in chasing after trivial amounts of manmade carcinogens at *enormous cost* with minimal benefit to our health. We're *concerned about safer, cleaner drinking water.* And we're *concerned* that we get there in an *intelligent, rational* and *fair* manner.

Proposition 65 just won't do that.

We urge you to VOTE NO ON THE TOXICS INITIATIVE. Vote no on PROPOSITION 65.

DR. BRUCE AMES
*Chairman, Department of Biochemistry, University of California, Berkeley*

HENRY VOSS
*President, California Farm Bureau*

ALICE OTTOBONI, Ph.D.
*Toxicology Staff Toxicologist, California Department of Health Services, Rtd.*

## Rebuttal to Argument Against Proposition 65

Who's really against Proposition 65?

The big oil and chemical companies are leading the opposition because they know they would *be* forced to stop dumping extremely dangerous chemicals into your drinking water if Proposition 65 passes. The existing laws don't stop them. Proposition 65 will. That's why they're spending millions of dollars on a misleading media campaign.

DON'T BE FOOLED.

Proposition 65 simply says that businesses shouldn't put chemicals that are scientifically known to cause cancer, or birth defects, into your drinking water. And that they must warn you before they expose you to such a chemical.

• Proposition 65 means tougher law enforcement. It will help prosecutors put polluters in jail. That's why the California District Attorneys Association has endorsed it.

• Proposition 65 applies equally to all businesses in California. except for the smallest businesses (those with fewer than 10 employees).

• Proposition 65 applies to the big businesses that produce more than 90% of all hazardous waste in California (according to official state estimates).

• Proposition 65 treats farmers exactly the same as everyone else no tougher, no easier. Small family farms, like other small businesses. are exempt.

• Proposition 65 is based strictly on scientific testing, more than any existing toxics law.

• Proposition 65 does not apply to insignificant (safe) amounts of chemicals.

• Proposition 65 will not in *any* way weaken *any* of California's existing protections in toxics law.

DON'T BE FOOLED BY THE BIG POLLUTERS.
*Vote YES on Proposition 65!*
GET TOUGH ON TOXICS!

ARTHUR C. UPTON, M.D.
*Former Director, National Institutes of Health*

NORMAN W. FREESTONE, JR.
*Farmer; Visalia*

ALBERT H. GERSTEN, JR.
*Businessman; Member, Little Hoover Commission*