# EXHIBIT I

## PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE v. McDONALDS

## DEMURRER AND MOTION TO STRIKE PORTIONS OF FIRST AMENDED COMPLAINT

Date of Hearing: **August 15, 2012**
Department: 308
Case No.: BC383722

Defendants Chick-fil-A, Inc., McDonald's Corp., and OSI Restaurant Partners, Inc. demur to each cause of action alleged in the Second Amended Complaint.  Defendants also seek to strike portions of the Second Amended Complaint. The Court's tentative ruling is as follows:

> (1) Sustain without leave to amend; and
> (2) The motion to strike, though moot, is granted.

REQUEST FOR JUDICIAL NOTICE
The Court grants Defendants request to take judicial notice of (1) the court transcript dated May 14, 2012, (2) the November 2007 60-day Notice letter, (3) the July 2006 60-day Notice letter, (4) this Court's ruling of May 16, 2012, (5) the court transcript dated May 29, 2007, in Environmental World Watch v. Proctor and Gamble; (6) the Consent Judgments, (7) the March 10, 2009, court transcript, and (8) the January 17, 2012, court transcript. See Ca. Evidence Code, §452(d), (h).  The Court also grants the request to take judicial notice of the attorney general letter only to the extent it shows that the statements were, in fact made.  See Ca. Evidence Code, §452(c). The Court does not take judicial notice of any factual statements set forth in the Attorney General's letter.

The Court grants Plaintiffs request to take judicial notice of (1) the April 28, 2008, Notice of demurrer, (2) the Court's ruling of June 5, 2008, and (3) the court transcript dated May 14, 2012. See Ca. Evidence Code, §452(d).

EVIDENTIARY OBJECTIONS
Plaintiff's object to Defendants' Request for Judicial Notice, Exhibits E, F, G, H, I and K. The Court overrules these objections.

DISCUSSION

60-DAY NOTICE
The SAC alleges that it served defendants with the legally mandated 60-day notice. See SAC, ¶¶4, 38-41. The notice stated, in relevant part:

> This sixty-day notice is being served because [Defendants] have knowingly and intentionally failed to warn consumers that they are being exposed to

1

"PhIP"…through ingestion of grilled chicken consumed from the intended Defendants' food service establishments without the intended Defendants first giving clear and reasonable warning to consumers of the significant health risks that these consumer[s] face…Each of the intended Defendants was required to provide a warning of the dangers of PhIP beginning on October 1, 1995, with respect to any grilled chicken served or sold after that date. [See Exhibit B of Defendant's Request for Judicial Notice]

According to 27 Cal. Code of Regs., §25903(b)(2): "A notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation, as set forth in this paragraph. The provisions of this paragraph shall not be interpreted to require more than reasonably clear information, expressed in terms of common usage and understanding, on each of the indicated topics." See also Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America (2007) 150 Cal.App.4th 953, 964.

Defendants argue that the warning provided in the 60-day notice does not comport with the theory being advanced in the Second Amended Complaint. As the moving papers note:

…PCRM's 60-day notice is not a valid basis for the current allegations. The operative 60-day notice, issued in November 2007, is predicated only on one of the theories that PCRM has been forced to abandon, i.e. that warnings must specifically mention "PhIP" and "grilled chicken" in order to satisfy Proposition 65…

The Court finds this argument to be without merit. The notice alleges that Defendants "intentionally failed to warn consumers that they are being exposed to 'PhIP' by failing to give "clear and reasonable warning to consumers." In such a situation, Defendants could have reviewed their notices and, if using the safe harbor, would have known that no further action need be taken. Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America, supra[1]. If, on the other hand, the notice did not use the safe-harbor language, Defendants would at least be able to know whether corrective action should be taken. Either way, the notice language gave the defendants "a meaningful opportunity to investigate" and "a meaningful opportunity to cure." Additionally, the notice would provide the Attorney General with enough facts to do a reasonable investigation as to whether or not it wished to intervene in this action on behalf of the general public.

MERITS OF 60-DAY NOTICE

Alternatively, Defendants argue that the 60-day notice is invalid under 11 Cal. Code Regs., §3101 since Plaintiffs "conducted no investigation to determine whether Defendants provided

---

[1] As the Consumer Advocacy Group Court notes: "…a hotel lacking a pool incurs no additional burden when it receives notice it failed to provide reasonable warnings in a pool area. The hotel is justified in concluding that it is not required to take any action with respect to a nonexistent pool."

warnings during the statute of limitations period (which began on January 16, 2007). Instead, PCRM has claimed to have investigated in March 2006."

The opposition fails to address this argument, and the SAC admits in ¶42 that investigation was conducted in February 2012. By contrast, the First Amended Complaint indicated that the investigation was done in March 2006. Either way, there is no indication that Plaintiffs had a reasonable basis to believe, at the time the 60-day notice was issued, that there existed any violation within the applicable statute of limitations. Accordingly, there is no basis to conclude that the certificate of merit had a sufficient foundation such that Plaintiff could conclude that this was a "reasonable and meritorious case."

