1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   LAURA J. ZUCKERMAN
    Supervising Deputy Attorney General
3   MEGAN K. HEY, State Bar No. 232345
    RAFAEL J. HURTADO, State Bar No. 292694
4   Deputy Attorneys General
    300 S Spring Street
5   Los Angeles, CA 90013
    Telephone: (213) 269-6344
6   Fax: (916) 731-2128
    E-mail: Megan.Hey@doj.ca.gov
7   *Attorneys for Rob Bonta, in his Official Capacity as*
    *Attorney General of the State of California*

8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

| | |
|---|---|
| **THE PERSONAL CARE PRODUCTS COUNCIL,** | 2:23-CV-01006-TLN-JDP |
| Plaintiff, | **ATTORNEY GENERAL ROB BONTA'S OPPOSITION TO THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,** | Judge: Hon. Troy L. Nunley<br>Date: December 14, 2023<br>Time: 2:00 p.m.<br>Room: 2 (15th Floor)<br>Action Filed: 5/26/2023 |
| Defendant. | |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.      Proposition 65 ...................................................................................................... 3

    II.     Respirable Titanium Dioxide Is Listed Under Proposition 65 as Causing
          Cancer .................................................................................................................. 6

STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION ......................................... 8

ARGUMENT ........................................................................................................................ 9

    I.      PCPC Is Not Likely to Succeed on the Merits Because Warnings for
          Respirable Titanium Dioxide Satisfy *Zauderer* ................................................... 9

          A.     Proposition 65 Warnings for Respirable Titanium Dioxide Satisfy
                *Zauderer* ................................................................................................. 9

                1.     The Safe Harbor Warning Is Purely Factual .................................. 9

                2.     The Safe Harbor Warning Is Uncontroversial ............................. 13

                3.     The Warning Reasonably Relates to the State's Substantial
                     Interest in Protecting Californians' Health and Safety ................ 15

                4.     Proposition 65 Warnings for Respirable Titanium Dioxide
                     Are Neither Unjustified Nor Unduly Burdensome ...................... 16

          B.     Proposition 65 Warnings for Respirable Titanium Dioxide Also
                 Satisfy *Central Hudson* ....................................................................... 17

    II.     The Remaining Preliminary Injunction Factors Favor Defendant ....................... 18

          A.     PCPC Fails to Show Irreparable Harm ................................................... 18

          B.     The Balancing of Equities and the Public Interest Weigh Strongly
                 in Favor of Denying the Motion ............................................................ 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*AFL-CIO v. Deukmejian*
    212 Cal. App. 3d 425 (1989) ..................................................................... *passim*

*Baxter Healthcare Corp. v. Denton*
    120 Cal. App. 4th 369 (2004) ............................................................................ 10

*Bd. of Trs. of State Univ. of N.Y. v. Fox*
    492 U.S. 469 (1989) ............................................................................................ 18

*Cal Chamber of Com. v. Brown*
    196 Cal. App. 4th 233 (2013) ............................................................................ 16

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*
    447 U.S. 557 (1980) ................................................................................... 2, 17, 18

*CTIA - The Wireless Ass'n v. City of Berkeley*
    928 F.3d 832 (9th Cir. 2019) ...................................................................... *passim*

*CTIA-The Wireless Ass'n v. City & County of San Francisco*
    827 F. Supp. 2d 1054 (N.D. Cal 2011) ............................................................. 11

*CTIA-Wireless Ass'n v. City & County of San Francisco*
    494 F.App'x 752 (9th Cir. 2012) ...................................................................... 10

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015) ............................................................................ 19

*Hill v. Novartis Pharm. Corp.*
    No. 1:06-CV-00939-AWI, 2012 WL 967577 (E.D. Cal. Mar. 21, 2012) ............ 17

*Johnson v. Am. Standard, Inc.*
    43 Cal. 4th 56 (2008) ........................................................................................ 16

*Lydo Enters. v. Las Vegas*
    745 F.2d 1211 (9th Cir. 1984) .......................................................................... 19

*Mazurek v. Armstrong*
    520 U.S. 968 (1997) ............................................................................................ 8

*Midgett v. Tri-County Met. Transp. Dist.*
    254 F.3d 846 (9th Cir. 2001) .............................................................................. 8

*National Ass'n of Wheat Growers et al. v. Bonta* (*NAWG*)
    No. 20-16758, 2023 WL 7314307 (9th Cir. Nov. 7, 2023) .......................... *passim*

*National Institute of Family and Life Advocates v. Becerra*
  138 S. Ct. 2361 (2018) ...................................................................................14, 15, 17

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
  434 U.S. 1345 (1977) .................................................................................... 20

*Nicolle-Wagner v. Deukmejian*
  230 Cal. App. 3d 652 (1991) ......................................................................... 16

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
  762 F.2d 1374 (9th Cir. 1985) ....................................................................... 19

*People ex rel. Lungren v Sup. Ct.*
  14 Cal. 4th 294 (1996) .................................................................................. 20

*Riley v. Nat'l. Fed'n of the Blind of North Carolina, Inc.*
  487 U.S. 781 (1988) ...................................................................................... 17

*Rust v. Sullivan*
  500 U.S. 173 (1991) ...................................................................................... 17

*Sabri v. United States*
  541 U.S. 600 (2004) ...................................................................................... 17

*Stanley v. Univ. of Southern Calif.*
  13 F.3d 1313 (9th Cir. 1994) ...................................................................... 8, 20

*Styrene Info. and Research Ctr. v. Office of Env't. Health Hazard Assessment*
  210 Cal. App. 4th 1082 (2012) ................................................................... 3, 14

*Winter v. Nat. Res. Def. Council*
  555 U.S. 7 (2008) ......................................................................................... 19

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct.*
  471 U.S. 626 (1985) ................................................................................. *passim*

**STATUTES**

United States Code, Title 21, § 379e(b)(5) ............................................................ 14

California Health and Safety Code
§ 25204(a) .................................................................................................... 5
§ 25249.6 ............................................................................................... 4, 5
§ 25249.7 .................................................................................................... 5
§ 25249.7(c) ................................................................................................ 5
§ 25249.7(d) ............................................................................................... 5
§ 25249.8(a) ........................................................................................... 3, 6
§ 25249.8(a), (b) ......................................................................................... 3
§ 25249.10(c) ..................................................................................... *passim*
§ 25603 ....................................................................................................... 5
§ 25607.2(b) ............................................................................................... 5

California Labor Code
§ 6382(b)(1) ........................................................................................... 3, 6
§ 6382(d) .................................................................................................... 3

**CONSTITUTIONAL PROVISIONS**

First Amendment .................................................................................. *passim*

