Trenton H. Norris (CA Bar No. 164781)
trent.norris@hoganlovells.com
David M. Barnes (CA Bar No. 318547)
david.barnes@hoganlovells.com
Alexander Tablan (CA Bar No. 346309)
alexander.tablan@hoganlovells.com
HOGAN LOVELLS US LLP
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone:     415.374.2300
Facsimile:      415.374.2499

Gregory G. Sperla (CA Bar No. 278062)
greg.sperla@dlapiper.com
DLA PIPER LLP
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Telephone:     916.930.3200
Facsimile:      916.930.3201

Attorneys for Plaintiff
THE PERSONAL CARE PRODUCTS COUNCIL

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PERSONAL CARE PRODUCTS COUNCIL,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　Defendant. | No. 2:23-CV-01006-TLN-JDP<br><br>**PLAINTIFF PERSONAL CARE PRODUCTS COUNCIL'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:　None set<br>Judge:　　　　Hon. Troy L. Nunley<br>Action Filed:　May 26, 2023 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. PCPC Is More Than Likely To Succeed On The Merits. ..................................................... 2

    A. The Warning Does Not Qualify For Zauderer Review. ................................................ 2

        1. The Warning Misleads The Average Consumer. ..................................................... 2

        2. The Warning Is Not "Purely Factual." ..................................................................... 4

        3. The Warning Is Controversial. ................................................................................. 7

    B. A Compelled Warning Fails Intermediate Scrutiny Under Central Hudson. ................................................................................................... 9

III. The Remaining Factors Weigh Heavily In PCPC's Favor. ................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
   916 F.3d 749 (9th Cir. 2019)..................................................................................................1, 2

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023)......................................................................................................10

*Cal. Chamber of Com. v. Becerra*,
   529 F. Supp. 3d 1099 (E.D. Cal. 2021), *aff'd sub nom*....................................................... passim

*Cal. Chamber of Com. v. Brown*,
   196 Cal. App. 4th 233 (2011).......................................................................................................4

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022).........................................................................................................1

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980).....................................................................................................................1

*Edenfield v. Fane*,
   507 U.S. 761 (1993).....................................................................................................................4

*Gateway City Church v. Newsom*,
   516 F. Supp. 3d 1004 (N.D. Cal. 2021) .......................................................................................4

*Lydo Enters. v. Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984)....................................................................................................10

*Nat'l Ass'n of Mfrs. v. SEC*,
   800 F.3d 518 (D.C. Cir. 2015) ...............................................................................................3, 10

*Nat'l Ass'n of Wheat Growers v. Bonta*,
   85 F.4th 1263 (9th Cir. 2023)............................................................................................. passim

*Nat'l Inst. of Fam. & Life Advoc. v. Becerra*,
   138 S. Ct. 2361 (2018) ............................................................................................................4, 9

*NAWG v. Becerra*,
   468 F. Supp. 3d 1247 (E.D. Cal. 2020).............................................................................1, 2, 3, 8

*NAWG v. Zeise*,
   309 F. Supp. 3d 842 (E.D. Cal. 2018)....................................................................................3, 10

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985)..............................................................................................................1, 2, 3, 7

I.      INTRODUCTION

The Attorney General's opposition can only be understood in light of his general obligation to defend the constitutionality of all state laws, regardless of their merits. To do so in this instance, the Attorney General must ignore almost every salient point, including that:

- The AG has the burden of proof to show that a state law infringing speech meets the requirements of the First Amendment;
- Science shows that Listed Titanium Dioxide does *not* cause cancer in humans;
- Businesses have no practical alternative to using the State's prescribed "safe harbor" warning language;
- The State's compelled statement must be interpreted as consumers understand it, not as the state wishes it to be understood.

Indeed, the warning requirement at issue is indefensible. Not only does the AG submit no evidence that Listed Titanium Dioxide causes cancer in humans—indeed no scientific evidence at all—he admits he cannot do so. *See* Opp. at 7 n.11 (citing the basis for listing as including that there is "inadequate evidence" of carcinogenicity in humans). And yet somehow the AG contends that the State's interest in protecting public health justifies requiring private businesses to warn consumers that using cosmetics containing this ingredient increases their cancer risk.

