UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PERSONAL CARE PRODUCTS COUNCIL, | No. 2:23-cv-01006-TLN-JDP |
| Plaintiff, | |
| v. | **ORDER** |
| ROB BONTA, | |
| Defendant. | |

This matter is before the Court on Proposed Defendant-Intervenor Environmental Health Advocates, Inc.'s ("EHA") Motion to Intervene.  (ECF No. 19.)  Plaintiff The Personal Care Products Council ("Plaintiff") and Defendant Rob Bonta, in his official capacity as California Attorney General ("Defendant"), filed oppositions.  (ECF Nos. 21, 22.)  EHA filed a reply (ECF No. 26).

Also before the Court is Plaintiff's Motion for a Preliminary Injunction.  (ECF No. 27.) Defendant filed an opposition (ECF No. 30), and Plaintiff filed a reply (ECF No. 32).

For the reasons set forth below, the Court DENIES EHA's Motion to Intervene and GRANTS Plaintiff's Motion for a Preliminary Injunction.

///

///

1

1          **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2          This case arises out of Plaintiff's challenge to California's Safe Drinking Water and Toxic

3    Enforcement Act of 1986 ("Prop 65") insofar as it requires businesses to post cancer warnings

4    about the presence of titanium dioxide in certain products they sell to California consumers.

5    Plaintiff is a nonprofit business association with a membership of approximately 600 businesses

6    in the cosmetic industry.  (ECF No. 1 at ¶ 16.)  Plaintiff's members are involved in the supply

7    chain for cosmetic and personal care products that contain titanium dioxide, and Plaintiff

8    advocates on their behalf before various government bodies.  (*Id.*)  Defendant is the Attorney

9    General of the State of California and is tasked with enforcing Prop 65.  (*Id.* ¶ 17.)

10          A.    Relevant Background on Prop 65

11          Prop 65 is a "right-to-know" law that requires the Governor to publish and maintain a list

12    of chemicals known to the State of California to cause cancer or reproductive toxicity ("Prop 65

13    List").  Cal. Health & Safety Code § 25249.8(a).  A chemical is known to the state to cause

14    cancer or reproductive toxicity if: (1) in the opinion of the state's qualified experts, it has been

15    clearly shown — through scientifically valid testing according to generally accepted principles —

16    to cause cancer or reproductive toxicity; (2) a body considered to be authoritative by the state's

17    qualified experts has formally identified it as causing cancer or reproductive toxicity; or (3) an

18    agency of the state or federal government has formally required it to be labeled or identified as

19    causing cancer or reproductive toxicity.  *Id.* § 25249.8(b).  The Prop 65 List must also include

20    those substances listed as human or animal carcinogens by the International Agency for Research

21    on Cancer ("IARC"), and any substance within the scope of the federal Hazard Communication

22    Standard.  *Id.* § 25249.8(a); Cal. Lab. Code § 6382(b)(1), (d).

23          Absent an exemption, Prop 65 requires businesses with ten or more employees to provide

24    a clear and reasonable warning to consumers before knowingly and intentionally exposing them

25    to chemicals on the Prop 65 List.[1]  Cal. Health & Safety Code §§ 25249.5, 25249.6, 25249.11(b).

26    _____

27    [1]     Businesses are exempt from the warning requirement if: (1) the warning would be
preempted by federal law; (2) the exposure takes place less than twelve months after the chemical
in question is added to the Prop 65 List; or (3) the business can show exposure to a chemical on

28    the Prop 65 List does not pose a significant health risk, assuming lifetime exposure at specified

Regulations implementing Prop 65 provide guidance to businesses and examples of what constitutes a "clear and reasonable" warning.  Cal. Code Regs. tit. 27, § 25601 et seq.  For example, for exposures to listed carcinogens, a business may provide a warning consisting of a black exclamation point inside a yellow equilateral triangle with a bold black outline and the word "**WARNING**" appearing in all capital letters and bold print, alongside the words, "This product can expose you to chemicals including [name of one or more chemicals], which is [are] known to the State of California to cause cancer.  For more information go to www.P65Warnings.ca.gov."  *Id.* § 25603(a).  Alternatively, for listed carcinogens, businesses may provide a short-form warning using the same yellow triangle and exclamation point and the word "**WARNING**" in all capital letters and bold print, alongside the words "Cancer -- www.P65Warnings.ca.gov."  *Id.* § 25603(b).  A warning that complies with these regulations is considered a "safe harbor warning" and is presumptively "clear and reasonable" under Prop 65.  *Id.* § 25601(a).

Prop 65 may be enforced by the government — including the Attorney General and certain local prosecutors — or by private individuals in the public interest when various conditions are met.  Cal. Health & Safety Code § 25249.7(c)–(d).  Courts may enjoin violations of Prop 65 and/or assess civil monetary penalties of up to two thousand five hundred dollars ($2,500) per day for each violation.  *Id.* § 25249.7(a)–(b)(1).

