# EXHIBIT K

```
 1                  UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF CALIFORNIA
 3
 4
 5    _____
                                 )
 6    THE PERSONAL CARE          )
      PRODUCTS COUNCIL,          )
 7                               )
          Plaintiff,             )
 8                               ) Case No.
             v.                  ) 2:23-CV-01006-TLN-
 9                               ) JDP
      ROB BONTA, in his          )
10    official capacity as       )
      Attorney General of the    )
11    State of California,       )
                                 )
12        Defendant.             )
      _____)
13
14
                         ZOOM DEPOSITION OF
15
                        DR. JOSEPH L. ARVAI
16
                         Zurich, Switzerland
17
                      Friday, August 9, 2024
18
                              Volume I
19
20
21
22    Reported by:
      LORI M. BARKLEY
23    CSR No. 6426
24    Job No. 6809395
25    PAGES 1 - 178
```

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2                EASTERN DISTRICT OF CALIFORNIA
 3
 4
     _____
 5                              )
     THE PERSONAL CARE          )
 6   PRODUCTS COUNCIL,          )
                                )
 7       Plaintiff,             )
                                ) Case No.
 8       v.                     ) 2:23-CV-01006-TLN-
                                ) JDP
 9   ROB BONTA, in his          )
     official capacity as       )
10   Attorney General of the    )
     State of California,       )
11                              )
         Defendant.             )
12   _____)
13
14          Deposition of DR. JOSEPH L. ARVAI, Volume I,
15   taken on behalf of PLAINTIFF, at Zurich, Switzerland,
16   beginning at 9:00 a.m., and ending at 2:46 p.m. on
17   Friday, August 9, 2024, before LORI M. BARKLEY,
18   Certified Shorthand Reporter No. 6426.
19
20
21
22
23
24
25
                                                    Page 2
```

```
 1    APPEARANCES:
 2
 3    HOGAN LOVELLS, LLP
 4    BY:   Trent Norris
 5    Attorney at Law
 6    4 Embarcadero Center, Suite 3500
 7    San Francisco, CA 94111
 8    415-374-2365
 9    Trent.norris@hoganlovells.com
10
11    CALIFORNIA DEPARTMENT OF JUSTICE
12    BY:   Megan Hey
13    Attorney at Law
14    300 South Spring Street
15    Los Angeles, CA 90013
16    213-269-6344
17    Megan.hey@doj.ca.gov
18
19
20
21
22
23
24
25
```

