ROB BONTA, State Bar No. 202668
Attorney General of California
LAURA J. ZUCKERMAN, State Bar No. 161896
Supervising Deputy Attorney General
MEGAN K. HEY, State Bar No. 232345
RAFAEL J. HURTADO, State Bar No. 292694
Deputy Attorneys General
  300 South Spring Street
  Los Angeles, CA 90013
  Telephone: (213) 269-3344
  Fax: (916) 731-2128
  E-mail: Megan.Hey@doj.ca.gov
*Attorneys for Rob Bonta, in his Official Capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PERSONAL CARE PRODUCTS COUNCIL,**<br><br>                        Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California,**<br><br>                        Defendant. | 2:23-CV-01006-TLN-JDP<br><br>**ATTORNEY GENERAL ROB BONTA'S OBJECTIONS TO THE DECLARATION OF STEPHEN M. NOWLIS, Ph.D., ECF NO. 43-20, CITED IN SUPPORT OF THE PERSONAL CARE PRODUCTS COUNCIL'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: November 14, 2024<br>Time: 2:00 p.m.<br>Dept: Courtroom 2<br>Judge: Honorable Troy L. Nunley<br>Trial Date: None Set<br>Action Filed: May 26, 2023 |

Pursuant to Federal Rule of Civil Procedure 56(c)(2), Defendant Rob Bonta, Attorney General of the State of California (Attorney General), submits the following objections to portions of the Declaration of Stephen M. Nowlis, Ph.D., ECF No. 43-20, cited in Support of the Personal Care Products Council's (PCPC) Motion for Summary Judgment (Nowlis Decl.). Dr. Nowlis's basic conclusion, that "most California consumers interpret a Proposition 65 cancer warning on an eyeshadow package to mean that using the eyeshadow will increase their own risk of cancer"—which he generalizes to apply equally to other cosmetic products—is based on a single survey he conducted. Nowlis Decl., ¶¶ 54, 55. However, the survey data are insufficient and unreliable because the survey did not use a representative sample, and it relies on leading questions to guide the survey respondents to a desired response. The Attorney General therefore objects to the Nowlis Declaration and respectfully requests that the Court exclude it from evidence.

## LEGAL BACKGROUND

Pursuant to Federal Rule of Civil Procedure 56, a declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, the Court should give no weight to the portions of the Nowlis Declaration that fail to meet the basic evidentiary standards for the competence and personal knowledge of the declarant, or that set out facts inadmissible in evidence.

Rule 702 of the Federal Rules of Evidence sets forth the framework that a proponent of expert testimony must meet for the expert opinion to be admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-595 (1993). Expert opinion is only admissible if it is reliable and relevant. *Id.* at 589-591.

Because it involves hearsay, a survey "must be conducted with proper safeguards to insure accuracy and reliability." *Pittsburgh Press Club v. United States,* 579 F.2d 751, 758 (3d Cir. 1978). Courts have found that such safeguards include the following: (1) "a proper universe must be examined and a representative sample must be chosen"; and (2) "the sample design, the questionnaires and the manner of interviewing [must] meet the standards of objective surveying

and statistical techniques." *IGT v. Alliance Gaming Corp.*, 2008 WL 7084606, at *8 (D. Nev. 2008). "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,'" based on what is known. *Daubert*, 509 U.S. at 590. "[A] valid scientific connection to the pertinent inquiry [i]s a precondition to admissibility." *Id*. at 592. Courts also must be mindful of other evidentiary rules, such as Rule 403 of the Federal Rules of Evidence, which allows exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *Id.* at 595. Additionally, "the weight to be given a survey, assuming it is admissible, depends on the procedures by which the survey was created and conducted." *Zippo Mfg. Co. v. Rogers Imports, Inc.*, 216 F. Supp. 670, 681 (S.D.N.Y. 1963).

**OBJECTIONS**

The Attorney General objects to the Nowlis Declaration on the grounds that the survey on which it is based was not undertaken using reliable principles or methods, because it is not based on a representative sample, and because it relies on leading questions.

**I.   THE SURVEY IS NOT BASED ON A REPRESENTATIVE SAMPLE**

As noted above, generally accepted survey principles require, among other things, that the "proper universe must be examined and a [r]epresentative sample must be chosen." *Pittsburgh Press Club v. United States,* 579 F.2d at 758 (quoting The Judicial Conference Study Group, in its Handbook of Recommended Procedures for the Trial of Protracted Litigation, 25 F.R.D. 351, 429 (1960)). The court in *Pittsburgh Press Club* commented that the survey at issue in the *Zippo* case. *Zippo Mfg. Co. v. Rogers Imports, Inc.,* 216 F. Supp. 670, 680-86 (S.D.N.Y. 1963). 579 F.2d at 758. That survey (of 115,000 smokers) was found to be scientifically designed, with the proper safeguards to be deemed admissible, because, among other things, "[t]he *random* sample was carefully chosen to obtain a representative cross-section of the universe." *Id.* (emphasis added). Indeed, the Zippo survey comprised three separate surveys that "were conducted across a national probability sample of smokers, with a sample size of approximately 500 for each survey." *Zippo Mfg. Co.,* 216 F. Supp. at 681. "The samples were chosen on the basis of data obtained from the Bureau of Census by a procedure" starting with "the selection of fifty-three localities

(metropolitan areas and non-metropolitan counties)" followed by "a selection of 100 clusters within each of these localities—each cluster consisting of about 150-250 dwelling units—and then to approximately 500 respondents within the clusters." *Id.* The entire procedure was designed to obtain a representative sample of all smoking adults in the country. *Id.* This contrasted greatly with the *Pittsburgh Press Club* survey of 218 of its members, which was not random at all. *Id.*

