# Exhibit K

# Deposition Transcript

**Case Number: 2:23-CV-01006-TLN-JDP**
**Date: August 7, 2024**

**In the matter of:**

# THE PERSONAL CARE PRODUCTS COUNCIL v ROB BONTA

# Amy K. Madl, Ph.D.

CERTIFIED COPY

Reported by:
Cherie J. Anderson

**Steno**
**Official Reporters**

**315 West 9th Street**
**Suite 807**
**Los Angeles, CA 90015**
**concierge@steno.com**
**(310) 573-8380**
**NV: Firm #108F**

AMY K. MADL, PH.D.
AUGUST 07, 2024 JOB NO. 1087576

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
2:23-CV-01006-TLN-JDP

- - -

THE PERSONAL CARE PRODUCTS COUNCIL,

Plaintiff,

vs.

ROB BONTA,

Defendant.

DEPOSITION OF AMY K. MADL, Ph.D.

DATE TAKEN: Wednesday, August 7, 2024

TIME BEGAN: 9:32 a.m. Pacific

TIME ENDED: 5:17 a.m. Pacific

LOCATION: Conducted via videoconference

REPORTED BY: Cherie J. Anderson, RMR, RPR, CRR
Steno
315 West 9th Street, Suite 807
Los Angeles, CA 90015
(310) 573-8380
NV FIRM# 108F

STENO.COM
(310) 573-8380

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

APPEARANCES:

DLA PIPER LLP
BY: GREGORY G. SPERLA, ESQUIRE
ALBERTO CORONA, ESQUIRE
555 Mission Street, Suite 2400
San Francisco, California 94105
(415) 836-2500
greg.sperla@dlapiper.com
(Appearing via videoconference)
Representing the Plaintiff

OFFICE OF THE ATTORNEY GENERAL
CALIFORNIA DEPARTMENT OF JUSTICE
BY: RAFAEL J. HURTADO, ESQUIRE
600 West Broadway, Suite 1800
San Diego, California 92101
(619) 321-5780
rafael.hurtado@doj.ca.gov
(Appearing via videoconference)
Representing the Defendant

ALSO PRESENT REMOTELY: Capri Bland, Notary
Dr. Charles Jameson
Michael Tibus, Steno

STENO.COM
(310) 573-8380

10:48:23 A Sorry.

10:48:25 Q Sorry. Let me finish my question.

10:48:28 A Sure.

10:48:28 Q Is your experience in cancer hazard assessment always in the context of you conducting a risk assessment?

10:48:36 MR. SPERLA: Objection. Vague.

10:48:37 A No.

10:48:40 Q Okay. Have you conducted cancer hazard assessments on their own?

10:48:48 MR. SPERLA: Objection. Vague.

10:48:50 A I'm not sure what you mean by "on their own," but -- but if you're asking if I've evaluated the existing toxicology and human health effects to evaluate whether a substance may or may not be a carcinogen, yes, I have done that.

10:49:09 Q Okay. In what context have you done that?

10:49:15 A Well, I've done that in the context of conducting a risk assessment. So as, you know, the -- there are different steps in the risk assessment process.

10:49:26 The first one is a hazard assessment. So the key question for a hazard assessment is whether a substance can cause illness or disease.

10:49:38 And I have had the opportunity, whether it's

Months.

Q Did you review this table?

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

A Well, I would have to look at the context of that, but I did review the article. I'm familiar with it.

Q Okay. How many rats developed benign squamous cell tumors or "squamous" -- how do you -- my first question is, how do you pronounce "squamous"?

A I usually say "squamous."

Q "Squamous." Okay. So how many rats developed benign squamous cell tumors in the Heinrich study?

MR. SPERLA: Objection. Vague and ambiguous.

A So I guess it depends on what treatment method or treatment substance you're looking at as well as whether you're looking at squamous cell or benign squamous cell tumors. So there's a difference depending on the substance that you're looking at.

Q Good point. I was looking at the column under TiO2, or titanium dioxide, and specifically the first one, benign squamous cell tumors.

MR. SPERLA: Same objection.

A Yes. So what's reported here is 20 out of 100 animals for benign squamous cell.

Q Okay. And how many rats were reported to develop squamous cell carcinoma for -- I'm only

STENO.COM
(310) 573-8380

looking at the titanium dioxide column.

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

MR. SPERLA: Objection. Vague and ambiguous.

A So they reported 3 of 100 for squamous cell carcinoma --

Q Okay.

A -- for the titanium dioxide treatment group. Again, this is in rats.

Q Yeah. And how many rats were reported to develop adenomas for the titanium dioxide treatment group?

MR. SPERLA: Objection. Vague and ambiguous.

A So, again, in rats in this table, they report adenomas of 4 of 100 animals that were treated with titanium dioxide.

Q Okay.

A And I -- well, okay. Let me back up here. Okay. I just wanted to look at the -- how they reported the metrics here.

Q Are you good now or are you still reviewing?

A Yeah. I'm fine to proceed.

