# Exhibit M

# Deposition Transcript

Case Number: 2:23-cv-01006-TLN-JDP
Date: August 7, 2024

In the matter of:

# THE PERSONAL CARE PRODUCTS COUNCIL v ROB BONTA

# Stephen M. Nowlis, PHD



Reported by:
ELIZABETH A. STELLA

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

1

```
                                                                    JOB NO. 1104192
1    IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF CALIFORNIA
2    - - - - - - - - - - - - - - - - x
     THE PERSONAL CARE PRODUCTS COUNCIL,
3
                    Plaintiff,
4
                            2:23-cv-01006-TLN-JDP
5
          -v-
6

7    ROB BONTA, IN HIS OFFICIAL CAPACITY AS
     ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
8
                    Defendant.
9    - - - - - - - - - - - - - - - - x
              DATE:  Wednesday, August 7, 2024
10            TIME:  8:30 a.m.

11
            Deposition of Plaintiff's expert,
12
     STEPHEN M. NOWLIS, PhD, taken by Defendant, in
13
     the above-entitled action, held via Zoom,
14
     pursuant to notice, taken before Elizabeth A.
15
     Stella, a Stenographer and Notary Public
16
     within and for the State of New York.
17

18

19

20

21

22

23

24

25
                         STENO.COM
                       (310) 573-8380
```

STEPHEN M. NOWLIS, PHD                                          JOB NO. 1104192
AUGUST 07, 2024

```
 1      R E M O T E   A P P E A R A N C E S:

 2              HOGAN LOVELLS US LLP
                    Attorneys for Plaintiff
 3                  Four Embarcadero Center
                    35th Floor
 4                  San Francisco, California 94111
                    (415)374-2300
 5
            BY:     TRENTON H. NORRIS, ESQ.
 6                  trent.norris@hoganlovells.com

 7


 8              ATTORNEY GENERAL OF CALIFORNIA
                    Attorneys for Defendant
 9                  300 South Spring Street
                    Suite 1702
10                  Los Angeles, California 90013
                    (213)269-6221
11
            BY:     MEGAN K. HEY, ESQ.
12                  Megan.Hey@doj.ca.gov

13

14

15

16

17

18

19

20

21

22

23

24

25
```

STEPHEN M. NOWLIS, PHD                                              JOB NO. 1104192
AUGUST 07, 2024

```
 1   survey.
 2         Q    Do you know whether Hispanic people
 3   took part in the survey?
 4         A    I do not ask them about their
 5   race.  I know that there are Hispanic people
 6   on the panel.
 7         Q    How do you know that there are
 8   Hispanic people on the panel?
 9         A    Because I've, over the years I have
10   had various discussions, and I realize it is
11   quite a large panel and they don't have
12   strange restrictions.  There's plenty of
13   Hispanic people living in California.  My wife
14   is Hispanic.  And if they somehow excluded an
15   entire group of Hispanics in California, that
16   would be very bizarre, but they certainly
17   don't do that.
18         Q    Did you ask -- you already said
19   that you did not ask for information about the
20   panelists' ethnicity.
21         A    When you say panelists, they
22   weren't asked on the survey what their
23   ethnicity was, that is correct.  However, I
24   know that these panels are quite large and I
25   know that they are racially diverse.
```

1      Q    How do you know that they are
2  racially diverse?
3      A    From discussions I had in the past
4  working with these panels, talking with AMS,
5  being confident that these panels are large
6  enough that they are representative of the
7  population in terms of age, gender, race, and
8  so on.
9      Q    Does the ProdegeMR or Paradigm
10 companies, do they guarantee that the panel is
11 racially diverse?
12     A    I don't know when they offer a
13 panel up, I don't know what kind of guarantees
14 they offer.
15     Q    Do these two companies have panels
16 for the entire country?
17     A    Yes.  California is just a small
18 part of it.
19     Q    Was your survey -- did you request
20 your survey to be California specific in any
21 other way other than the people attesting that
22 they reside in California?
23     A    No, because I didn't need to.
24     Q    Does your survey reflect the
25 consumer perceptions about the Proposition 65