Accordingly, the Court finds that the demurrer should be sustained without leave to amend.

PROPOSITION 65 WARNINGS

Defendants argue that the Proposition 65 warnings used comply with applicable law and an earlier Consent Judgment because it warns of "chemicals" in the plural, pointing out that "[i]f McDonalds and Chick-fil-A had transformed the Safe Harbor to an acrylamide-only warning, as PCRM contends, their warnings would refer to a "chemical" in the singular

However, even if the warning language used by Defendants uses the phrase "chemicals" in the plural, the warning language cannot use additional language that may "contradict or obfuscate otherwise acceptable warning language." 11 CCR §3202(b).

Here, the McDonalds warning uses the following language (see ¶46):

WARNING

Chemicals known to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here. Cooked potatoes that have been browned such as french fries and baked potatoes, contain acrylamide, a chemical known to the State of California to cause cancer.

Acrylamide is not added to our foods, but is created whenever potatoes and certain other foods are browned.

The FDA has not advised people to stop eating baked or fried potatoes. For more information see www.fda.gov

Or:

WARNING

Chemicals known to cause cancer, or birth defects or other reproductive harm may be present in foods or beverages sold or served here. Cooked potatoes that

3

have been browned, such as french fries, hash browns and baked potatoes,
contain acrylamide, a chemical known to the State of California to cause cancer.
Other foods sold here, such as hamburger buns, biscuits and coffee also contain
acrylamide, but generally in lower concentrations than fried potatoes.

Acrylamide is not added to our foods, but is created whenever potatoes and certain
other foods are browned. The FDA has not advised people to stop eating baked or fried
potatoes.

For purposes of demurrer, the Court cannot conclude as a matter of law that the additional
language does not "contradict or obfuscate" otherwise acceptable warning language

That being said, the Court finds that the Chick-fil-A language is not burdened with the same
uncertainty. The Chick-fil-A language uses the Safe Harbor Warning but adds, at the end, "For
more specific information see the Nutrition Guide brochure located next to this poster or
available at the front desk." See ¶55. The Nutrition Guide specifically mentions Cooked
Potatoes and Arcylamide. ¶56.

Under Plaintiff's theory, if every chemical is not discussed in the supplementary nutritional
brochure, then it would create confusion.  It cannot be the intent of Proposition 65 to provide
less information to the consumer.   As long as the posted warning utilizes the safe-harbor
language, making reference to the nutrition guide for more "specific information" does not in
any way undermine the warning provided by Defendant.

> MOTION TO STRIKE – TAKE AWAY AREAS/DRIVE-THRU

Defendants seek to strike the allegations dealing with providing warnings in drive-thru and
carry out areas on two bases: (1) this Court has already determined that there is no basis to
these allegations and (2) this issue has already been determined by prior Consent Judgments.

Defendants are correct that this Court previously ruled that Defendants are not required to
provide warnings in multiple locations, such as additional warnings in drive-thru, carry out or
other takeaway areas. (See  Order of June 11, 2012).  As there is  no requirement that
Defendants post a Proposition 65 warning in "all purchase areas," there is no basis to conclude
that Defendants are in violation of Proposition 65.  As such, the Court need not consider
whether prior Consent Judgments regarding posting warning in drive thru locations constitutes
estoppel.

> MOTION TO STRIKE – NO WARNINGS

Defendants also seek to strike the allegations dealing with those restaurants which provided no
warnings as outside the scope of the court's prior order wherein the court noted:

...in light of the years of litigation of these cases, and Plaintiff's changing theories
of liability, Plaintiff may amend the First Amended Complaints, if it can do so in
good faith, to allege that Defendants failed within the statute of limitations

period to provide a warning that was "clear and reasonable" due to the warning sign being supplemented with language specific to acrylamide. [See Exhibit A to Moving Papers, page 1, lines 18-22]

As the moving papers assert:

> Here, the Court already decided that no claim for lack of takeaway service warnings could be stated and granted leave to amend strictly limited to allegations regarding supplemental acrylamide language in warnings (Court's Order, Exh. A at ¶1.)  The Court, therefore, should strike PCRM's untimely allegations of a few restaurant locations that allegedly provided no warnings at all, as well as allegations of no warnings in takeaway areas, as outside the scope of leave granted. [See Moving Papers, page 14, lines 9-13]

Indeed, because of the changing theories used by Plaintiffs to survive successive demurrers, the Court, at the last hearing, limited the scope of amendment. Plaintiff's attempt to introduce a new theory of liability into the SAC (no signs at all) is beyond the scope of the Court's leave to amend. People v. Clausen (1967) 248 Cal.App.2nd 770, 785-786.