**OTHER AUTHORITIES**

California Code of Regulations, Title 27
§ 25601 ....................................................................................................... 5
§ 25602 ....................................................................................................... 5
§ 25603 ....................................................................................................... 5
§ 25603(a)(2) .............................................................................................. 9
§ 25607.48 .................................................................................................. 5
§ 25607.49 .................................................................................................. 5
§ 25701 ............................................................................................... 10, 18
§ 25703(b) .................................................................................................. 4
§ 25705 ....................................................................................................... 5
§ 25904(b) .................................................................................................. 3

Code of Federal Regulations, Title 29, § 1910.1200, Appendix D ............................. 6

Federal Register
Volume 50, 10,375 (March 14, 1985) .................................................... 4
Volume 80, 40,138 (July 13, 2015) ...................................................... 6
Volume 80, 40,424 (July 13, 2015) ...................................................... 6

## INTRODUCTION

Plaintiff the Personal Care Products Council (PCPC) seeks a preliminary injunction prohibiting future Proposition 65 enforcement actions for a chemical it alleges its member companies use in a variety of products: airborne, unbound particles of titanium dioxide of respirable size (Respirable Titanium Dioxide). Respirable Titanium Dioxide was added to the Proposition 65 list in 2011 because it is a carcinogen. It is undisputed that tests show it causes cancer in animals—which is critical to the evaluation of its potential carcinogenicity in humans.

PCPC's motion fails to satisfy the high burden a preliminary injunction requires. Instead of carrying its burden with evidence, PCPC relies on significant mischaracterizations of Proposition 65 to attack both the statute and the hazard determination that underlies Respirable Titanium Dioxide's placement on the Proposition 65 list of carcinogens. First, PCPC's entire motion is predicated on a false construct: that a chemical that causes cancer in animals is not a "carcinogen" unless it has also been proven to cause cancer in humans. But "[a]ll known human carcinogens that have been studied adequately for carcinogenicity in experimental animals have produced positive results in one or more animal species [citations]."[1] In fact, for several agents, "carcinogenicity in experimental animals was established or highly suspected before epidemiological studies confirmed their carcinogenicity in humans . . . . Accordingly, in the absence of additional scientific information [e.g., data, not proffered here, that demonstrate that a chemical causes cancer in animals through a mechanism that does not operate in humans], these agents are considered to pose a carcinogenic hazard to humans."[2] Moreover, common definitions of the term "carcinogen" draw no distinction between chemicals that cause cancer in animals and those that cause cancer in humans, and PCPC cites nothing suggesting otherwise.[3]

Second, PCPC portrays Proposition 65 as a rigid regime that forces it to use a specific

---

[1] International Agency for Research on Cancer Monographs on the Evaluation of Carcinogenic Risks to Humans, Carbon Black, Titanium Dioxide and Talc, Vol. 93, at 23 (Feb. 2006) (Monograph), available at https://publications.iarc.fr/Book-And-Report-Series/Iarc-Monographs-On-The-Identification-Of-Carcinogenic-Hazards-To-Humans/Carbon-Black-Titanium-Dioxide-And-Talc-2010.

[2] *Id.*

[3] Merriam Webster defines "carcinogen" as: "a substance or agent causing cancer." https://tinyurl.com/5eryty56.

"government-drafted script" when a warning is necessary. Motion at 8. But Proposition 65's regulations allow a business that exposes consumers to a covered hazard to use any warning language that is "clear and reasonable." A business that does not wish to use a warning of its *own* choice *may* use an optional general consumer product "safe harbor" warning adopted by regulation. It is not required to use that warning if it thinks another would be more accurate.

However, the Proposition 65 general safe harbor warning passes constitutional muster under the test for compelled commercial disclosure of "purely factual and uncontroversial" information stated in *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct.*, 471 U.S. 626, 651 (1985). Respirable Titanium Dioxide *is* a carcinogen, and that is what the optional safe-harbor warning conveys. The warning is not controversial within the meaning of *Zauderer* because scientific agencies around the world have concluded that Respirable Titanium Dioxide causes cancer in animals. Moreover, even if there were such a debate, the warning would not be controversial for purposes of the First Amendment, because requiring those of PCPC's members exposing consumers to significant levels of Respirable Titanium Dioxide to provide a clear and reasonable warning would not compel them to take "sides in a heated political controversy." *See CTIA - The Wireless Ass'n v. City of Berkeley,* 928 F.3d 832, 845 (9th Cir. 2019) (*CTIA II*). Requiring a warning reasonably relates to California's substantial interest in providing its citizens with information about exposure to toxic chemicals in personal care products they may use. Indeed, because the warning requirement directly advances a "substantial" state interest and is "not more extensive than is necessary to serve that interest," even if the *Zauderer* exception did not apply, the warning requirement would still be constitutional under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

PCPC's motion also fails because PCPC has not shown irreparable harm, having waited a decade since private enforcers filed the first lawsuits alleging that businesses had exposed consumers to Respirable Titanium Dioxide without Proposition 65 warnings. The public interest and balancing of the equities also weigh in favor of honoring the will of California voters to receive warnings about Respirable Titanium Dioxide's potential cancer hazard. The motion should be denied.

## I.    PROPOSITION 65

California's Safe Drinking Water and Toxic Enforcement Act of 1986, known as Proposition 65, is a "right-to-know" law. The statute requires the State to publish a "list of those chemicals known to the state to cause cancer . . . within the meaning of this chapter." Cal. Health & Safety Code § 25249.8(a).[4] Californians passed the law out of concern that "'hazardous chemicals pose a serious potential threat to their health and well-being, [and] that state government agencies have failed to provide them with adequate protection. . . .'" *AFL-CIO v. Deukmejian*, 212 Cal. App. 3d 425, 430 (1989) (*Deukmejian*).

*How a Chemical Gets Listed*

A chemical is "known to [California] to cause cancer" pursuant to Proposition 65 if (1) "in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer," (2) a designated "authoritative body" has formally identified the chemical as a carcinogen, (3) a state or federal agency has "formally required [the chemical] to be labeled or identified as causing cancer," or (4) the chemical is identified in California Labor Code sections 6382(b)(1) or (d) (the Labor Code listing mechanism). § 25249.8(a), (b). "Causing cancer" means there is sufficient evidence of carcinogenicity either from studies in humans, or, more frequently, in experimental animals. Cal Code Regs. tit. 27, § 25306(e).