To carry the day, the AG must hope that the Court will ignore, as the AG has, the two recent holdings of the Ninth Circuit on Proposition 65 and the First Amendment. He cites only one of them, and then merely for the doctrinal standard. Opp. at 9 (citing *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023) ("*NAWG*"), which came down after this motion was filed). But the Court cannot ignore the implications of these decisions. In very similar factual circumstances, this Court and the Ninth Circuit have found Proposition 65 warnings to fail the constitutional test for compelled commercial speech. Indeed, it is inexcusable that the AG neglects to even cite—much less discuss—the ruling of this Court and its affirmance by the Ninth Circuit, enjoining enforcement of Proposition 65 warnings for a chemical that, like Listed Titanium Dioxide, is known to cause cancer in animals but about which there is debate as to whether it causes cancer in humans. *Cal. Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1117 (E.D. Cal. 2021), *aff'd sub nom*. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) ("*CalChamber*"). Moreover, the debate about whether Listed Titanium Dioxide causes cancer in humans is one-sided: there is at best "inadequate" data

showing it causes cancer in humans, and there is overwhelming data that it does not. That data is summarized in PCPC's two expert declarations, with which the AG does not even quibble.

The requirement at issue here compels speech that is far from "purely factual"—indeed at best misleading—on a topic that is far from "uncontroversial." It is therefore subject to, and fails, intermediate scrutiny. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). Because the AG cannot carry his burden, a preliminary injunction should issue.

## II.     PCPC IS MORE THAN LIKELY TO SUCCEED ON THE MERITS.

Contrary to the AG's suggestion (Opp. at 9), "[t]he *State* has the burden of demonstrating that a disclosure requirement is purely factual and uncontroversial, not unduly burdensome, and reasonably related to a substantial government interest." *NAWG v. Becerra*, 468 F. Supp. 3d 1247, 1258 (E.D. Cal. 2020) (emphasis added). *See Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 756 (9th Cir. 2019) ("*ABA*") ("Defendant has the burden of proving that the warning" meets "all three criteria to be constitutional."). And the State bears this burden both "in response to a motion for preliminary injunction and on the merits." *CalChamber*, 529 F. Supp. 3d at 1117.

### A.     The Warning Does Not Qualify For *Zauderer* Review.

Because the AG fails to show that a compelled warning for Listed Titanium Dioxide in cosmetics is "purely factual and uncontroversial," he cannot seek more lenient review under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985).

#### 1.   The Warning Misleads The Average Consumer.

In determining whether a government-compelled statement is "purely factual and uncontroversial," the Ninth Circuit assesses it "[f]rom the standpoint of an average consumer." *NAWG*, 85 F.4th at 1278; *id.* at 1279 (emphasizing "the meaning an average consumer would give the word 'known'"); *cf. ABA*, 916 F.3d at 766 (Christin, J., concurring) (explaining why courts must consider how compelled warnings will be understood "not just [by] those with sophisticated levels of health literacy," but by "unsophisticated consumers" as well). From this perspective, the consumer is "often unaware of the technical meanings" of terms that, "in ordinary usage, might well be virtually interchangeable." *Zauderer*, 471 U.S. at 652. Here, the compelled warning is "only 'factual' if consumers can discern its underlying logic," which this

Court in a similar context already found "unlikely." *See CalChamber*, 529 F. Supp. 3d at 1117.