### B.   Titanium Dioxide and Prop 65

#### 1.   Overview of Titanium Dioxide

Titanium dioxide was first produced commercially in 1923, primarily for pigment production.  (ECF No. 27-3 at 85.)  Titanium dioxide is comprised of various minerals and is commonly used in cosmetic and personal care products, including toothpaste, sunscreen, and makeup.  (ECF No. 1 at ¶ 2; ECF No. 27-1 at 11; ECF No. 27-3 at 85.)  The U.S. Food and Drug Administration has determined titanium dioxide may be safely used in these products with some limitations.  *See* 21 C.F.R. §§ 73.1575(b) (color additive in drugs), 73.2575(b) (cosmetics),

_____

levels.  *Id.* § 25249.10(a)–(c).

3

73.575(c) (color additive in foods), 352.10 (sunscreen).  "Listed Titanium Dioxide" is a specific type of titanium dioxide that consists of airborne, unbound particles of respirable size.  (ECF No. 1 at ¶ 3.)  Listed Titanium Dioxide is at issue in this case.  (*Id.* at 27.)

### 2. IARC Study

IARC was founded in the 1960s by the United States and other members of the United Nations as the cancer research arm of the World Health Organization.  (ECF No. 30 at 11; ECF No. 27-3 at 4.)  In 1969, the IARC initiated a program on the evaluation of the carcinogenic risk of various chemicals to humans.  (ECF No. 27-3 at 4; ECF No. 30 at 11.)  The objective of the program is to, among other things, publish critical reviews of data on carcinogenicity for agents to which humans are known to be exposed.  (ECF No. 27-3 at 4.)  IARC is considered an authoritative source by California's qualified experts, and thus, substances it lists as human or animal carcinogens must be included on the Prop 65 List.  Cal. Health & Safety Code § 25249.8(a); Cal. Lab. Code § 6382(b)(1).

In 2010, IARC published its findings that there is inadequate evidence for the carcinogenicity of titanium dioxide in humans but sufficient evidence for the carcinogenicity of titanium dioxide in experimental animals.  (ECF No. 27-3 at 88; ECF No. 27-1 at 11–12; ECF No. 30 at 12.)  As a result, IARC concluded titanium dioxide is "possibly carcinogenic to humans (Group 2B)."[2]  (ECF No. 27-3 at 88; ECF No. 30 at 12.)  IARC based its Group 2B cancer classification for titanium dioxide primarily on two studies involving experimental rats that inhaled titanium dioxide where an increased rate of lung tumors was observed.  (ECF No. 27-3 at

---

[2]     IARC classifies chemicals into one of four graduated categories: Group 1, Group 2A, Group 2B, or Group 3.  Chemicals in Group 1 are labeled "carcinogenic to humans" and are for chemicals for which there is sufficient evidence of carcinogenicity in humans.  Chemicals in Group 2A are labeled "probably carcinogenic to humans" and are for chemicals for which there is limited evidence of carcinogenicity in humans or sufficient evidence of carcinogenicity in animals.  Chemicals in Group 2B are labeled "possibly carcinogenic to humans" and are for chemicals for which there is limited evidence of carcinogenicity in humans *and* less than sufficient evidence of carcinogenicity in animals or inadequate evidence of carcinogenicity in humans but sufficient evidence of carcinogenicity in animals.  Chemicals in Group 3 are "not classifiable as to [their] carcinogenicity to humans" and are for chemicals for which there is inadequate evidence of carcinogenicity in humans and inadequate or limited evidence of carcinogenicity in animals.  *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1269 n.3 (9th Cir. 2023).

1   88–89; ECF No. 30 at 12.)  The following year, the California Office of Environmental Health

2   Hazard Assessment ("OEHHA") placed Listed Titanium Dioxide on the Prop 65 List because of

3   IARC's Group 2B classification for titanium dioxide as required by California Health and Safety

4   Code § 25249.8(a) and California Labor Code § 6382(b)(1).  (ECF No. 27-1 at 12–13.)

5   Subsequent research, however, has cast some doubt on IARC's conclusion that titanium dioxide

6   is possibly carcinogenic to humans, and there remains somewhat of a scientific debate on titanium

7   dioxide's (and therefore Listed Titanium Dioxide's) carcinogenicity in humans.  (ECF No. 27-1 at

8   12; ECF No. 27-14 at 13–24; ECF No. 30 at 12–13.)

9         Shortly after the Prop 65 enforcement period for titanium dioxide became effective, EHA

10   and other private enforcers sent Plaintiff's members notices of violation and threatened litigation

11   for failure to comply with Prop 65.  (ECF No. 27-1 at 13.)  EHA and the other private enforcers

12   settled many of these enforcement actions out of court, while other enforcement actions resulted

13   in more than one hundred (100) lawsuits in California superior courts.  (*Id.*; ECF No. 19 at 2.)