```
 1                Zurich, Switzerland; Friday, August 9, 2024
 2                              9:00 a.m.
 3
 4                       DR. JOSEPH L. ARVAI,
 5      having been administered an oath, was examined and
 6      testified as follows:
 7
 8                             EXAMINATION
 9
10      BY MR. NORRIS:
11           Q.   Good morning, Dr. Arvai.  I am Trent Norris.  We
12      have met before, right?
13           A.   Yes, sir.
14           Q.   And I'll be taking your deposition today.
15      You've had your deposition taken, I believe, one other
16      time?
17           A.   That is correct.
18           Q.   And that was in the California Chamber of
19      Commerce versus Bonta case; is that right?
20           A.   Yes, sir.
21           Q.   Do you have any questions about how a deposition
22      works?
23           A.   I do not.
24           Q.   And you understand that the court reporter will
25      be taking down your responses to my questions today.
```

1    in close proximity to something very hazardous.
2            It's a long survey, it's a very emotionally
3    engaging survey.  And I think we're paying people about
4    $60 for about 20 minutes of their time.
5            But, again, we calibrate that.  It's not sort of
6    a number we pull out of the air.  We will work with the
7    survey provider to base our payment on their experience
8    with those kinds of questions, that kind of time, amount
9    of effort, so on.
10           I guess what I'm saying, Mr. Norris, is when it
11   comes to things like payment, when it comes to things
12   like who we include and don't include in a survey
13   sample, we spend a lot of time talking about a lot of
14   different things to make sure that we're not creating a
15   sample that is going to yield data that isn't going to
16   standup to scrutiny later.
17       Q.   Now, you've mention all the surveys you've done
18   for academic publications.  Have you ever conducted a
19   survey or designed a survey for use in litigation?
20       A.   I have not for litigation, no.
21       Q.   And am I right that the only testimony you've
22   provided in litigation is the case we discussed before
23   and today's case?
24       A.   You would be correct, yes.
25       Q.   Are you familiar generally with litigation

Page 35

1            I've been asked to review surveys for government
2    agencies under very similar circumstances to assess
3    whether or not those surveys would answer the questions
4    that they're hoping to get answers to in a defensible
5    way.
6            I've been asked to review surveys that have been
7    put to foundations or different kinds of funding
8    agencies to see if those surveys would be deserving of
9    funding.
10           Those are the things that pop into my mind at
11   the moment.
12       Q.   Have you ever published an evaluation of another
13   expert's survey?
14       A.   Not to my knowledge, no.
15       Q.   Have any of the publications that you mentioned
16   where you have conducted a survey addressed the question
17   of what a specific communication actually communicates
18   to a sample population?
19           MS. HEY:  Objection, vague and ambiguous.
20           THE WITNESS:  May I ask for a clarification?
21   Are you asking have I conducted a survey or an
22   experiment to see how a label might influence people?
23   BY MR. NORRIS:
24       Q.   Yes, a label would be one example --
25       A.   A warning.

1          You can't test for significance via subtraction.
2     You need to actually calculate a mean, an error
3     estimate, and then compare those two sets of ranges
4     using a statistical test.
5          So in not just academic research but in research
6     social science or behavioral science research in
7     general, parametric tests tend to be strongly favored.
8          MR. NORRIS:  This is probably a good time for a
9     break.
10
11          (Recess taken.)
12
13          MR. NORRIS:  Back on the record.
14
15     Q.   Dr. Arvai, were any of the published surveys
16     that you discussed where you evaluated statements in a
17     test controlled manner related to a warning?
18     A.   May I consult my CV?
19     Q.   Of course.
20     A.   I'm seeing a lot of papers about risks and
21     hazards.  Studies in which we would have characterized
22     risks or hazards but not where we would have had a
23     warning label for example of the wild fire, doesn't come
24     with a warning label.
25          So indirect answer for your question, no, I

Page 41

1    don't see studies that specifically focus on a warning
2    or a label warning.  But many studies have talked about
3    situations in which people would potentially be at risk.
4        Q.   And so am I right that none of these dealt with
5    warnings on the label of a consumer product?
6        A.   That is correct although there are studies in
7    the list that were about consumer products.  But, again,
8    that talk about risks in a more whole holistic way or
9    that talk about the products in a more holistic way
10   versus singling out a particular warning or an
11   individual statement about the product.
12       Q.   Then you mentioned that you've done work, of
13   course, that you have not published that sometimes is
14   under a non-disclosure agreement.
15            Can you tell me in any of that work without, of
16   course, violating any confidences so speaking in
17   generalities, can you tell me if in any of that work you
18   have conducted a survey that evaluated consumer
19   perception of a warning on a consumer product?
20       A.   Your use of the word "warning" is causing me to
21   say I don't recall.  But if you had replaced warning
22   with label, then the answer would have been yes.
23            So in other words, I have done studies under a
24   NDA about consumers -- labels on consumer products.
25       Q.   But you wouldn't characterize the statement you

1               But he talks about significance and how he
2   believes certain results are significant.  Significance
3   is a statistical term.  And Mr. Nowlis didn't do any
4   statistics.
5               So I would be very interested in drilling into
6   his data some more and seeing what, if any, statistics I
7   could do after the fact just to see if indeed when he
8   said something is significant, if it actually is
9   significant by the standards of science as governed by
10  statistics and scientific method.
11              I could keep brainstorming but those are the
12  things that have popped into my mind right now.
13       Q.   If another occurs to you, please do let us know.
14       A.   Be happy to.
15       Q.   Thank you.  One of the purposes of this process
16  is to understand your opinions before we go to trial in
17  the case so --
18       A.   I can't wait, I can't wait.
19       Q.   Exactly.  So --
20       A.   I was joking of course for the court reporter.
21  I can wait, believe me, I can wait.
22       Q.   Did you conduct a survey on the same Proposition
23  65 warnings that Dr. Nowlis conducted his survey on?
24       A.   No, I did not.
25       Q.   Now I think in your report you mentioned that

Page 47

1  I declare under penalty of perjury under the laws of the
2  State of California that the foregoing (subject to the
3  errata) is true and correct.
4          Executed on   August 20, 2024, at
5     Los Angeles, CA.

_____
SIGNATURE OF WITNESS

Page 174

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    STATE OF CALIFORNIA         ) ss.
2    COUNTY OF LOS ANGELES       )
3
4            I, Lori M. Barkley, CSR No. 6426, do hereby
5    certify:
6            That the foregoing depositions proceedings were
7    taken before me at the time and place therein set forth
8    and were recorded stenographically by me, and were
9    thereafter transcribed under my direction and
10   supervision, and that the foregoing pages contain a
11   full, true and accurate record of all proceedings and
12   testimony to the best of my skill and ability.
13           I further certify that I am neither counsel for
14   any party to said action, nor am I related to any party
15   to said action, nor am I in any way interested in the
16   outcome thereof.
17           IN WITNESS WHEREOF, I have subscribed my name
18   this 12th day of August, 2024.
19
20           _____
21           LORI M. BARKLEY, CSR No. 6426
22
23
24
25

Page 175