Similarly, the Nowlis survey does not reflect a true representative sample of California consumers who might encounter a Proposition 65 warning for titanium dioxide (airborne, unbound particles of respirable size) on a product like eyeshadow. Rather, the Nowlis survey relied on 612 respondents procured from pools of paid respondents at two survey panel companies, ProdegeMR and Paradigm Sample. Nowlis Decl., ¶¶ 17, 40. The panels from these two survey panel companies are composed of people who sign up to take surveys in exchange for some form of compensation, here, "Swagbucks" and "Tellwut Points." Nowlis Decl., ¶ 17. As the ProdegeMR website touts, "We Can Recruit Engaged Participants for Meaningful Answers to Various Types of Projects."[1] According to the website, "[o]ur audience is highly profiled with hundreds of demographic and psychographic attributes making custom segmentations or deeper analysis . . . a piece of cake."[2] Paradigm Sample explains how its "clients benefit from near-instant access to our qualified, motivated global consumer panel, powered by the Tellwut platform," which is "an online survey platform that allows organizations and individuals to quickly and easily distribute surveys to qualified members of the Tellwut community."[3] It explains that the "users on Tellwut include consumers in targeted groups like moms, millennials, pet owners, automobile owners, and patients." *Id.*

The Nowlis survey relies on self-selected survey respondents, yet holds their responses out as representative of those of a typical California consumer who might review and consider a Proposition 65 warning for titanium dioxide (airborne, unbound particles of respirable size). *See* Nowlis Decl., ¶¶ 8, 10, 17. The responses by the 612 respondents in the Nowlis survey represent

---

[1] https://www.prodege.com/product/qualitative-research/ [last visited on September 24, 2024].
[2] https://www.prodege.com/product/behavioral-data/ [last visited on September 24, 2024].
[3] https://corporate.paradigmsample.com/solutions/ [last visited on September 24, 2024].

only those 612 people; their responses are not representative of anything else. This is vastly different from a randomized sample—like that in the Zippo survey described above—of California consumers that would qualify as representative by comporting with the requisite survey methodology. *See Pittsburgh Press Club,* 579 F.2d at 758; *Zippo Mfg. Co..,* 216 F. Supp. at 681. Accordingly, the Nowlis Declaration, which is entirely based on the Nowlis survey, should be excluded from evidence.

## II.   THE SURVEY RELIES ON LEADING QUESTIONS

Another requirement for a scientifically-sound survey is that "the questionnaires and the manner of interviewing meet the standards of objective surveying and statistical techniques." *Pittsburgh Press Club,* 579 F.2d at 758. Indeed, "a poll might well be inadmissible if, for example, the questions were 'unfairly worded to suggest answers favorable to the party sponsoring the survey,' because in such a case the circumstantial guarantees of trustworthiness would be lacking." *Id.* at 758-59 (quoting *Zippo Mfg. Co.*, 216 F. Supp. at 684). The *IGT* court's analysis of a leading question is illustrative: "Dr. Kassinove testified: 'I think I probably asked people, 'take a look at the $1,000 up there. Does that seem like a lot of money to you?' That was kind of the question I would ask them.' [ . . . ]. Such suggestive questions appear to undermine the reliability of his interviews." *IGT v. All. Gaming Corp.*, No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 7084606, at *10 (D. Nev. Oct. 21, 2008) (internal citation omitted).

The Nowlis survey relied on similarly-obvious leading questions. After being directed by an arrow to consider a mock Proposition 65 warning, the respondents were asked "whether the statement/package communicated anything about what will happen to them if they use this eyeshadow." Nowlis Decl., ¶ 33 (describing question QF2). Then, the respondents were "asked if the statement/package communicated anything about whether there are risks to them from using this eyeshadow." *Id.* ¶ 35 (describing question QF4). If the respondent answered affirmatively to the question whether the package/statement communicated to them if anything would happen to them if they used the product, they were then asked, "[w]hat does this **statement** [TEST]/**package** [CONTROL] communicate to you about whether there are risks to you from using this eyeshadow?" *Id.* ¶ 36 (describing question QF5). Then, all of the respondents were

ATTORNEY GENERAL'S OBJECTIONS TO NOWLIS DECLARATION CITED IN SUPPORT OF OPPOSITION TO PCPC'S MOTION FOR SUMMARY JUDGMENT (Case No. 2:23-CV-01006-TLN-JDP)

asked "if the statement/package communicated to them that using this eyeshadow will increase their risk of cancer." *Id*. ¶ 38 (describing question QF6).

Through this series of increasingly leading questions, the survey suggested to the respondents that they should consider a causal relationship between their use of the product and a risk of cancer. These are precisely the type of suggestive questions that undermine the responses they engender that courts have excluded from evidence. *See IGT v. All. Gaming Corp.*, No. 2:04-CV-1676-RCJ-RJJ, 2008 WL 7084606, at *10 (finding unreliability of the interviews precluded their admission and the declarant's reliance upon them).

## CONCLUSION

For the foregoing reasons, the Attorney General respectfully requests that the Court enter an order excluding the Nowlis Declaration from evidence, as the survey on which it is based does not satisfy the *Daubert* and Rule 702 requirements for reliability.

Dated: September 24, 2024

Respectfully submitted,

ROB BONTA
Attorney General of California
LAURA J. ZUCKERMAN
Supervising Deputy Attorney General

*/s/ Megan K. Hey*

MEGAN K. HEY
RAFAEL J. HURTADO
Deputy Attorneys General
*Attorneys for Rob Bonta, in His Official Capacity as Attorney General of the State of California*

LA2023950048
67110281.docx