Q Okay. How many rats were observed to develop -- or were reported to develop adenocarcinomas under titanium dioxide -- under the titanium dioxide treatment group?

STENO.COM
(310) 573-8380

MR. SPERLA: Objection. Vague and ambiguous.

12:54:06 A So, there again, we're looking at Table 11, reporting lung tumors in rats, and they report adenoma carcinomas in 13 of the 100 rats.

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

12:54:28 Q What are squamous cell tumors -- or sorry -- benign squamous cell tumors?

12:54:36 A Those are tumors of the squamous cell that are not considered carcinogenic or metastatic. They're benign in nature.

12:54:54 Q Okay. What are squamous cell carcinomas?

12:54:58 A These are, again, squamous cells that are -- tumors that are made of squamous cells, and those would be metastatic tumors.

12:55:13 Q Does metastatic mean that they're carcinogenic or --

12:55:17 A Well, they're -- they're not benign tumors.

12:55:22 Q Okay. What about -- I think you pronounce it "adenomas," or I'm not sure how to say that word.

12:55:33 A I usually say "adenoma."

12:55:34 Q "Adenoma." What is an adenoma?

12:55:37 A It's also a tumor.

12:55:42 Q And adenoma -- adenomacarcinomas, what is that?

12:55:48 A Again, it's also a tumor.

12:55:50 Q Okay. Do you know if in the Heinrich study it was reported that the benign/malignant -- the

STENO.COM
(310) 573-8380

13:00:26 Q Okay. Are non-neoplastic lesions also tumors?

13:00:31 A They are. So the way I interpret that is that -- basically benign or non-benign tumors.

13:00:37 Q Okay. According to this table, how many rats developed bronchioloalveolar adenomas when they were exposed to 250 milligrams per meter cubed of titanium dioxide?

13:01:04 MR. SPERLA: Objection. Vague and ambiguous.

13:01:08 A So, again, these are rats that were exposed. You said 250 milligrams per meter cubed. So that was done over the course of two years, and bronchioloalveolar adenoma was -- between 12 and 13 of the animals were reported to have that type of tumor both in male and female rats.

13:01:39 Q Okay. Okay. How many rats, according to Table 3, developed squamous cell carcinomas when they were exposed to 250 milligrams per meter cubed of titanium dioxide?

13:01:56 MR. SPERLA: Objection. Vague and ambiguous.

13:01:57 A So what the table shows is that the incidence was between 1 and 13, depending on whether you're looking at male or female rats.

13:02:10 Q So if I -- the signs are kind of small, but this column looks like it's the male rats. Is that right?

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

13:10:25 MR. SPERLA: Objection. Vague and ambiguous. Calls for speculation. Leading.

13:10:29 A Yes, that's correct.

13:10:33 Q So if we apply IARC's definition of sufficient evidence of carcinogenicity in the monograph for titanium dioxide, doesn't it meet the criteria of IARC's definition of sufficient evidence of carcinogenicity?

13:10:51 MR. SPERLA: Objection. Vague and ambiguous. Calls for speculation.

13:10:54 A No. I don't agree with your statement -- or your question. You have to look at more than just the fact that they conducted it in two or more species and having independent laboratories. What's important, in terms of a hazard assessment, as I had described in my report, is understanding the mode of action and also its relevance to humans.

13:11:19 So, yes, indeed, you do see tumors in rodents -- rats -- exposed in overload dosing conditions, but those are conditions that are not -- rather, the mode of action is not relevant to humans.

13:11:35 Q Okay. But tumors were observed, nonetheless. Right?

13:11:39 MR. SPERLA: Objection. Vague and ambiguous. Asked and answered.

STENO.COM
(310) 573-8380

AMY K. MADL, PH.D.
AUGUST 07, 2024
JOB NO. 1087576

13:11:43 A Tumors were reported at the highest doses, and
13:11:47 those doses were in overwhelming excessive doses that
13:11:54 would -- and the mode of action -- it's been very
13:11:57 clearly demonstrated, the mode of action of overload
13:12:00 dosing conditions causing tumors in rats. And we
13:12:06 don't see that type of mode of action in other
13:12:08 species, and there's no support that that -- that
13:12:12 would -- that type of mode of action would be
13:12:16 predictive of human health risk or carcinogenicity
13:12:21 risk in humans.
13:12:26 Q In paragraph 22 of your expert report,
13:12:30 lines 15 through 18 -- I wasn't going to pull it up,
13:12:32 but I can if you want. But I believe you have a copy
13:12:34 in front of you.
13:12:35 A Yes, I have it.
13:12:36 Q Okay. -- you quote the Institute of
13:12:38 Medicine's Improving the Presumptive Disability
13:12:42 Decision-Making Process for Veterans publication. Is
13:12:46 that correct?
13:12:47 A Yes.
13:12:48 Q And that's from 2008?
13:12:50 A Yes.
13:12:51 Q Okay. So I'm going to introduce that
13:13:04 publication as Exhibit 9.
13:13:10 And I was going to refer to the Institute of

CERTIFICATE OF REPORTER

I, Cherie J. Anderson, Registered Merit Reporter, Registered Professional Reporter, Certified Realtime Reporter, and Notary Public for the State of North Carolina at Large, do hereby certify:

That the foregoing deposition was taken remotely before me on the date and at the time and location stated on page 1 of this transcript; that the deponent was duly sworn to testify to the truth, the whole truth, and nothing but the truth; that the testimony of the deponent and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed; that the foregoing deposition as typed is a true, accurate, and complete record of the testimony of the deponent and of all objections made at the time of the examination to the best of my ability.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof.