STEPHEN M. NOWLIS, PHD                                              JOB NO. 1104192
AUGUST 07, 2024

```
 1   titanium dioxide warnings of Californians who
 2   are black?
 3          A    Yes.
 4          Q    How do you know?
 5          A    Because I know these panels are
 6   quite large and I know they don't exclude
 7   certain races.
 8          Q    What do you mean by certain races?
 9          A    Black, Hispanic, Native American,
10   Asian, white, that's what I mean by races.
11          Q    Does your survey reflect the
12   consumer reflections about the Proposition 65
13   titanium dioxide warnings of Californians who
14   have children?
15          A    Yes.
16          Q    How do you know?
17          A    Because, I can get even more
18   specific in this case because these, some of
19   the respondents were under 18, and in order
20   for them to be able to participate in these
21   surveys, they are minors, they had to have had
22   parental permission in advance, so I certainly
23   know that the teenagers had parents;
24   therefore, quote, unquote, children are
25   involved.  Do I know beyond that if somebody
```

1   themselves had children, I do, because I know
2   the panelists don't exclude people who have
3   children.
4          Q   Do you know factually speaking
5   that these panels include people with
6   children?
7          A   Absolutely.  I mean, that would
8   just be mind-boggling if a panelist company
9   was found out that they exclude anybody who
10  has a child.  It's just kind of -- it would
11  just be sort of outrageous if they were doing
12  that.  It's just, I don't know what the right
13  word is, that would be incredibly odd for them
14  to do that.  They try very hard to build a big
15  enough panel that has all kinds of people in
16  this world, and so for them to exclude people
17  who have children would be very strange.
18         Q   Does your survey reflect the
19  consumer perceptions about the Proposition 65
20  titanium dioxide warnings of Californians who
21  identified as transgendered?
22         A   Yes, because, again, as far as I
23  know -- well, no, I do know this -- the
24  panelists do not exclude transgender people.
25         Q   Did your survey exclude people who

```
 1   identify as transgender?
 2        A    No.
 3        Q    Well, isn't it true that
 4   respondents could only select male or female
 5   in the screening questions?
 6        A    That is true.
 7        Q    How then did your survey include
 8   people who identify as transgender?
 9        A    I'm not sure.  I don't know if they
10   would have potentially chosen male or female
11   anyway.  I don't know when they started
12   identifying as transgender.  I'm not really
13   sure.  One of our children is transgender, so
14   I'm trying to think of at what age did she
15   identify as transgender.  It wasn't from
16   birth.  There was a certain time period when
17   she started identifying that way, and would
18   she have picked male or female versus
19   transgender, I just simply don't know.  But
20   there was never any intention to exclude
21   transgender people.
22        Q    Page D-2, Exhibit D, as in dogma
23   includes screenshots, so, so I think that is
24   Screener Question 2, select one only, male or
25   female; yet, you believe that your survey
```

```
 1                C E R T I F I C A T E
 2   STATE OF NEW YORK )
 3                     ) ss.
 4   COUNTY OF NEW YORK)
 5            I, ELIZABETH A. STELLA, a Stenographic
 6   Reporter and Notary Public within and for the
 7   State of New York, do hereby certify:
 8            That STEPHEN M. NOWLIS, PhD, the witness
 9   whose deposition is hereinbefore set forth, was
10   duly sworn by me and that such deposition is a
11   true record of the testimony given by such
12   witness.
13            I further certify that I am not related
14   to any of the parties to this action by blood or
15   marriage and that I am in no way interested in the
16   outcome of this matter.
17            IN WITNESS WHEREOF, I have hereunto set
18   my hand this 7th day of August 2024.
19            [signature: Elizabeth A. Stella]
20            ELIZABETH A. STELLA, STENOGRAPHER
21            My Commission Expires:  May 31, 2028
22
23
24
25
```

STEPHEN M. NOWLIS, PHD  
AUGUST 07, 2024

JOB NO. 1104192

STEPHEN M. NOWLIS, PHD  
AUGUST 07, 2024  
JOB NO. 1104192

1  
2  Date: August 07, 2024  
3  Witness Name: Stephen M. Nowlis, PHD  
4  Case Caption: THE PERSONAL CARE PRODUCTS COUNCIL v ROB BONTA  
5  
6      DECLARATION UNDER PENALTY OF PERJURY  
7      I declare under penalty of perjury  
8  that I have read the entire transcript of  
9  my Deposition taken in the captioned matter  
10 or the same has been read to me, and  
11 the same is true and accurate, save and  
12 except for changes and/or corrections, if  
13 any, as indicated by me on the DEPOSITION  
14 ERRATA SHEET hereof, with the understanding  
15 that I offer these changes as if still under  
16 oath.  
17      Signed on the __16__ day of  
18 __August__, 20__24__.  
19  
20  _____  
21  Signature   Stephen M. Nowlis, PHD  
22  
23  
24  
25          PAGE 1 OF 3

STENO.COM  
(310) 573-8380