The Labor Code listing mechanism requires the listing if the United Nations' World Health Organization's International Agency for Research on Cancer (IARC) has classified the chemical as carcinogenic to humans (Group 1), probably carcinogenic to humans (Group 2A), or possibly carcinogenic to humans (Group 2B). Group 2A and 2B chemicals like Respirable Titanium Dioxide are only listed if IARC has found sufficient evidence of carcinogenicity in experimental animals. *Styrene Info. and Research Ctr. v. Office of Env't. Health Hazard Assessment*, 210 Cal. App. 4th 1082, 1101; *see also* Cal. Code Regs. tit. 27, § 25904(b).  Proposition 65's list includes

---

[4] Unless otherwise specified, all subsequent statutory references are to the California Health and Safety Code.

not just chemicals that cause cancer in humans but many that cause cancer in animals. *Deukmejian*, 212 Cal. App. 3d at 441. As the *Deukmejian* court held, beyond the chemicals "for which there is sufficient evidence of carcinogenicity to humans," the question is not "whether a chemical is 'probably' carcinogenic to humans, but whether it is in fact a known carcinogen[,]" and "*IARC Group 2* and supplemental category chemicals *as to which there is sufficient evidence that exposure causes cancer . . . in animals are also known carcinogens*." *Id.* at 437 (emphasis added). For decades, chemicals have been listed as carcinogens under Proposition 65 based on animal data.

As the *Deukmejian* court explains, the inclusion of such chemicals is important. "It is unethical to test humans, and because of the 20-to 30-year latency period of many human cancers, epidemiological studies do not adequately warn humans and protect them from the risk of exposure to new carcinogens." *Deukmejian*, 212 Cal. App. 3d at 438 n.7. The ability to extrapolate from animal effects to human effects "has been accepted by all health and regulatory agencies and is regarded widely by scientists in industry and academia as a justifiable and necessary inference. . ." *Id.* (quoting Off. of Science and Tech. Policy, Chemical Carcinogens; Review of Science and its Associated Principles, February 1986, 50 Fed. Reg. 10375 (Mar. 14, 1985)). And as noted previously, "[a]ll known human carcinogens that have been studied adequately for carcinogenicity in experimental animals have produced positive results in one or more animal species [citations]."[5]

*Underline What Listing Means for Businesses*

Proposition 65 protects the public and consumer choice by requiring businesses to notify consumers when a product will expose them to a listed chemical. § 25249.6. But Proposition 65's warning requirements are limited. For example, no warning is required if use of the product in question would expose the user to the chemical in an amount that "poses no significant risk assuming lifetime exposure at the level in question." § 25249.10(c); Cal. Code. Regs. tit. 27, § 25703(b). A business concerned about possible liability may seek a "safe use determination" by asking the lead agency, the Office of Environmental Health Hazard Assessment (OEHHA), for an

---
[5] Monograph at 23.

opinion on whether that business must provide a warning for that exposure. § 25204(a). And OEHHA has adopted a regulatory "No Significant Risk Level" (NSRL) for many chemicals on the Proposition 65 list. *See, e.g.,* Cal. Code Regs. tit. 27, § 25705. The NSRL, or safe harbor level, is an exposure below which no warning is required. OEHHA is in the process of proposing an NSRL for Respirable Titanium Dioxide. Declaration of Megan Hey (Hey Decl.), ¶ 3. Once the NSRL is in effect, exposures below that level will be categorically exempt from Proposition 65 requirements. *See* Cal. Code Regs. tit. 27, § 25705.

Where there is not such an exemption, Proposition 65 allows flexibility in terms of a warning's method and content. Proposition 65 allows a business to use any warning method or content that is "clear and reasonable." *See* § 25249.6; Cal. Code Regs. tit. 27, § 25601 *et seq*. Businesses that do not wish to develop their own warning may use applicable "safe harbor" language that OEHHA has adopted by regulation and deemed "clear and reasonable" under Proposition 65. OEHHA has adopted several such optional safe-harbor warnings—including the general consumer product safe harbor warning that plaintiffs attack here, *see, e.g.,* § 25603 (consumer product exposure warnings), and more specific warnings for various other chemical exposures, Cal. Code Regs. tit. 27, §§ 25607.48 and 25607.49 (for glyphosate), and § 25607.2(b) (for acrylamide).[6]

The Attorney General, District Attorneys, and certain City Attorneys enforce Proposition 65. § 25249.7(c). Proposition 65 also contains a private enforcement mechanism. § 25249.7(d). Remedies for violation of the statute include injunctive relief and penalties of up to $2,500 per violation. § 25249.7. Enforcement by the Attorney General and by private enforcers have resulted in numerous consent judgments in which companies agreed to reduce chemical exposures, or, where that was not feasible, provide clear and reasonable warnings. Hey Decl., ¶ 5.

---

[6] There also is a short-form safe harbor warning. *See, e.g.,* Cal. Code Reg. tit. 27, §§ 25601, 25602, and 25603. However, this warning is currently being amended. Off. of Env't Health Hazard Assessment, *May 2022 Status Update for Clear and Reasonable Warnings - Short Form: Completion of Proposed Rulemaking* (May 20, 2022), available at https://tinyurl.com/y2ctbn52.

## II. RESPIRABLE TITANIUM DIOXIDE IS LISTED UNDER PROPOSITION 65 AS CAUSING CANCER

This case concerns the requirement to provide a warning for significant exposures to Respirable Titanium Dioxide. Its placement on the Proposition 65 list was triggered by a finding by IARC, the cancer research arm of the World Health Organization. IARC was founded in 1965 by the United States and other United Nations member governments, and is partially funded by the United States.[7] The U.S. Environmental Protection Agency has called IARC "a recognized international authority on the carcinogenic potential of chemicals and other agents[.]"[8] So does the federal government: the Occupational Safety and Health Administration (OSHA) requires that employees who handle products containing chemicals IARC has listed as potential carcinogens must be informed, by means of a Safety Data Sheet (SDS), of IARC's determination.[9] IARC is the only international agency considered authoritative under Proposition 65. Health & Safety Code § 25249.8(a); Lab. Code § 6382(b)(1).

IARC determines whether a chemical suspected of being carcinogenic is a cancer hazard. A cancer "hazard" is an agent "capable of causing cancer under some circumstances." Monograph at 10. IARC, unlike certain other agencies, does not assess "risk"; i.e., assess the level of exposure that would pose a significant risk of cancer. *Id.* "The distinction between hazard and risk is important, and the Monographs identify cancer hazards even when risks are very low at current exposure levels, because new uses or unforeseen exposures could engender risks that are significantly higher." *Id.* Proposition 65 incorporates risk assessment, however, by providing that businesses need only provide warnings for listed chemicals if they cannot establish that the exposures they cause fall below a significant level of risk. § 25249.10(c).