Hoping to meet the "purely factual" standard, the AG takes a familiar approach by arguing that "each sentence . . . is factually accurate." Opp. at 10. Yet as the Ninth Circuit explained in *NAWG*, "[e]ven accepting that . . . each sentence is entirely and literally true, that is not enough." 85 F.4th at 1279. The AG recycles his past failed argument based on the statutory semantics of the terms "known" and "cause cancer." Opp. at 3-4, 10. But this Court, and the Ninth Circuit, has disposed of this idea—*twice*.[1] "While it may be literally true that California 'knows' that [Listed Titanium Dioxide] causes cancer as the State has defined that term in the statute and regulations, the required warning would nonetheless be misleading to the ordinary consumer." *NAWG v. Zeise*, 309 F. Supp. 3d 842, 851 (E.D. Cal. 2018). Likewise, while the regulations define the term "cause cancer" to mean there is "[s]ufficient evidence of carcinogenicity [] from studies in experimental animals," that jargon does not reach the average consumer. Indeed, "[o]rdinary consumers do not interpret warnings in accordance with a complex web of statutes, regulations, and court decisions, and the most obvious reading of the Proposition 65 cancer warning is that exposure to [Listed Titanium Dioxide] in fact causes cancer" in humans. *See NAWG*, 468 F. Supp. 3d at 1260; *see also Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (rejecting government's reliance on the statutory definition of "conflict free" to prove that a disclosure was factual and uncontroversial).

This common-sense conclusion has evidentiary support.[2] As the survey by PCPC's expert shows, consumers understand the State's warning, when placed on or near a cosmetic product intended for human use, to mean that "using that product increases their risk of getting cancer." Nowlis Decl., ¶ 9. The AG offers no competing evidence but, for the first time, attacks Dr. Nowlis and his survey (Opp. at 11-12) after his predecessor lost another preliminary injunction

---

[1] *NAWG*, 468 F. Supp. 3d at 1259-60; *CalChamber*, 529 F. Supp. 3d at 1118; *CalChamber*, 29 F.4th at 479 ("Under Prop. 65, a 'known' carcinogen carries a complex legal meaning that consumers would not glean from the warning without context [and] [t]hus, use of the word 'known' is misleading."); *NAWG*, 85 F.4th at 1278 (same).

[2] To be sure, Plaintiff's consumer survey is not essential to its motion. The Supreme Court has suggested that "[w]hen the possibility of deception is [] self-evident," courts "need not require [Plaintiff] to 'conduct a survey of the . . . public before it [may] determine that the [warning] ha[s] a tendency to mislead.'" *Zauderer*, 471 U.S. at 653. And in fact, without any consumer survey evidence, this Court already found California's compelled warning for another chemical to be misleading. *See NAWG*, 468 F. Supp. 3d at 1259.

3
PLAINTIFF'S REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

motion in *CalChamber*.[3]  *See* 529 F. Supp. 3d at 1123.  There, Chief Judge Mueller relied in part on a similar consumer survey from Dr. Nowlis when concluding that "[p]eople who read the safe harbor warning will probably believe that eating the food increases their personal risk of cancer." *Id.* at 1117.  Affirming that decision, the Ninth Circuit favorably cited his survey in concluding that consumers reading a warning nearly identical to the one here "believe that such products pose a risk of cancer *in humans*." *CalChamber*, 29 F.4th at 479 (emphasis in original).

The AG selects a handful of respondents whose answers indicated that they understood the warning to communicate that the cosmetic product might *possibly* cause cancer—which, he says, is a "completely accurate statement." Opp. at 12.  But the survey still found that "the majority of respondents" indicated that the statement communicates that using the product *will* increase their risk of cancer.  Nowlis Decl., ¶¶ 52-53.  More fundamentally, California's interest in compelling disclosures is to "inform[] [California's residents] about exposures to chemicals that cause cancer." *Cal. Chamber of Com. v. Brown*, 196 Cal. App. 4th 233, 258 (2011) (noting statutory purpose).  Indeed, voters who enacted Proposition 65 were expressly advised that there are "chemicals that are *scientifically known*[,] not merely suspected, . . . to cause cancer," and those that are "only *suspect* are not included" in the statute's aims.  RJN, Ex. H.  And under Supreme Court precedent, compelled disclosures "must remedy a harm that is 'potentially real not purely hypothetical.'" *Nat'l Inst. of Fam. & Life Advoc. v. Becerra*, 138 S. Ct. 2361, 2376 (2018) ("*NIFLA*") (citation omitted); *cf. Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (emphasizing that to justify commercial speech restrictions, the State must demonstrate that "the harms it recites are real").  So forcing businesses to label their products with a warning that communicates a mere *possible* health risk is not "reasonably related" to the State's interest, nor does not "directly advance" it.  *NIFLA*, 138 S. Ct. at 2377; *CalChamber*, 529 F. Supp. 3d at 1121.