14   Plaintiff's members continue to receive notices of violation (ECF No. 27-1 at 13), and on May 26,

15   2023, Plaintiff filed a Complaint against Defendant, seeking, among other things, a declaration

16   from this Court that Prop 65's warning requirement for Listed Titanium Dioxide, as applied to

17   cosmetic and personal care products, violates the First Amendment to the United States

18   Constitution.  (ECF No. 1.)

19         On September 12, 2023, EHA filed a motion to intervene in this action, arguing it is an

20   interested party because it is the primary private enforcer of Prop 65 and the Complaint refers to

21   EHA's state-court litigation.  (ECF No. 19 at 2.)  Plaintiff and Defendant filed oppositions (ECF

22   Nos. 21, 22), and EHA filed a reply (ECF No. 26).

23         On October 6, 2023, Plaintiff filed a motion, seeking to preliminarily enjoin Defendant

24   and others (including EHA) from enforcing or threatening to enforce Prop 65's warning

25   requirement with respect to Listed Titanium Dioxide in cosmetic and personal care products.

26   (ECF No. 27.)  Defendant filed an opposition, and Plaintiff filed a reply.[3]  (ECF Nos. 30, 32.)

27

28   [3]      After Plaintiff filed its motion and shortly before Defendant filed his opposition, the Ninth
     Circuit issued its opinion in *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1263.  The impact of that

1    **II.    INTERVENTION MOTION**

2          EHA seeks to intervene in this action as of right, or permissively, pursuant to Federal Rule

3    of Civil Procedure ("Rule") 24.  (ECF No. 19.)

4               A.      Standard of Law

5          "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'"  *U.S. ex rel.*

6    *Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) (citation omitted).  A person

7    may also "become a 'party' to a lawsuit by intervening in the action."  *Id.*  Rule 24 sets forth the

8    circumstances where a party may intervene in an action.

9          An applicant for intervention as of right under Rule 24(a)(2) must demonstrate that:
            (1) the intervention application is timely;
10

11              (2) the applicant has a "significant protectable interest relating to the
                property or transaction that is the subject of the action";
12

13              (3) "the disposition of the action may, as a practical matter, impair or
                impede the applicant's ability to protect its interest"; and
14

15              (4) "the existing parties may not adequately represent the applicant's
                interest."
16
     *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (quoting *United States v. Alisal Water*
17
     *Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

18          A court may also permit a party to intervene in an action when, on timely motion, a party

19   "is given a conditional right to intervene by a federal statute" or "has a claim or defense that

20   shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  "In

21   exercising its discretion, the district court must consider whether intervention will unduly delay

22   the main action or will unfairly prejudice the existing parties."  *Cooper v. Newsom*, 13 F.4th 857,

23   868 (9th Cir. 2021) (citation omitted).  "If the trial court determines that the initial conditions for

24   permissive intervention under [R]ule 24(b)(1) or 24(b)(2) are met, it is then entitled to consider

25   other factors in making its discretionary decision on the issue of permissive intervention."

26   *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).  These factors

27   include:

28   _____

     case on the instant litigation is discussed below.

                                                    6

1
2
3
4
5
6
7

> the nature and extent of the intervenors' interest, their standing to
> raise relevant legal issues, the legal position they seek to advance,
> and its probable relation to the merits of the case.  The court may
> also consider whether changes have occurred in the litigation so
> that intervention that was once denied should be reexamined,
> whether the intervenors' interests are adequately represented by
> other parties, whether intervention will prolong or unduly delay the
> litigation, and whether parties seeking intervention will
> significantly contribute to full development of the underlying
> factual issues in the suit and to the just and equitable adjudication
> of the legal questions presented.

8    *Id.* (footnotes omitted).

9          The party seeking intervention bears the burden of demonstrating all requirements have

10   been met.  *Alisal Water Corp.*, 370 F.3d at 919.  "In determining whether intervention is

11   appropriate, courts are guided primarily by practical and equitable considerations, and the

12   requirements for intervention are broadly interpreted in favor of intervention."  *Id.* (citation

13   omitted).

14          B.     <u>Analysis</u>

15                 1.     <u>Intervention as of Right</u>

16          The parties principally dispute the adequacy of the representation under Rule 24(a)(2).

17   (*See* ECF No. 19-1 at 12–13; ECF No. 21 at 7–8; ECF No. 22 at 12–16.)  As will be discussed,

18   the Court finds EHA's interests are adequately represented by Defendant, and therefore, the Court

19   need not address the other intervention-as-of-right elements.  *Perry v. Proposition 8 Off.*

20   *Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (citation omitted) ("Failure to satisfy any one of

21   the requirements is fatal to the application, and we need not reach the remaining elements if one

22   of the elements is not satisfied.").