Witness my hand, I have hereunto affixed my official seal on this 7th day of August 2024, at Wilmington, New Hanover County, North Carolina.

Cherie J. Anderson, RMR, CRR
My Commission expires
December 22, 2026

Job No. 1087576
Date: August 07, 2024
Witness Name: Amy K. Madl, Ph.D.
Case Caption: THE PERSONAL CARE PRODUCTS COUNCIL v ROB BONTA

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the captioned matter or the same has been read to me, and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath.

Signed on the 14 day of August, 2024.

[signature]

Signature Amy K. Madl, Ph.D.

PAGE 1 OF 3

**ERRATA SHEET - CHANGES TO TESTIMONY**

Deponent: Amy K. Madl
Date: 8/7/2024
Case Name: PCPC v. Rob Bonta
Case No: 2:23-CV-01006-TLN-JDP

| PAGE | LINE | FROM | TO | REASON |
|---|---|---|---|---|
| 8 | 11 | Merrick Ward | Mary Kay Ward | Misspelling |
| 36 | 9 | Respond or revise any | Respond to or review | Clarify testimony |
| 50 | 16 | Are related to a | Or related to a | Transcription error |
| 61 | 12 | Dioxide in the available | Dioxide and lung cancer from the available | Clarify testimony |
| 61 | 13-14 | Mechanistic evidence as to whether titanium dioxide is associated with lung cancer | Mechanistic evidence | Clarify testimony |
| 62 | 23 | Relating that to what is the relative risk to a | Comparing that to the incidence in the | Clarify testimony |
| 62 | 24 | Control population | Control population to understand risk | Clarify testimony |
| 63 | 25 | Whether – in determining whether there's a causal | to determine whether there's a causal | Clarify testimony |
| 64 | 2-3 | There are aspects that I described, such – in the previous line, such | there are various aspects to consider, such | Clarify testimony |
| 64 | 24-25 | Confidence as to how confident the results are from | Confidence as to whether the results from the epidemiology studies demonstrate a causal relation. | Clarify testimony |
| 74 | 6 | As to whether that was in overload | As to whether overload | Clarify testimony |
| 79 | 2 | So we're all evaluating the | I evaluated the | Clarify testimony |
| 79 | 25 | IARC will evaluate | IARC evaluated | Clarify testimony |
| 80 | 1 | And make a qualitative | And made a qualitative | Clarify testimony |
| 91 | 16 | Methods, but – to make | Methods, to make | Clarify testimony |
| 92 | 20-21 | Those are conditions that are not – rather, the mode of action | Those are conditions in which the mode of action | Clarify testimony |
| 93 | 2-3 | Excessive doses that would – and the mode of action – it's been very | Excessive doses – it's been very | Clarify testimony |
| 93 | 7-8 | No support that that – that would – that type | No support that type | Clarify testimony |
| 94 | 10 | A document that's to establish | A document that's used to establish | Clarify testimony |
| 110 | 12 | As to which risk assessment's | As to which risk estimate's | Transcription error |
| 111 | 13 | The risk assessment of 1.04 | The risk estimate of 1.04 | Transcription error |
| 111 | 17 | Not an association between | Not a difference between | Clarify testimony |

| PAGE | LINE | FROM | TO | REASON |
|---|---|---|---|---|
| 113 | 18 | The exposure and fact. | The exposure and effect. | Transcription error |
| 117 | 12 | The risk assessments were | The risk estimates were | Transcription error |
| 132 | 15 | And not – there's – in showing that | Showing that | Clarify testimony |
| 133 | 14-15 | But there's no – because of – there confidence interval | But the confidence interval | Clarify testimony |
| 143 | 4 | So they are not positive, but they're not | So they are positive, but they're not | Transcription error |
| 148 | 22 | Influence for causal associations | Influence for cancer causal associations | Clarity testimony |
| 149 | 3 | Weight to the raw weight | Weight to the overall weight | Transcription error |
| 151 | 13 | Would add to the raw weight | Would add to the overall weight | Transcription error |
| 162 | 24 | Different plans | Different plants | Misspelling |
| 169 | 23-24 | Where the overload dosing leads to tumors. | Where the overload dosing does not lead to tumors | Transcription error |
| 184 | 15 | That's going to tell you any -- | That's not going to tell you any -- | Transcription error |
| 188 | 24-25 | There is many –there is several | There are many – there are several | Clarify testimony |

August 14, 2024

Amy K. Madl, Ph.D., DABT

Date