Titanium dioxide is a chemical that has numerous uses, including as a pigment in a variety of goods including paper, plastics, surface coatings, paint and coating, and as pigments and UV

---

[7] IARC, *Membership*, https://tinyurl.com/y745dhmp; Monograph at 9.
[8] 80 Fed. Reg. 40,138, 40,424 (July 13, 2015).
[9] Federal law specifically requires the SDS to state "Whether the hazardous chemical . . . has been found to be a potential carcinogen in the International Agency for Research on Cancer (IARC) Monographs (latest edition), or by OSHA." 29 C.F.R. § 1910.1200, App. D.

blockers in sunscreens. Monograph at 202, 205. This case relates specifically to titanium dioxide in the form of airborne, unbound particles of respirable size, not to these other forms of titanium dioxide.[10]

In 2010, IARC released *Monographs on the Evaluation of Carcinogenic Risks to Humans, Carbon Black, Titanium Dioxide and Talc, Vol. 93*. As part of an overall evaluation of all the scientific evidence, the IARC Working Group "considered the human and animal evidence as well as the evidence regarding potential mechanisms through which [airborne titanium dioxide] might cause cancer in humans." Monograph at 275. Because it found there was "*sufficient evidence* in experimental animals for the carcinogenicity of [airborne titanium dioxide]," but "inadequate evidence" in humans, it classified airborne titanium dioxide as "possibly carcinogenic to humans" (Group 2B). *Id.* "Sufficient evidence" and "inadequate evidence" are terms of art used by IARC as descriptors of the strength of the scientific evidence. Neither term suggests that the chemical is not associated with cancer.[11]

IARC's determination that airborne titanium dioxide causes cancer in animals is supported by, and consistent with the analyses of, other scientific organizations. The National Institute for Occupational Safety and Health (NIOSH), a U.S. government research agency that is part of the Centers for Disease Control and Prevention, in the Department of Health and Human Services, examined occupational exposure to airborne titanium dioxide in 2011, and determined that "*Ultrafine* $TiO_2$ is a potential occupational carcinogen but . . . there are insufficient data at this time to classify *fine* $TiO_2$ as a potential occupational carcinogen."[12] NIOSH stated that it "supports [IARC's] decision and the underlying analysis leading to this conclusion."[13]

---

[10] Monograph at 198; Off. of Env't Health Hazard Assessment, *Titanium Dioxide (Airborne Unbound Particles of Respirable Size)* (Nov. 2018), https://tinyurl.com/2jn758hu.

[11] For example, when evaluating the strength of the scientific evidence of cancer in humans "inadequate evidence" means that "[n]o data are available, or the available studies are of insufficient quality, consistency, or statistical precision to permit a conclusion to be drawn about the presence or the absence of a causal association between exposure and cancer." Jonathan M. Samet, et al., *The IARC Monographs: Updated Procedures for Modern and Transparent Evidence Synthesis in Cancer Hazard Identification*, Journal of the National Cancer Inst. (Sept. 9, 2019), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6968684/.

[12] NIOSH, Nat'l Inst. of Health, Occupational Exposure to Titanium Dioxide, Current Intel. Bulletin 63, at iii (April 2011), available at https://tinyurl.com/fhjdkkeb (emphasis added).

[13] *Id.* at 76.

7

Japan's National Institute of Technology and Evaluation also upheld IARC's determination in 2017, basing its finding that nanoparticles and non-nano particles of airborne titanium dioxide lead to possible human carcinogenicity.[14] And the Canadian Center for Occupational Health and Safety lists titanium dioxide as a "Possible carcinogen," noting it "May cause cancer based on animal information. Has been associated with: lung cancer."[15]

The European Union's (EU) stance on titanium dioxide is currently in flux. The EU had classified titanium dioxide by inhalation as a Category 2 "suspected human carcinogen" in 2020. In November 2022, a challenge from the Titanium Dioxide Manufacturers Association resulted in a European court's annulling the classification. However, the annulment has since been suspended, pending an appeal by France's Agency for Food Environmental and Occupational Health & Safety (ANSES) filed in February 2023.[16]

## STANDARD OF REVIEW FOR A PRELIMINARY INJUNCTION

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To prevail, the movant must make a clear showing that: (1) he will suffer irreparable injury if injunctive relief is not granted; (2) he is likely to prevail on the merits; (3) the non-moving party would not be harmed more than the movant would be helped by the injunction; and (4) the injunction is in the public interest. *See Stanley v. Univ. of Southern Calif.*, 13 F.3d 1313, 1319 (9th Cir. 1994). Moreover, "a federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state." *Midgett v. Tri-County Met. Transp. Dist.*, 254 F.3d 846, 851 (9th Cir. 2001). Although the standard for establishing irreparable harm is somewhat relaxed in a First Amendment case, "the mere assertion of First Amendment rights does not automatically require a finding of irreparable injury." *CTIA*

---

[14] *See* Japan National Institute of Technology and Evaluation, *Titanium Dioxide* (2017), available at Search Results - NITE-CHRIP (NITE Chemical Risk Information Platform).

[15] Canadian Center for Occupational Health and Safety, *Titanium Dioxide* (June 13, 2023), available at https://tinyurl.com/368xk6as.

[16] Ministère de la Transition écologique et de la Cohésion des territoires, et al., *La France continue de défendre la classification du dioxyde de titane comme cancérogène suspecté au niveau européen* (Feb. 13, 2023) (Ministère), available at La France continue de défendre la classification du dioxyde de titane comme cancérogène suspecté au niveau européen | Ministères Écologie Énergie Territoires (ecologie.gouv.fr).

*II*, 928 F.3d at 851.

**ARGUMENT**

**I.    PCPC IS NOT LIKELY TO SUCCEED ON THE MERITS BECAUSE WARNINGS FOR RESPIRABLE TITANIUM DIOXIDE SATISFY *ZAUDERER***

Under *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 651 (1985), purely factual and uncontroversial government-compelled warnings or disclosures pass constitutional muster if they reasonably relate to a substantial government interest, *id.*, and are not unjustified or unreasonably burdensome, *CTIA II*, 928 F.3d at 842. PCPC has not shown that that Proposition 65 warnings for Respirable Titanium Dioxide will fail this test.

**A.    Proposition 65 Warnings for Respirable Titanium Dioxide Satisfy *Zauderer***

The requirement to give a clear and accurate warning satisfies *Zauderer*. A business may choose to develop a clear and reasonable warning or to use an optional safe harbor warning approved by OEHHA. If a business opted to use the non-mandatory general safe harbor warning for Respirable Titanium Dioxide, it would read:

> This product can expose you to chemicals including titanium dioxide (airborne, unbound particles of respirable size), which is known to the State of California to cause cancer. For more information go to www.P65Warnings.ca.gov.