2. The Warning Is Not "Purely Factual."

The AG does not attempt to contradict PCPC's experts' conclusion that Listed Titanium Dioxide does not cause cancer in humans.  Instead, the AG argues that—regardless of whether

---

[3] The AG claims the survey is inadmissible, but "[t]he Federal Rules of Evidence do not strictly apply to preliminary injunction proceedings." *Gateway City Church v. Newsom*, 516 F. Supp. 3d 1004, 1009 n.3 (N.D. Cal. 2021) (citing *Houdini Inc. v. Goody Baskets LLC*, 166 F. App'x 946, 947 (9th Cir. 2006).

Listed Titanium Dioxide is a human carcinogen, and regardless of IARC's basis—IARC's 2B "possible" carcinogen classification is sufficient for the State to compel the warning. That cannot be. Similar to *NAWG*, where glyphosate's classification as a probable carcinogen was based on "limited evidence in humans," titanium dioxide is only classified by IARC as a *possible* carcinogen with "inadequate evidence in humans." *See* 85 F.4th at 1269; RJN, Ex. A; *see also CalChamber*, 29 F.4th at 473 (acrylamide classified as a *probable* carcinogen). Indeed, IARC concluded that "the studies do not suggest an association between occupational exposure to [titanium dioxide] . . . and risk for cancer," RJN Ex. A at 273—because, as the AG even points out (Opp. at 7 n.11), they were of "insufficient quality, consistency, or statistical precision." The Ninth Circuit has twice held that cancer warnings for probable carcinogens are misleading, so the same warning for a merely possible human carcinogen would of course also be misleading. *See CTIA-The Wireless Ass'n v. City & Cnty. of S.F.*, 827 F. Supp. 2d 1054 (N.D. Cal. 2011), *aff'd* 494 F. App'x 752 (9th Cir. 2012) (explaining that, when "the evidence of [carcinogenicity] is [as] weak" as it is for an IARC Group 2B "possible" classification, statements conveying to consumers that an exposure will cause them cancer are "misleading").

The AG spends much time invoking evidence suggesting that animals exposed to Listed Titanium Dioxide develop cancer. *See, e.g.*, Opp. at 10, 13. In his view, the animal evidence is applicable to humans because "PCPC has not . . . shown that the mechanism of carcinogenesis does not apply in humans." *Id.* at 10. But that is simply not true. The uncontroverted declaration of PCPC's expert says: "[T]he available toxicology demonstrates that the tumorigenic responses in rats from exposure to titanium dioxide in particle overload dosing conditions is unique to this species . . . [and thus] not appropriate for supporting causal inference between exposure . . . and lung cancer [in humans]." Madl Decl., ¶ 30; *see also* ¶ 41 (explaining that "mechanistic evidence" of exposure in animal studies is "exclusive to rats" and "not relevant for determining the lung cancer risks to humans").

While the AG repeatedly invokes the "sufficient evidence" of carcinogenicity in animals, he is silent on the criticism generated by the two studies that IARC relied on. PCPC's opening brief (Mot. at 5-6) and expert declarations explain that the basis of IARC's classification of

titanium dioxide has lost support from the scientific community. *See* Madl Decl., ¶¶ 17-21; RJN Ex. B at 39 (concluding that the "excessive exposure [conditions] invalidate[] the results of the Lee et al. (1985) study . . . for classification purposes"); RJN Ex. E at 6 (concluding that reliance on 1995 study was "manifest error" because Heinrich's "excessive lung overload" conditions "invalidated the results").[4]