23                 *a.*     *Inadequacy of Representation*

24          In deciding whether a present party adequately represents the interests of a prospective

25   intervenor, courts consider three factors:

26
27
28

> (1) whether the interest of a present party is such that it will
> undoubtedly make all of a proposed intervenor's arguments; (2)
> whether the present party is capable and willing to make such
> arguments; and (3) whether a proposed intervenor would offer any
> necessary elements to the proceeding that other parties would

1    neglect.

2    *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quoting

3    *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 1986)).  "The most important factor in

4    determining the adequacy of representation is how the interest compares with the interests of

5    existing parties."  *Arakaki*, 324 F.3d at 1086 (citation omitted).  "When an applicant for

6    intervention and an existing party have the same ultimate objective, a presumption of adequacy of

7    representation arises.  If the applicant's interest is identical to that of one of the present parties, a

8    compelling showing should be required to demonstrate inadequate representation."  *Id.* (citations

9    omitted).

10    EHA contends Defendant does not adequately represent its interests because: (1) EHA's

11    interests are "more narrow and parochial" than Defendant's interests; (2) a private enforcer may

12    take actions and make arguments that Defendant would not; and (3) "EHA's intimate and detailed

13    knowledge — having brought over 100 lawsuits and worked with experts to develop testing and

14    exposure analysis protocols related to [Listed Titanium Dioxide] in cosmetic and personal care

15    products — 'offers a necessary element to the proceedings that would be neglected' without

16    [EHA's] participation."  (ECF No. 19-1 at 12–13.)  In opposition, Defendant and Plaintiff argue

17    EHA's interest in defending the constitutionality of Prop 65 as it relates to Listed Titanium

18    Dioxide is the same as Defendant's interest, and EHA has not and cannot make a compelling

19    showing of inadequate representation.  (ECF No. 21 at 7–8; ECF No. 22 at 12–16.)

20    The Court finds EHA and Defendant have identical interests in this action — upholding

21    the constitutionality of Prop 65's warning requirement as it relates to Listed Titanium Dioxide.

22    *See Callahan*, 42 F.4th at 1021 (finding parties have identical interests when they seek the same

23    relief from the court).  Therefore, EHA must make a compelling showing of inadequate

24    representation.  *Arakaki*, 324 F.3d at 1086.  As will be discussed, however, the Court agrees with

25    Plaintiff and Defendant and finds EHA has failed to make such a showing.

26    EHA advances several arguments for why Defendant does not adequately represent its

27    interests, but none are availing.  First, EHA contends its interests are more narrow than

28    Defendant's because Defendant represents the interests of consumers, who may benefit from Prop

8

1    65 warnings for Listed Titanium Dioxide, and companies that may oppose such warnings.  (ECF

2    No. 19-1 at 12–13.)  As discussed above, however, EHA's interest in this action is coterminous

3    with Defendat's interest (i.e., upholding the constitutionality of Prop 65's warning requirement as

4    it relates to Listed Titanium Dioxide).  Moreover, there is a presumption of adequate

5    representation where the present party is a governmental officer charged by law with representing

6    the interests of the absentee.  *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 401 (9th

7    Cir. 2002) (citation omitted).  In the instant case, Defendant is California's top law enforcement

8    officer and is charged with defending against attacks to the state's laws.  Thus, Defendant is

9    presumed to adequately represent EHA's interest.  *See id.*

10        EHA next argues Defendant does not adequately represent its interests because a private

11    enforcer of Prop 65 may take actions and make arguments that Defendant would not.  (ECF No.

12    19-1 at 13.)  However, EHA fails to indicate what those different actions or arguments might be.

13    In any event, a difference in litigation strategy does not justify intervention.  *Arakaki*, 324 F.3d at

14    1086.

15        Finally, EHA contends it has intimate and detailed knowledge of the subject matter of this

16    suit (that would be lost in its absence), stemming from the numerous lawsuits it has filed to

17    enforce Prop 65 and the number of expert witnesses it has hired and worked with in support

18    thereof.  (ECF No. 19-1 at 13.)  However, enforcing Prop 65 (EHA's alleged area of expertise)

19    and defending its constitutionality (the issue in this case) are two very different things.  Even if

20    they were not, EHA fails to demonstrate why Defendant could not hire its own experts and thus

21    provide the same "expertise" that EHA would provide if it were a party to this suit.

22        In sum, EHA was required to make a compelling showing that Defendant does not

23    adequately represent its interests but has failed to do so.  Because EHA has failed to satisfy a

24    necessary element for its motion to intervene as of right, the Court need not address the other

25    elements.  *Perry*, 587 F.3d at 950 (9th Cir. 2009).  Accordingly, the Court DENIES EHA's

26    motion to intervene as of right.

27    ///

28    ///

2.      Permissive Intervention

As noted above, "a court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (citation omitted).  If these requirements are met, courts may consider the additional *Spangler* factors.  *Perry*, 587 F.3d at 955.  However, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3); *see also Perry*, 587 F.3d at 955.