Cal. Code Regs. tit. 27, § 25603(a)(2). This warning comports with the First Amendment under *Zauderer* because it is (1) purely factual; (2) uncontroversial; (3) reasonably related to a substantial state interest; and (4) not unduly burdensome. *CTIA II*, 928 F.3d at 842; *see also National Ass'n of Wheat Growers et al. v. Bonta* (*NAWG*), No. 20-16758, 2023 WL 7314307, at *29 (9th Cir. Nov. 7, 2023) (discussing *CTIA II*).[17]

**1.  The Safe Harbor Warning Is Purely Factual**

The safe harbor warning on the previous page states three things. The first clause, "[t]his product can expose you to chemicals including titanium dioxide (airborne, unbound particles of

_____

[17] On November 16, 2023, the Ninth Circuit granted the Attorney General's unopposed motion for extension of time to file a petition for rehearing in *NAWG*.

respirable size)," is clearly factual. Businesses must provide a warning only if their products expose consumers to Respirable Titanium Dioxide above a level that results in significant risk, and there will be no warning if there is no exposure. § 25249.10(c); Cal. Code. Regs. tit. 27, § 25701.

The next clause, "which is known to the State of California to cause cancer," is also purely factual. As noted above, the evidence shows that Respirable Titanium Dioxide causes cancer in animals. PCPC has not provided evidence to the contrary, or shown that the mechanism of carcinogenesis does not apply in humans. *Cf. Baxter Healthcare Corp.,* 120 Cal. App. 4th at 369-70 (suit seeking declaratory judgment that listed chemical "does not pose a significant risk of causing cancer" in humans). Thus, the statement that Respirable Titanium Dioxide is "known" to cause cancer is factually accurate.

Finally, the last sentence of the safe harbor language above is not a statement of fact at all, but a direction to the consumer to consult an available resource for more information. *See CTIA II*, 928 F.3d at 838. Thus, each sentence of the safe harbor warning is factually accurate; it does not constitute an "inflammatory warning," as PCPC complains. *See id.* at 846-848.

Of course, "a statement may be literally true but nonetheless misleading and, in that sense, untrue." *CTIA II,* 928 F.3d at 847; *NAWG*, 2023 WL 7314307, at *29, 32. In *NAWG*, the Court found the safe harbor warning for glyphosate implicitly misleading, because, in its view, the warning implied that there was scientific consensus that glyphosate causes cancer when only a single agency had found it to be a probable human carcinogen. *See NAWG*, 2023 WL 7314307, at *32. The situation here is different. Here, there is strong scientific consensus, and no legitimate debate about the fact that—as IARC found, and NIOSH and other governmental agencies have agreed—sufficient evidence establishes that Respirable Titanium Dioxide causes cancer in animals. Thus, the statement that Respirable Titanium Dioxide is known to cause cancer is purely factual and not misleading.

For its contention that the safe harbor warning is misleading when used to warn of exposures to Respirable Titanium Dioxide, PCPC may seek to rely on a statement by the *NAWG* Court that it "agree[d] with the reasoning expressed in" *CTIA-Wireless Ass'n v. City & County of*

10

*San Francisco*, 494 F.App'x 752, 754 (9th Cir. 2012). The 2012 *CTIA* opinion affirmed the

district court's finding in *CTIA-The Wireless Ass'n v. City & County of San Francisco*, 827 F.

Supp. 2d 1054 (N.D. Cal 2011) that a fact sheet required by San Francisco did not survive First

Amendment scrutiny under *Zauderer*. *NAWG*, 2023 WL 7314307, at *36. The *CTIA* district court

had "enjoined the distribution of the ordinance's fact-sheet, concluding that although mostly

factually true, there were several misleading omissions which left the 'overall impression . . . that

cell phones are dangerous and that they have somehow escaped the regulatory process.'" *Id.* But

the fact sheet was based on an IARC determination that non-ionizing, radiofrequency radiation

was a possible human carcinogen—which in turn was based neither on a finding that it caused

cancer in animals nor a finding that it caused cancer in humans.[18] Thus, IARC's conclusion about

cell phone radiation would not have supported a Labor Code listing under Proposition 65. Here,

by contrast, scientific agencies have reached a consensus that Respirable Titanium Dioxide causes

cancer in animals; thus, it is a cancer hazard, and the safe harbor warning is not misleading.

PCPC also argues that, even if the safe harbor warning is literally correct, it misleadingly

implies that exposure to the chemical "*will* increase the consumer's risk of cancer." PCPC bases

its argument on a consumer survey and declaration by Stephen Nowlis, Ph.D (Nowlis Decl.). *See*,

*e.g.*, Motion at 12 (emphasis added); Nowlis Decl. ¶¶ 9, 10. A thorough expert critique of the

Nowlis Declaration and survey will be provided at the merits stage of this case. However, even on

its face, the survey's obvious flaws make it inadmissible.[19]

The Nowlis Declaration states that the majority of consumers who are shown an online

mock-up of an eye-shadow package with an arrow directing their attention to the safe harbor

warning for Respirable Titanium Dioxide believe that "using the product increases their risk of

---

[18] IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, Non-Ionizing Radiation, Part 2: Radiofrequency Electromagnetic Fields, Vol. 102, at 419, available at https://tinyurl.com/4rsr9hjm.

[19] *See* Attorney General's Objections to Declaration of Stephen M. Nowlis, Ph.D., filed herewith. By way of example, the Nowlis survey professes to be based on responses from 612 people representative of California consumers over age 13 who had bought or planned to buy eye shadow. Nowlis Decl., ¶ 17. However, a group of people who sign up to take a survey in exchange for currency that can be exchanged for money or goods ("swagbucks" or "tellwut points") are not, by definition, a true, randomized, representative sample of California consumers who would encounter a Proposition 65 warning on a product they intended to buy, and are not considering the effect of the warning in exchange for money. *See* Nowlis Decl., ¶ 17.

getting cancer." Nowlis Decl., ¶¶ 9, 10, 30, 53; Motion at 12 ("exposure to Listed Titanium Dioxide in a consumer product *will* increase the consumer's risk of cancer") (emphasis added). But many of the Nowlis participants' responses even to the survey's leading questions were far more equivocal than PCPC implies. *See* Nowlis Decl. at p. G-4 (10 respondents, whose answers included "there are chemicals in the product that *could* cause cancer"; "That the product *can* expose one to chemicals"; "that this product has the *possibility* of transmitting dangerous chemicals to the user"; "There are ingredients that *can* cause cancer contained in the eye shadow"; and "Go to the website for more information about *possible* cancer") (emphasis added).

One need not be an expert in marketing or consumer behavior research to appreciate that posing a series of increasingly leading questions, each of which directs the respondents to think about the very response the survey proponent seeks, results in a highly biased survey with questionable results. And even a sample of the actual responses from these paid survey panelists shows that the safe harbor warning does not communicate a message of unequivocal certainty about increased risk resulting from use of these products, as PCPC claims. To the contrary, they show the safe harbor warning communicates a completely accurate statement about *possible* harm arising from exposure to a known carcinogen.