But even if the animal data were robust and applicable to humans (and it is neither), it cannot save the State's compelled warning. A recent First Amendment challenge to another compelled public health warning is instructive. In *Free Speech Coalition, Inc. v. Colmenero*, No. 1:23-CV-917-DAE, 2023 WL 5655712 (W.D. Tex. Aug. 31, 2023) (appeal pending), the warning at issue—"Pornography is potentially biologically addictive, [and] is proven to harm human brain development"—was targeted at adults but defended on the basis of studies in children. *Id.* at *3, 25. The court enjoined the warning requirement in part because it "make[s] no mention of effects on children." *Id.* at *25. Likewise, the warning here does not mention effects on rodents and obviously is not directed at rodents. The "average consumer" of cosmetics simply does not understand the warning to mean that studies have shown that *rodents* exposed to Listed Titanium Dioxide develop lung tumors. To the contrary, she understands the warning to mean that using the product increases her risk of getting cancer. Nowlis Decl., ¶ 9.

Although California may, as a matter of public policy, choose to conservatively classify chemicals on the basis of animal studies, even in the face of overwhelming contrary evidence or other controversy, *see AFL-CIO v. Deukmejian*, 212 Cal. App. 3d 425 (1989), that is different from compelling a cancer warning. Regardless of whether Proposition 65 mandates listing a chemical, an IARC classification based on contested evidence of carcinogenicity in rodents does not authorize the State to compel private speech that is counter-factual and controversial. *NAWG*, 85 F.4th at 1282 ("[A] state may not regulate commercial speech on the back of controverted

---

[4] The AG suggests (at 10) that the National Institute for Occupational Safety & Health (NIOSH) agrees with IARC's finding—but fails to point out that "NIOSH concluded that TiO2 is not a direct-acting carcinogen." NIOSH, Occupational Exposure to Titanium Dioxide, (April 2011), available at https://tinyurl.com/fhjdkkeb. It further wrote that its conclusions "should not be inferred to pertain to nonoccupational exposures"—precisely the sort of consumer product exposures at issue here. Finally, while OEHHA's compelled warning applies to the "respirable size" form of titanium dioxide, that term is undefined, and NIOSH concluded that "there are insufficient data to classify fine TiO2 as a potential occupational carcinogen."

evidence.") (citing *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 792-93 (2011)).

Finally, the AG cannot salvage Proposition 65's misleading warning requirement for Listed Titanium Dioxide by rehashing its argument from *CalChamber* that a business is "not required to use [the safe harbor] warning if it thinks another would be more accurate." Opp. at 2; *compare CalChamber*, 2:19-cv-02019, ECF No. 101 (AG Opp.) at 15 ("An additional reason Proposition 65 warnings for acrylamide comply with the First Amendment is that entities are not required to use the safe-harbor language to which CalChamber objects."). As this Court has twice observed, "[t]he State cannot 'put the burden on commercial speakers to draft a warning that both protects their right not to speak and complies with Proposition 65.'" *CalChamber*, 529 F. Supp. 3d at 1119 (quoting *NAWG*, 468 F. Supp. 3d at 1261). As in *CalChamber*, "[i]f the seas beyond the safe harbor are so perilous that no one risks a voyage, then the State has either compelled speech that is not purely factual, or its regulations impose an undue burden." *Id*.

        3.   The Warning Is Controversial.

While the AG fails to carry his burden to show that the warning here is "purely factual," his argument that it is uncontroversial fares even worse. Propping up the same strawman as before, the AG's central claim is that "there is no legitimate scientific debate that [Listed Titanium Dioxide] causes cancer in animals." Opp. at 13. But once again, the State's prescribed warning does not say "in animals,"[5] nor does the average consumer understand the warning to imply as much. And PCPC's position is not that there is a scientific controversy regarding whether this chemical causes cancer in rodents—its position concerns carcinogenicity in *humans*.