EHA contends permissive intervention is warranted here because its motion is timely and will not cause delay or prejudice, jurisdiction is proper and it will not raise any new counterclaims or crossclaims, and it has a legal defense that contains a question of law or fact in common with the main action.  (ECF No. 19-1 at 14.)  In opposition, Plaintiff and Defendant argue permissive intervention is not warranted here because, among other things, permitting EHA to intervene would unduly delay and prejudice the adjudication of this case, and EHA is unlikely to offer new arguments or evidence that would substantially contribute to the resolution of the legal issues in this case or the development of the underlying facts.[4]  (ECF No. 22 at 17–19; ECF No. 21 at 10.)

The Court agrees with Plaintiff and Defendant and finds EHA has failed to demonstrate permissive intervention is appropriate here.  Assuming for the sake of argument the threshold requirements of jurisdiction, timeliness, and common questions of law or fact have been met, EHA did not address any of the *Spangler* factors to buttress the propriety of permissive intervention.  Instead, EHA argues in its reply brief that one of the *Spangler* factors — whether the intervenor will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented — should not be considered because it is not part of the enumerated factors for permissive intervention.  (ECF

---

[4]      Because both Plaintiff and Defendant oppose EHA'a permissive intervention motion, the Court does not distinguish between the parties' arguments.

No. 26 at 11–12.)  This argument is unavailing.  The Ninth Circuit has repeatedly encouraged courts to look at the *Spangler* factors in considering whether permissive intervention is appropriate.  *See Spangler*, 552 F.2d at 1329; *Callahan*, 42 F.4th at 1022.  And because the Court has already found that EHA and Defendant have the same interests, it is unlikely that EHA would significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.  To the extent EHA has any expertise from its experience litigating Prop 65 cases with respect to Listed Titanium Dioxide that Defendant does not have, EHA may contribute to the resolution of this case by way of an amicus brief.

Moreover, permitting EHA to intervene would delay the adjudication of Plaintiff's motion for a preliminary injunction.  Although EHA filed its intervention motion before Plaintiff filed its preliminary injunction motion, the matter has been fully briefed and the Court is prepared to issue its ruling.  If EHA were allowed to intervene in this action, presumably EHA would want to file an opposition and Plaintiff would likely want to file a reply brief.  Thus, as a practical matter, permitting EHA to intervene would delay the adjudication of the original parties' rights.  *See Alisal Water Corp.*, 370 F.3d at 919 (courts are guided by practical and equitable considerations); *Perry*, 587 F.3d at 955 (courts must consider whether intervention will unduly delay adjudication of original parties' rights).  Such a delay is unwarranted here particularly because EHA's interest is adequately represented by Defendant, and EHA had an opportunity to file its intervention motion earlier but waited over three months after being served with the Complaint to file it (ECF No. 26 at 5–6).

In sum, it was EHA's burden to demonstrate that the Court should permit it to intervene in this action.  *Alisal Water Corp.*, 370 F.3d at 919.  EHA has failed to do so.  Accordingly, the Court DENIES EHA's motion to permissively intervene in this action.

///

///

///

///

11

1    **III.   PRELIMINARY INJUNCTION**

2         Plaintiff alleges Prop 65's warning requirement, as applied to Listed Titanium Dioxide in

3    cosmetics and personal care products, violates the First Amendment to the United States

4    Constitution.  (ECF No. 1; ECF No. 27-1 at 14.)  Plaintiff seeks preliminary injunctive relief

5    pursuant to Rule 65(a).  (ECF No. 27.)

6              A.    Standard of Law

7         "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear

8    showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

9    U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The

10   purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

11   a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

12        "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed

13   on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

14   [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."

15   *Winter*, 555 U.S. at 20.  "[A] stronger showing of one [factor] may offset a weaker showing of

16   another."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

17   However, "[t]he first factor 'is a threshold inquiry and is the most important factor.'"  *Baird v.*

18   *Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d

19   985, 989 (9th Cir. 2020)).

20              B.    Analysis

21                   1.    Likelihood of Success on the Merits

22                        *a.    First Amendment and Commerical Speech*

23        "It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas

24   in which truth will ultimately prevail, rather than to countenance monopolization of that market,

25   whether it be by the Government itself or a private licensee."  *Red Lion Broad. Co. v. F.C.C.*, 395

26   U.S. 367, 390 (1969) (citations omitted).  "The commercial marketplace, like other spheres of our

27   social and cultural life, provides a forum where ideas and information flourish."  *Sorrell v. IMS*

28   *Health Inc.*, 564 U.S. 552, 578–79 (2011) (quoting *Edenfield v. Fane*, 507 U.S. 761, 767 (1993)).