PCPC offers a declaration by its expert Dr. Paolo Boffetta (Boffetta Decl.), contending that epidemiological studies "strongly suggest[]that exposure to [Airborne Titanium Dioxide], in any form, does not increase the risk of any cancer in humans." Boffetta Decl., ¶ 8(a). But a declaration by one industry-paid expert, who relies only on epidemiological studies, does not meet PCPC's preliminary injunction burden. IARC (which does not have the same bias as the industry's paid expert) also considered epidemiological studies.[20] Monograph at 12. IARC found that while there was inadequate evidence of carcinogenicity from the epidemiological studies, "there was *sufficient evidence* that [airborne] titanium dioxide is carcinogenic in experimental

---

[20] The Attorney General argues, moreover, that the Court should discount the testimony of Dr. Boffetta in light of the history of criticism from peers for his failure to disclose industry conflicts of interest—criticism that forced him to withdraw from candidacy to be the Director of the French Centre for Research in Epidemiology and Public Health. Ruff, et al., *Conflict of Interest, Tailored Science, and Responsibility of Scientific Institutions and Journals*, New Solutions, vol. 24(3), at 263-264 (2014), available at https://journals.sagepub.com/doi/pdf/10.2190/NS.EOV.

animals." *Id.* at 275-276. As noted above, other nations' health agencies, including Canada, and Japan agree. Relying on animal studies is standard practice, as "because of the 20-30 year latency period of many human cancers, epidemiological studies do not adequately warn humans and protect them from the risk of exposure to new carcinogens." *Deukmejian*, 212 Cal. App. 3d at 438 n.7.

### 2. The Safe Harbor Warning Is Uncontroversial

The warning also is not controversial. As described above, IARC and several other health agencies found that Respirable Titanium Dioxide is a possible human carcinogen, based on positive cancer findings in animal studies. For this reason, OSHA requires that employees who handle products containing Respirable Titanium Dioxide must be informed of IARC's determination via Safety Data Sheets.[21] 29 C.F.R. § 1910.1200, App. D. Moreover, unlike the situation in *NAWG*, where the Court found that the warning language "elevates one side of a legitimately unresolved scientific debate," there is no legitimate scientific debate that Respirable Titanium Dioxide causes cancer in animals; this formed the basis of IARC's cancer determination and the Labor Code listing under Proposition 65. *NAWG*, 2023 WL 7314307, at *33.

PCPC tries several arguments to manufacture a controversy, but none is persuasive.[22] Its two scientist experts, Drs. Amy Madl and Paolo Boffetta, contend that the evidence does not support the idea that Respirable Titanium Dioxide is a *human* carcinogen, Madl Declaration, ¶ 1, or that exposure to it increases the risk of lung or other cancers in *humans*. Boffetta Decl. ¶ 8(b) (relying on epidemiological studies). But the safe harbor warning does not specify that exposures to Respirable Titanium Dioxide are known to cause "cancer in humans"; just "cancer." And about that, there is, as noted, no controversy.

---

[21] *See, e.g.*, *Titanium Dioxide Powder*, Safety Data Sheet (last updated March 19, 2015), https://tinyurl.com/2p9xc6vx, ("Health hazard: Carcinogenicity, category 2 . . . Suspected of causing cancer"); Spectrum, *Titanium Dioxide USP*, Safety Data Sheet (May 17, 2022), https://tinyurl.com/4hjsac7t ("Hazard Classification: Carcinogenicity, Category 2 . . . Suspected of causing cancer").

[22] As the *NAWG* Court acknowledged, concerns that "large companies would have a perverse incentive to 'manufacture' a scientific controversy where none exists [ . . . ] may have some validity." *NAWG*, 2023 WL 7314307, at *33, n.11.

13

PCPC points to the 2022 decision by a European court in favor of a claim by the Titanium Dioxide Manufacturers Association that resulted in the annulment of the EU's 2020 determination that Respirable Titanium Dioxide is a "possible human carcinogen." Motion at 6. But this does not demonstrate the existence of an ongoing controversy for purposes of the First Amendment. The French agency ANSES appealed this decision in February 2023, and the lower court's annulment of the classification has been suspended. *Ministère*. Indeed, the EU currently identifies titanium dioxide by inhalation as "suspected of being carcinogenic."[23]

PCPC also highlights a determination by the U.S. Food and Drug Administration (FDA) that titanium dioxide may be used in cosmetics in specific amounts consistent with good manufacturing practices. According to PCPC, this serves as proof that the FDA has, in fact, determined that Respirable Titanium Dioxide had not been shown to cause cancer in animals or humans. Declaration of Thomas Myers, ¶ 4. But PCPC has identified no requirement that FDA undertake testing or make findings of non-carcinogenicity before allowing a chemical's use. Moreover, the FDA use rule relates to a *risk determination*, based on the amount of titanium dioxide it might consider safe. *See* 21 U.S.C. § 379e(b)(5). Proposition 65 warnings are required for significant exposures to identified cancer *hazards*. The IARC classification of Respirable Titanium Dioxide as a possible human carcinogen is a *hazard* determination: a risk determination based on an expected exposure scenario does not undercut its validity.

In fact, PCPC has offered no evidence that any scientific or governmental agency or authority has determined Respirable Titanium Dioxide is not a possible human carcinogen. Similarly, it has failed to establish the existence of any scientific controversy regarding whether Respirable Titanium Dioxide causes cancer in animals. For this reason, although PCPC may seek to argue that the recent Ninth Circuit opinion in *NAWG* precludes application of the *Zauderer* standard here, such an argument would fail, because as noted above the facts are very different.

However, even if there were a genuine scientific debate about whether Respirable Titanium Dioxide is a carcinogen, such a debate would not rise to the level of "controversial"

---

[23] European Chemicals Agency, *Substance Information*, available at https://echa.europa.eu/substance-information/-/substanceinfo/100.033.327.

under *Zauderer, CTIA II*, and *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) (*NIFLA*), a case in which health care providers were required to post information relating to a politically-divisive issue involving deeply-personal beliefs. *See NIFLA,* 138 S. Ct. at 2372 (explaining that for purposes of the *Zauderer* analysis, abortion was "anything but an 'uncontroversial' topic"); *CTIA II*, 928 F.3d 832, 845 ("the compelled statement [in *NIFLA*] took sides in a heated political controversy"). The fact that PCPC and its experts disagree with the scientific consensus that Respirable Titanium Dioxide causes cancer in animals and is a possible human carcinogen is not a "heated political controversy"; thus, it does not rise to the level of "controversial" within the meaning of the First Amendment. *See NIFLA*, 138 S. Ct. at 2372; *CTIA II*, 928 F.3d at 848 (despite controversy over the risk from cell phone radiation, a city's required disclosure was "uncontroversial"). To the extent *NAWG* allows a compelled statement to be viewed as controversial though it does not concern a divisive political topic, that principle extends at most to statements that are controversial in the way *NAWG* thought the warning was there: as contradicted by a clear scientific consensus. Nothing similar is the case here.