The AG does not address the Ninth Circuit's recent decision analyzing the "uncontroversial" element of *Zauderer*. In *NAWG*, the Ninth Circuit held that the safe harbor warning as applied to glyphosate was controversial in two respects. 85 F.4th at 1277-78. It was controversial "from the subjective standpoint" of speakers because it "forced [plaintiffs] to convey a message fundamentally at odds with their businesses." *Id*. And it was "undeniably

---

[5] OEHHA has specifically rejected such wording, and the AG's own regulations cast doubt on it. *See* Mot. at 10 (citing longstanding OEHHA position that stating that a chemical is known to cause cancer "in animals" would likely not comply with Proposition 65 and AG regulations prohibiting "additional words or phrases that contradict or obfuscate otherwise acceptable warning language").

controversial from an objective scientific standpoint" because of the "robust disagreement" by reputable sources over glyphosate's carcinogenicity in humans. *Id*. at 1278.

Here, because the safe harbor warning as applied to Listed Titanium Dioxide forces PCPC members to label their products with a message they disagree with, it is just as "subjectively controversial" as the one enjoined in *NAWG*. Realizing this, the AG tries to reinvent the standard by suggesting that a non-political compelled statement can only be controversial if it is "contradicted by a clear scientific consensus." *See* Opp. at 15. That astonishing assertion—which would reverse the applicable burden—has no support in *NAWG* or any other precedent.

The warning here is also objectively controversial because, as in *CalChamber* and *NAWG*, there is scientific debate as to whether Listed Titanium Dioxide causes cancer in humans. The AG states (Opp. at 14) that "PCPC has offered no evidence that any scientific or governmental agency or authority has determined [Listed Titanium Dioxide] is not a possible human carcinogen." But that simply is not the test—nor is it probative in determining whether there exists scientific disagreement on a chemical's carcinogenicity. The number of chemicals that any agency has found <u>not</u> to cause cancer in humans is quite small.[6] Indeed, if that were the test, California could require cancer warnings for everything from peanut butter to petunias.

As to the FDA, which has long accepted titanium dioxide as safe and appropriate for use in cosmetics, the AG suggests that, because PCPC identified "no requirement that FDA undertake testing or make findings of non-carcinogenicity before allowing a chemical's use," FDA's determination has little relevance. *See* Opp. at 14. This is a puzzling point because OEHHA—the state agency tasked with listing chemicals—has done no testing and made no determination of carcinogenicity itself. *See* Answer at ¶ 6. Additionally, FDA need not test a substance for itself to determine that it is safe—the agency evaluates the studies available, just like IARC and other public health authorities. California's disagreement with FDA's conclusion—far from disproving a controversy—actually establishes it. Similarly, although the European Court's annulment of the

---

[6] *See, e.g.,* Baan, R.A. and Straif, K. (2022) "The Monographs Programme of the International Agency for Research on Cancer: A brief history of its Preamble" (explaining that caprolactam, "which had been the sole chemical in Group 4 since 1987, was moved to Group 3" in 2019), https://pubmed.ncbi.nlm.nih.gov/34164695/#full-view-affiliation-1.

1  classification of respirable titanium dioxide as a carcinogen is being appealed, that at most merely
2  illustrates the ongoing controversy and how the science is unsettled.

3  More to the point, *NAWG* held that, despite limited evidence in humans and sufficient
4  evidence in animals, "the warning requirement applied to glyphosate is undeniably controversial
5  from an objective scientific standpoint." 85 F.4th at 1278; *cf. CalChamber*, 29 F.4th at 478 n.10
6  (holding the same warning requirement with respect to acrylamide "easily meets the definition"
7  of "controversial"). Here, without actually rebutting any of PCPC's cited authorities or scientific
8  expert declarations, the AG asserts that "PCPC tries . . . to manufacture a controversy." Opp. at
9  13. But if anyone is manufacturing a controversy, it is the State of California.

10  **B.     A Compelled Warning Fails Intermediate Scrutiny Under *Central Hudson*.**

11  Contrary to the AG's position (Opp. at 18), "simply having a substantial interest does not"
12  suffice. *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1117 (9th Cir. 2023). Under *Central
13  Hudson*, the AG "must provide evidence establishing 'that the harms it recites are real,' [citation
14  omitted] and that its [warning requirement] will '*significantly*' alleviate those harms, [citation
15  omitted]." *Id*. at 1117-19 (the AG "cannot merely gesture to 'common sense' to meet [his]
16  burden of showing that the law will 'significantly' advance" the State's goals). Because the AG
17  fails to meet this burden, the compelled warnings here do not survive First Amendment scrutiny.