1 "While the paradigmatic First Amendment right lies in protections against speech restrictions, the

2 Court has long held the 'right to speak and the right to refrain from speaking are complimentary

3 components' of free speech principles." *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1275 (quoting

4 *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). "Indeed, in the context of protected speech, the

5 First Amendment's guarantee of freedom of speech makes no distinction of 'constitutional

6 significance' 'between compelled speech and compelled silence.'" *Id.* (quoting *Riley v. Nat'l*

7 *Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796–97 (1988)). "Although commercial

8 speech is afforded less protection than private, noncommercial speech, it is still entitled to the

9 protections of the First Amendment." *Id.* "This holds true for both corporations and individuals

10 alike." *Id.*

11      In the commercial speech context, the Supreme Court has articulated two tests for

12 determining the constitutionality of governmental action. First, there is the test set forth in *Cent.*

13 *Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). Under that

14 test, the government may restrict or prohibit commercial speech that is not misleading or related

15 to illegal activity, as long as the restriction or prohibition directly advances a substantial

16 governmental interest and is not more extensive than necessary. *Id.* at 564. Second, there is the

17 less stringent test set forth in *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471

18 U.S. 626 (1985). Under *Zauderer*, the government may compel commercial speech so long as it

19 is reasonably related to a substantial governmental interest, and the compelled speech is (1)

20 purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome. *Am. Beverage*

21 *Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 755–56 (9th Cir. 2019) (en banc). The

22 parties disagree about which test the Court should use (*see* ECF No. 27-1 at 14–15; ECF No. 30

23 at 14), but as will be explained, Plaintiff is likely to prevail on the merits even under the *Zauderer*

24 test, which is more deferential to the governmental action.[5]

25 _____

[5]     The Court notes there is some inconsistency within the Ninth Circuit's compelled speech
26 case law. Some cases indicate that *Zauderer* is the sole test to be used for *compelled* commercial
speech while the *Central Hudson* test is to be used for *restrictions* or *prohibitions* on speech. *See,*
27 *e.g.*, *Am. Beverage Ass'n*, 916 F.3d at 755–56. Other cases indicate *Zauderer* is an exception to
the general *Central Hudson* test, and if the exception does not apply, *Central Hudson* controls.
28 *See, e.g.*, *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1275–83. This distinction is immaterial,

1               *b.*      *Application of the Zauderer Test*

2        The compelled disclosures at issue here are the two Prop 65 safe harbor warnings for

3 Listed Titanium Dioxide, which must contain: (1) a black exclamation point inside a yellow

4 equilateral triangle with a bold black outline and the word "**WARNING**" appearing in all capital

5 letters and bold print, alongside the words, "This product can expose you to chemicals including

6 titanium dioxide (airborne, unbound particles of respirable size), which is known to the State of

7 California to cause cancer.  For more information go to www.P65Warnings.ca.gov."; or (2) a

8 black exclamation point inside a yellow equilateral triangle with a bold black outline and the

9 word "**WARNING**" appearing in all capital letters and bold print, alongside the words "Cancer --

10 www.P65Warnings.ca.gov."  (ECF No 27-1 at 15–16.)  Although businesses are not required to

11 adopt one of the two safe harbor warnings (they may create their own warning that complies with

12 Prop 65), Plaintiff contends "California [has a] hardline view of the 'clear and reasonable'

13 warning requirement [that] subjects [businesses] to suit for even minor deviations."  (*Id.* at 16.)

14 Thus, Plaintiff maintains its members are forced to use one of the two safe harbor warnings as a

15 practical matter, implicating the compelled speech doctrines.  (*Id.*)  Because Defendant does not

16 dispute that compelled speech is at issue here, the Court assumes Prop 65's warning requirements

17 for Listed Titanium Dioxide are sufficient to implicate *Zauderer* review.

18        As noted above, the *Zauderer* test "contains three inquiries: whether the notice is (1)

19 purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome."  *Am.*

20 *Beverage Ass'n*, 916 F.3d at 756.  "A compelled disclosure accompanying a related product or

21 service must meet all three criteria to be constitutional."  *Id.* (citation omitted).

22               *i.*      *Purely Factual Information*

23        "Information that is purely factual is necessarily 'factually accurate,' but that alone is not

24 enough … ."  *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1276 (citation omitted).  The

25 information must not be misleading to the average consumer and cannot improperly elevate "one

26 ────────────────────

27 however, because the latter line of cases has described *Zauderer* as a rational basis test, whereas
*Central Hudson* has been described as intermediate scrutiny.  *See id.* at 1266.  Thus, if Prop 65's
compelled commercial speech does not survive *Zauderer*, it necessarily cannot survive *Central*

28 *Hudson's* more demanding test.

1    side of a legitimately unresolved scientific debate." *Id.* at 1279.

2         Plaintiff contends the safe harbor warnings are not purely factual because they convey a

3    false and/or misleading message that Listed Titanium Dioxide causes cancer in humans or will

4    increase a consumer's risk of cancer, contrary to the scientific findings.  (ECF No. 27-1 at 17–

5    19.)  Specifically, Plaintiff argues "the two studies on rats that were the basis for the IARC

6    decision — which in turn was the sole basis for the [Prop 65] listing — have been shown to have

7    no relevance in humans" and the rats involved in the study "were forced to inhale levels of

8    titanium dioxide dust that they could not clear from their lungs — a condition that does not occur

9    in humans."  (*Id.* at 17.)