### 3. The Warning Reasonably Relates to the State's Substantial Interest in Protecting Californians' Health and Safety

Finally, the safe-harbor warning (or any other clear and reasonable warning) passes *Zauderer*'s third requirement: that the compelled disclosure reasonably relate to a substantial governmental interest. "There is no question that protecting the health and safety of consumers is a substantial government interest." *CTIA II*, 928 F.3d at 845. Californians passed Proposition 65 out of concern that the State was failing to protect them from toxic chemicals. *See Deukmejian*, 212 Cal. App. 3d at 430. And as explained above, chemicals that cause cancer in animals are relevant to human health. *Deukmejian*, 212 Cal. App. 3d at 437 (holding "IARC Group 2 and supplemental category chemicals as to which there is sufficient evidence that exposure causes cancer . . . in animals are also known carcinogens"); *id.* at 438, n.7 (noting that "[i]t is unethical to test humans, and because of the 20-to 30-year latency period of many human cancers, epidemiological studies do not adequately warn humans and protect them from the risk of exposure to new carcinogens"); Monograph at 23 ("it is biologically plausible that agents for

15

which there is sufficient evidence of carcinogenicity in experimental animals [ . . . ] also present a carcinogenic hazard to humans").

### 4. Proposition 65 Warnings for Respirable Titanium Dioxide Are Neither Unjustified Nor Unduly Burdensome

As explained above, Proposition 65 does not require PCPC's members to use any specific warning language. Where a warning is required, PCPC's members are free to develop any warning that is "clear and reasonable," in accordance with the statute. As such, the warning requirement is not unduly burdensome. PCPC alleges that, for practical purposes, it must use the safe harbor warning. Motion at 10. However, it appears that there are no instances where a business has proposed alternative Proposition 65 warning language for a product containing Respirable Titanium Dioxide. Hey Decl., ¶ 4. Nor has PCPC explained why other clear and accurate warnings of its own devising (which do not have to be approved by any state agency) would be problematic. Thus, PCPC cannot correctly claim that other options do not exist.

PCPC also contends that a Proposition 65 warning for Respirable Titanium Dioxide is "unjustified" because it allegedly addresses a "purely hypothetical harm." Motion at 14. Again, this argument relies on PCPC's mischaracterizing Proposition 65 as pertaining solely to chemicals for which there is human evidence of carcinogenicity. The State's interest in requiring Proposition 65's warnings is to inform Californians "about exposures to chemicals that cause cancer." *Cal Chamber of Com. v. Brown,* 196 Cal. App. 4th 233, 258 (2013) (quoting Proposition 65 Ballot Pamphlet Preamble). IARC determined that Respirable Titanium Dioxide causes cancer in animals, and is a possible human carcinogen; therefore, California is justified in requiring businesses to convey that information to consumers whom their products expose to the chemical.

PCPC quotes two cases in which California courts recognized, correctly, that "unjustified warnings," i.e., "over-warning," are inconsistent with Proposition 65's purpose. Motion at 14 (quoting *Nicolle-Wagner v. Deukmejian,* 230 Cal. App. 3d 652, 660-61 (1991) and *Johnson v. Am. Standard, Inc.* 43 Cal. 4th 56, 70 (2008)). However, PCPC has proffered no admissible evidence to suggest that the Proposition 65 warning requirement for Respirable Titanium Dioxide will lead to over-warning. Indeed, consistent with the cases that PCPC cited, OEHHA encourages

16

businesses not to provide prophylactic warnings on their products when the exposure levels do not pose a significant risk of cancer.[24] While PCPC protests that a business incurs an expense to determine whether or not its product's anticipated exposure level poses a significant risk of cancer and thus requires a warning, *see* Motion at 16, the cost of ascertaining whether its products will expose Californians to a significant risk of cancer is simply a cost of doing business in the State. *See Hill v. Novartis Pharm. Corp.*, No. 1:06-CV-00939-AWI, 2012 WL 967577, at *9 (E.D. Cal. Mar. 21, 2012) (calling "increased economic exposure" a New Jersey company faced in California product liability lawsuit applying California punitive damages law was "nothing more than the cost of doing business").[25]

### B. Proposition 65 Warnings for Respirable Titanium Dioxide Also Satisfy *Central Hudson*

A compelled disclosure that does not qualify as "purely factual and uncontroversial" under *Zauderer* may nonetheless be constitutional if it "directly advances" a "substantial" state interest and is "not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Thus, should this Court determine that the *Zauderer* exception does not apply to Proposition 65 warnings for Respirable Titanium Dioxide (which it should not), it must analyze the warnings under *Central Hudson*. *See NIFLA*, 138 S. Ct. at 2372; *NAWG*, 2023 WL 7314307, at * 42; *CTIA II*, 928 F.3d at 845. Pursuant to *Central Hudson*, the State "must assert a substantial interest to be achieved," the law must "directly advance[e]" that interest, and it may not be "more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 564. The Supreme Court has rejected the contention that "no more extensive than necessary" is equivalent to the "least-restrictive-means"

---

[24] *See* Off. of Env't Health Hazard Assessment, *Proposition 65 FAQs* (Feb. 1, 2014), https://oehha.ca.gov/proposition-65/proposition-65-faqs.
[25] As part of its argument that warnings for Respirable Titanium Dioxide would be unduly burdensome, PCPC includes a facial attack on Proposition 65, arguing that it contains an unconstitutional burden-shifting mechanism. Motion at p. 15-17 (citing *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.,* 487 U.S. 781 (1988), 793; *NIFLA*, 138 S. Ct. at 2377). A facial attack on a statute contends that "no application of the statute would be constitutional." *Sabri v. United States*, 541 U.S. 600, 609 (2004). PCPC does not meet this "heavy burden," not least of all because its lawsuit concerns only one listed chemical. *See Rust v. Sullivan*, 500 U.S. 173, 183 (1991).

standard, cautioning that substantial deference must be accorded to the states when reviewing restrictions on commercial speech. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477-81 (1989). *Central Hudson* simply requires a "'fit' between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily *perfect*, but reasonable . . . ." *Id.* at 480 (emphasis added, citation omitted).