18  As in *NAWG*, where the Ninth Circuit held that the cancer warning for glyphosate easily
19  failed intermediate scrutiny, "compelling sellers to warn consumers of a potential 'risk' . . . or of
20  a hazard not 'known' to more than a small subset of the scientific community [] does not directly
21  advance" the State's public health interest. *See* 85 F.4th at 1283. And as in *CalChamber*, where
22  this Court held that the safe harbor warning for acrylamide likely failed intermediate scrutiny, so
23  too does the warning here because it "implies misleadingly that the science about the risks of
24  [Listed Titanium Dioxide exposure from cosmetics] is settled." *See* 529 F. Supp. 3d at 1121.

25  Tellingly, the AG is silent as to the "numerous and obvious less-burdensome alternatives"
26  that PCPC raised in its Motion (at 18). *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1178
27  (9th Cir. 2018). Indeed, this Court and the Ninth Circuit acknowledged other options available to
28  the State to inform consumers of its controversial determination that a Proposition 65 chemical is

a carcinogen, *see NAWG*, 85 F.4th at 1283; *CalChamber*, 529 F. Supp. 3d at 1121—without "co-opt[ing]" businesses to "deliver its message." *NIFLA*, 138 S. Ct. at 2376.  Of course, "[r]equiring a company to publicly condemn itself is undoubtedly a more effective way for the [State] to stigmatize and shape behavior[,] . . . but that makes the requirement more constitutionally offensive, not less so." *Nat'l Ass'n of Mfs.*, 800 F.3d at 530 (cleaned up).

### III. THE REMAINING FACTORS WEIGH HEAVILY IN PCPC'S FAVOR.

The AG contends (Opp. at 19) that the ten years between the first enforcement action and PCPC seeking injunctive relief "undermines" the showing of irreparable harm.[7]  But the AG minimizes the recent explosion in Proposition 65 enforcement on Listed Titanium Dioxide in cosmetics and personal care products.  PCPC has shown that the risk of litigation is escalating, and with it, the chilling effect that has on speech and the costs associated with it.  *See* Norris Decl., ¶¶ 5-10.  (Indeed, the AG Notice Database shows 11 notices of violation have been served since PCPC filed its motion.)  Regardless, this Court must "*presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1041-42 (9th Cir. 2023) (explaining that plaintiffs "almost always demonstrate . . . irreparable harm" upon showing a likelihood of success on the merits of a First Amendment claim).

Similarly, the AG cannot seriously contend that the balancing of equities and public interest weigh in his favor.  This Court has already preliminarily enjoined enforcement of compelled Proposition 65 warnings with respect to two other controversial chemicals.  *See NAWG*, 309 F. Supp. 3d at 854; *CalChamber*, 529 F. Supp. 3d at 1122.  The AG's reference (Opp. at 20) to a 1977 decision having nothing to do with free speech or fundamental rights is a distraction.  This Court, unlike the AG, cannot shrug off the public harms from over-warning consumers (Mot. at 19-20), and nothing about the requested injunction "would prevent the State" from doing its job when the most fundamental part of that job is to abide by the U.S. Constitution.

---

[7] The AG cites only one case to support the proposition that delay is a factor in weighing the propriety of relief. *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).  But contrary to the AG's suggestion, *Lydo* held that there was no irreparable harm because plaintiff failed to "show[] that First Amendment freedoms are in fact violated by the ordinance"—*not* because of any undue delay.  *Id*. at 1214.  PCPC *has* shown a likelihood of First Amendment injury.  *See also CalChamber*, 529 F. Supp. 3d at 1121-22 (rejecting the AG's similar "delay" argument).

Dated: November 30, 2023

Respectfully submitted,

By: /s/ Trenton H. Norris
Trenton H. Norris
*Attorneys for Plaintiff*
*Personal Care Products Council*

PLAINTIFF'S REPLY ISO MOTION FOR PRELIMINARY INJUNCTION