10        In opposition, Defendant argues the first safe harbor warning is purely factual because all

11   three of its clauses (i.e., that the product can expose you to Listed Titanium Dioxide, that Listed

12   Titanium Dioxide is known to the State of California to cause cancer, and the direction to the

13   consumer to consult available resources) contain true statements, and it is not misleading because

14   there is no legitimate debate about Listed Titanium Dioxide causing cancer in animals.  (ECF No.

15   30 at 14–16.)  Defendant presents no argument that the second, shorthand safe harbor warning is

16   purely factual.

17        The Court agrees with Plaintiff and finds the safe harbor warnings are not purely factual.

18   Although the first safe harbor warning contains only factual information, it is nevertheless

19   misleading to the average consumer.[6]  Defendant contends the warning is not misleading because

20   there is no legitimate debate about Listed Titanium Dioxide causing cancer in animals.  (ECF No.

21   30 at 15.)  However, Prop 65 is principally concerned about chemicals that are carcinogenic to

22   *humans*, not animals.  *See* Cal. Health & Safety Code § 25249.5.  Indeed, as Defendant concedes,

23   "Californians passed the law out of concern that hazardous chemicals pose a serious potential

24   threat to their health and well-being, [and] that state government agencies have failed to provide

25   _____

26   [6]      The Court notes Defendant objects to portions of the declarations Plaintiff submitted in
     support of its preliminary injunction motion, including the consumer survey conducted by Dr.
27   Stephen Nowlis.  (ECF Nos. 30-2, 30-3, 30-4.)  Because the Court does not rely upon the
     contested portions of the declarations for this Order, Defendant's objections are overruled as
28   moot.

1  them with adequate protection … ."  (ECF No. 30 at 8 (citation and internal quotations omitted).)

2  Thus, it is reasonable for the average consumer to read the warning requirement and conclude that

3  Listed Titanium Dioxide may cause them cancer or increase their chances of obtaining cancer.

4  But such a conclusion is misleading, particularly where, as here, the organization that prompted

5  Listed Titanium Dioxide's inclusion on the Prop 65 List — IARC — specifically found that there

6  is inadequate evidence for the carcinogenicity of titanium dioxide in humans.  (ECF No. 27-3 at

7  88; ECF No. 27-1 at 11–12; ECF No. 30 at 12.)  Importantly, Defendant represents that OEHHA

8  is in the process of proposing a "no significant risk" exemption to the warning requirement for

9  Listed Titanium Dioxide under California Health and Safety Code § 25249.10(c) (ECF No. 30-1

10  at 2), which further supports the conclusion that the safe harbor warning is misleading and not

11  purely factual.  And because Defendant does not address whether the second safe harbor warning

12  is purely factual, the Court deems any argument related thereto abandoned.  *See Jenkins v. Cnty.*

13  *of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (party abandoned claim by not raising it in

14  their opposition motion).

15  　　　　　In sum, the two Prop 65 warning requirements for Listed Titanium Dioxide are not purely

16  factual because they tend to mislead the average consumer.  Accordingly, the Court finds Plaintiff

17  is likely to prevail on the merits of its First Amendment claim under the *Zauderer* test, *see Am.*

18  *Beverage Ass'n*, 916 F.3d at 756 (compelled disclosure must be purely factual, noncontroversial,

19  and not unduly burdensome to be constitutional), and this factor weighs in favor of issuing a

20  preliminary injunction.

21  　　　　　　　　　　　　　　2.　　Irreparable Harm

22  　　　　　"To establish irreparable injury in the First Amendment context, [a plaintiff] need only

23  demonstrat[e] the existence of a colorable First Amendment claim."  *Brown v. California Dep't of*

24  *Transp.*, 321 F.3d 1217, 1225 (9th Cir. 2003) (citation and internal quotation marks omitted).  "If

25  a plaintiff bringing such a claim shows he is likely to prevail on the merits, that showing will

26  almost always demonstrate he is suffering irreparable harm as well."  *Baird*, 81 F.4th at 1042.

27  　　　　　Plaintiff contends it has demonstrated it will suffer irreparable harm in the absence of a

28  preliminary injunction because it has shown it is likely to succeed on the merits of its First

1   Amendment claim.  (ECF No. 27-1 at 25.)  In opposition, Defendant argues Plaintiff cannot show

2   irreparable harm because "it waited *a decade* after the first [Prop 65] enforcement action for

3   [Listed Titanium Dioxide] was filed to seek injunctive relief, and this delay significantly

4   undermines claims of harm."  (ECF No. 30 at 23–24.)  To support his contention, Defendant cites

5   *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985), *Garcia v. Google, Inc.*,

6   786 F.3d 733, 740 (9th Cir. 2015), and *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d

7   1211, 1214 (9th Cir. 1984) for the proposition that Plaintiff's delay in seeking injunctive relief

8   militates against a finding of irreparable harm.  (ECF No. 30 at 23–24.)