As discussed, protecting the health and safety of consumers is a substantial government interest. *CTIA II*, 928 F.3d at 845. According to PCPC's own survey data, Californians understand the safe harbor warning for Respirable Titanium Dioxide to communicate that exposure to the airborne and respirable form of titanium dioxide *could* (not *will*) increase their risk of cancer, which is a true statement. *See* discussion at Section II. The warning, which is truthful and not misleading, thus promotes the State's interest in protecting public health. There is also a "reasonable" fit between the required disclosure and the State's interest in protecting consumers from exposure to carcinogens. *Fox*, 492 U.S. at 480. Businesses are not required to provide a warning when the anticipated exposure will not result in a significant cancer risk. *See* § 25249.10(c); Cal. Code. Regs. tit. 27, § 25701. Businesses may also provide alternative "clear and reasonable" warnings that are "narrowly drawn," addressing the Respirable Titanium Dioxide exposure without using the "known to cause cancer" language in the general consumer product safe harbor warning. *See Cent. Hudson*, 447 U.S. at 565. For these reasons, Respirable Titanium Dioxide warnings are permissible under *Central Hudson*.

II. **THE REMAINING PRELIMINARY INJUNCTION FACTORS FAVOR DEFENDANT**

While PCPC's failure to show that it is likely to prevail on the merits precludes injunctive relief, it has also failed to show that the other preliminary injunction factors favor relief: that PCPC will be irreparably harmed, that the non-moving party will not be harmed more than PCPC will be helped by the injunction, and that the injunction is in the public interest. Its motion fails for this reason as well.

A. **PCPC Fails to Show Irreparable Harm**

PCPC cannot show irreparable harm, as it waited *a decade* after the first Proposition 65 enforcement action for Respirable Titanium Dioxide was filed to seek injunctive relief, and this

18

delay significantly undermines its claims of harm. In fact, PCPC's Norris Declaration alleges that in 2013, two years after the chemical was listed, private enforcers filed notices naming a total of 145 manufacturers and 3 retailers, Norris Decl., ¶¶ 4, 5, and that in 2020, seven companies received notices; "18 companies in 2021, 198 companies in 2022, and 150 companies in 2023 thus far. Several of PCPC's members have been the targets of these notices and the lawsuits filed on their basis." *Id.* at ¶ 10. Delays, even those much shorter than PCPC's, bespeak a lack of urgency and undermine claims of irreparable harm. *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985) (injunction denied where a litigant waited "several years" to act). Even delays of *months* undermine claims of irreparable harm. *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (injunction denied). In First Amendment cases, delay remains a significant factor in establishing injury and assessing the relative burdens of an injunction on the parties. *See Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1213, 1216 (9th Cir. 1984) ("alleged injury might have been greatly reduced" absent five-year delay, and noting that "delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."). Here, after ten years of Proposition 65 enforcement for Respirable Titanium Dioxide exposures, PCPC now argues that its members will be irreparably harmed if this Court does not grant the extraordinary and drastic remedy of enjoining such enforcement. This delay undermines PCPC's claims of injury.

Moreover, PCPC offers no admissible evidence of economic or other tangible harm that its members have suffered (or will suffer); rather, it relies on hearsay declarations asserting general harm to its members.[26] While the standard for establishing irreparable harm is *somewhat* relaxed in a First Amendment case, "the mere assertion of First Amendment rights does not automatically require a finding of irreparable injury." *CTIA II*, 928 F.3d at 851.

### B. The Balancing of Equities and Public Interest Weigh Strongly in Favor of Denying the Motion

PCPC must make a clear showing that "the balance of equities tips in [its] favor, and that

---

[26] *See* Attorney General's Objections to Declarations of Trenton H. Norris and Thomas Myers.

an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). In balancing the equities, the moving party must demonstrate that the non-moving party would not be harmed more than the movant would be helped if the injunction is granted. *Stanley v. Univ. of Southern Calif.*, 13 F.3d 1313, 1319 (9th Cir. 1994). PCPC fails to make the requisite showing. A majority of Californians voted for Proposition 65, motivated by the concern that the State "had failed to provide them with adequate protection" from toxic chemicals. *See People ex rel. Lungren v Sup. Ct.*, 14 Cal. 4th 294, 306 (1996) (quoting Ballot Pamphlet at 53). As discussed above in Section II, Respirable Titanium Dioxide is a chemical known to cause cancer based on animal tests. Enjoining the warning requirement for Respirable Titanium Dioxide would prevent the State from requiring businesses to provide precisely the type of information about a carcinogen that the voters sought in passing the statute. *See People ex rel. Lungren*, 14 Cal. 4th at 306; *Deukmejian*, 212 Cal. App. 3d at 430-31 (quoting Ballot Pamphlet Preamble § 1(a)-(b): voters declaring rights "to protect themselves" and "[t]o be informed about exposures to chemicals that cause cancer"). "[A]ny time a State is enjoined by a Court from effectuating statutes . . . it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

## CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated: November 17, 2023

Respectfully Submitted,

Rob Bonta
Attorney General of California
Laura J. Zuckerman
Supervising Deputy Attorney General

/s/ Megan K. Hey
Megan Hey
Rafael J. Hurtado
Deputy Attorneys General
*Attorneys for Rob Bonta, in His Official Capacity as Attorney General of the State of California*

# CERTIFICATE OF SERVICE

Case Name:  **The Personal Care Products**          No.    **2:23-CV-01006**
            **Council v. Bonta**

I hereby certify that on <u>November 17, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **ATTORNEY GENERAL ROB BONTA'S OPPOSITION TO THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR PRELIMINARY INJUNCTION**

2. **DECLARATION OF MEGAN K. HEY IN SUPPORT OF ATTORNEY GENERAL ROB BONTA'S OPPOSITION TO THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR PRELIMINARY INJUNCTION**

3. **ATTORNEY GENERAL ROB BONTA'S OBJECTIONS TO THE DECLARATION OF THOMAS MYERS IN SUPPORT OF THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR PRELIMINARY INJUNCTION**

4. **ATTORNEY GENERAL ROB BONTA'S OBJECTIONS TO THE DECLARATION OF TRENTON H. NORRIS IN SUPPORT OF THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR PRELIMINARY INJUNCTION**

5. **ATTORNEY GENERAL ROB BONTA'S OBJECTIONS TO DECLARATION OF STEPHEN M. NOWLIS, Ph.D., IN SUPPORT OF THE PERSONAL CARE PRODUCT'S MOTION FOR PRELIMINARY INJUNCTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 17, 2023</u>, at Los Angeles, California.


| J. Sissov | /s/ J. Sissov |
|-----------|---------------|
| Declarant | Signature |

LA2023950048
66390803.docx