9         The Court finds Plaintiff has sufficiently demonstrated it will suffer irreparable harm in

10   the absence of a preliminary injunction.  The cases cited by Defendant — *Oakland Tribune*,

11   *Garcia*, and *Lydo Enterprises* — are inapposite as they do not involve a finding that the applicant

12   was likely to succeed on the merits of a constitutional claim.  *See Oakland Trib., Inc.*, 762 F.2d at

13   1376 ("Because the Tribune has not made that minimum showing we need not decide whether it

14   is likely to succeed on the merits."); *Garcia*, 786 F.3d at 740 ("As we shall see, the district court

15   did not abuse its discretion in concluding that Garcia was not likely to succeed on her copyright

16   claim … ."); *Lydo Enterprises, Inc.*, 745 F.2d at 1214 ("Because we disagree with the court's

17   conclusion that Lydo has made a showing that First Amendment freedoms are in fact violated by

18   the ordinance, we cannot affirm a finding of irreparable injury on this basis.").  Where, as here, a

19   court has made a finding that the applicant is likely to succeed on the merits of their constitutional

20   claim, irreparable harm will almost always follow.  *Baird*, 81 F.4th at 1042.  Indeed, Plaintiff

21   need only demonstrate the existence of a *colorable* First Amendment claim to establish

22   irreparable harm.  *Brown*, 321 F.3d at 1225.  Because Plaintiff has demonstrated it is likely to

23   succeed on the merits, it has demonstrated more than a colorable claim.  *Id.*  Thus, Plaintiff has

24   demonstrated it will suffer irreparable harm notwithstanding any delay in seeking injunctive

25   relief.  *See Lydo Enterprises, Inc.*, 745 F.2d at 1214 ("Any loss of First Amendment freedoms,

26   even briefly, can constitute irreparable injury." (citation omitted)).

27         Accordingly, the Court finds this factor weighs in favor of issuing a preliminary

28   injunction.

3.     Balance of the Equities and Public Interest

Where, as here, "the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  "And [a plaintiff's] likelihood of succeeding on the merits also tips the public interest sharply in his favor because it is 'always in the public interest to prevent the violation of a party's constitutional rights.'"  *Baird*, 81 F.4th at 1040 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

Plaintiff contends the balance of the equities and the public interest tips in its favor because, among other things, "unconstitutionally compelled speech is particularly acute" and Prop 65 risks flooding the market with cancer warnings about a chemical for which there is inadequate evidence of cancer in humans, thereby diluting the value of the warnings themselves. (ECF No. 27-1 at 25–26.)  In opposition, Defendant argues Plaintiff has failed to make the necessary showing because Californians voted for Prop 65, and "[e]njoining the warning requirement for [Listed Titanium Dioxide] would prevent the State from requiring businesses to provide precisely the type of information … the voters sought [to obtain] in passing the statute." (ECF No. 30 at 25.)

The Court finds a preliminary injunction is in the public interest and the balance of the equities tips in Plaintiff's favor.  Although the issuance of a preliminary injunction will necessarily impose some hardship on public and private enforcers of Prop 65 as it relates to Listed Titanium Dioxide, the balance of equities must tip in favor of those whose First Amendment rights are being violated.  *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Moreover, the public interest favors the proper exercise of First Amendment rights.  *Id.*; *Am. Beverage Ass'n*, 916 F.3d at 758.

Accordingly, the Court finds these two factors weigh in favor of issuing a preliminary injunction, and Plaintiff has now satisfied all four *Winter* factors.

///

///

18

1   **IV.   CONCLUSION**

2          For the foregoing reasons, the Court DENIES EHA's Motion to Intervene.  (ECF No. 19.)

3   The Court further GRANTS Plaintiff's Motion for a Preliminary Injunction.  (ECF No. 27.)

4   Defendant, his officers, employees, and agents, and all those acting in privity or concert with

5   those individuals, including private citizen enforcers under California Health & Safety Code §

6   25249.7(d), are hereby ENJOINED from filing or prosecuting new lawsuits to enforce Prop 65's

7   warning requirement, California Health & Safety Code § 25249.6, for cancer as applied to Listed

8   Titanium Dioxide (i.e., titanium dioxide that consists of airborne, unbound particles of respirable

9   size) in cosmetic and personal care products.  This Order does not alter any existing consent

10  decrees, settlements, or agreements related to Prop 65 warning requirements.  The amount of the

11  security bond for this order shall be $0.  The preliminary injunction shall remain in place until

12  further Order of this Court.

13         IT IS SO ORDERED.

14  Date: June 11, 2024

15

16

17  _____
    Troy L. Nunley
18  United States District Judge

19

20

21

22

23

24

25

26

27

28