**HOGAN LOVELLS US LLP**
Trenton H. Norris (CA Bar No. 164781)
David M. Barnes (CA Bar No. 318547)
Four Embarcadero Center, 35th Floor
San Francisco, CA 94111-4024
Telephone:     415.374.2300
Facsimile:      415.374.2499
trent.norris@hoganlovells.com
david.barnes@hoganlovells.com

**DLA PIPER LLP**
Gregory G. Sperla (CA Bar No. 278062)
1415 L Street, Suite 270
Sacramento, CA 95814-3976
Telephone: 916.930.3200
Facsimile: 916.930.3201
greg.sperla@dlapiper.com

Attorneys for Plaintiff
THE PERSONAL CARE PRODUCTS COUNCIL

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PERSONAL CARE PRODUCTS COUNCIL,<br><br>    Plaintiff,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>    Defendant. | Case No. 2:23-CV-01006-TLN-JDP<br><br>**PLAINTIFF THE PERSONAL CARE PRODUCTS COUNCIL'S REPLY IN SUPPORT OF MOTION FOR CIVIL CONTEMPT AGAINST ENVIRONMENTAL HEALTH ADVOCATES, INC. ("EHA") OR, IN THE ALTERNATIVE, TO ORDER EHA TO CEASE ITS EFFORTS TO FILE A SUPPLEMENTAL COMPLAINT**<br><br>Judge: Hon. Troy L. Nunley<br><br>Date:  May 1, 2025<br>Time:  2:00 p.m. |

**Table of Contents**

Page

I. INTRODUCTION ................................................................................................................ 1

II. THIS COURT HAS AUTHORITY TO SPECIFY THE INJUNCTION'S SCOPE. .......... 2

III. EHA'S VIOLATION OF THE INJUNCTION IS NOT "HYPOTHETICAL" BECAUSE SEEKING LEAVE TO SUPPLEMENT A COMPLAINT IS EQUIVALENT TO PROSECUTING A NEW LAWSUIT. ............................................... 3

IV. IT IS IRRELEVANT THAT THE PRE-SUIT NOTICES UNDERLYING THE NEW CLAIMS PREDATE THE INJUNCTION BECAUSE NOTICES OF VIOLATION ARE NOT LAWSUITS. .............................................................................. 5

V. EHA DID NOT ACT IN GOOD FAITH IN VIOLATING THE INJUNCTION. ............. 6

VI. PCPC HAS STANDING TO SEEK COMPENSATORY SANCTIONS. ......................... 8

VII. THIS COURT HAS PERSONAL JURISDICTION OVER EHA. ..................................... 9

VIII. SERVICE OF THE MOTION WAS PROPER. ............................................................... 10

IX. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bayshore Ford Truck Sales, Inc.*,
    471 F.3d 1233 (11th Cir. 2006) .......................................................................................... 9

*Cal. Chamber of Com. v. Becerra*,
    529 F.Supp.3d 1099 (E.D. Cal. 2021) ...................................................................... 2, 5, 6, 7

*Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
    29 F.4th 468 (2022) .......................................................................................................... 4

*Cohn v. Cohn*,
    47 Cal. App. 2d 683 (1941) .............................................................................................. 7

*Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.*,
    700 F.2d 1279 (9th Cir. 1983) ................................................................................. 1, 2, 3, 7

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    321 F.3d 878 (9th Cir. 2003) ............................................................................................. 2

*Cty. Sec. Agency v. Ohio Dept. of Com.*,
    296 F.3d 477 (6th Cir. 2002) ............................................................................................. 9

*DiPirro v. Bondo Corp.*,
    153 Cal. App. 4th 150 ...................................................................................................... 6

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................... 4

*McCoy v. Fed. Exp. Corp.*,
    474 F. App'x 644 (9th Cir. 2012) ...................................................................................... 9

*NAACP v. Alabama*,
    357 U.S. 449 (1958) ......................................................................................................... 8

*New York v. Op. Rescue Nat'l*,
    80 F.3d 64 (2d Cir. 1996) ................................................................................................. 9

*NuScience Corp. v. Henkel*,
    No. CV 08-2661 ............................................................................................................ 10

*Regal Knitwear Co. v. NLRB*,
    324 U.S. 9 (1945) ............................................................................................................. 3

*S.E.C. v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) .......................................................................................... 9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ................................................................................................................ 5

*Thompson v. Miller*,
    112 Cal. App. 4th 327 (2007) ................................................................................................. 6

*Weiner v. Super. Ct.*,
    58 Cal. App. 3d 525 (1976) ................................................................................................ 1, 4

*Westlands Water Dist. Distrib. v. Nat. Res. Def. Council, Inc.*,
    276 F.Supp.2d 1046 (E.D. Cal. 2003) .................................................................................... 4

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ................................................................................................ 4

**Statutes**

<u>Federal Rules of Civil Procedure</u>

R. 5(b)(1) ..................................................................................................................................... 10

R. 5(b)(2)(E) ................................................................................................................................ 10

Rule 58 .......................................................................................................................................... 7

<u>Eastern District of California Local Rules</u>

L.R. 135(a) .................................................................................................................................. 10

L.R. 135(g)(1) ............................................................................................................................. 10

<u>California Code of Civil Procedure</u>

§ 22 ................................................................................................................................................ 5

I.  **INTRODUCTION**

The Ninth Circuit treats with skepticism "overly technical" attempts by litigants to evade complying with district courts' injunctions. *Commodity Futures Trading Comm'n v. Co Petro Mktg. Group, Inc.*, 700 F.2d 1279, 1285 (9th Cir. 1983).  Here, by using a purported "supplemental complaint" to prosecute new claims that could not be prosecuted in new lawsuits because of this Court's Preliminary Injunction ("Injunction"), EHA's legal position could only be described, most charitably, as "overly technical."  But EHA's argument is not just technical; it is incorrect as a matter of law.  EHA's deliberate attempt to skirt the Injunction warrants a contempt order.[1]

EHA's key contentions are that it has not violated the Injunction because no "new lawsuit" has been filed, Opp. at 9:18, and even if it had filed a new lawsuit, no harm has occurred because its supplemental complaint is "only proposed at this juncture."  Opp. at 9:24 (emphasis removed).  Established California caselaw provides otherwise, specifically that a plaintiff's prosecution of a lawsuit begins the moment it seeks leave to file an updated complaint.  *Weiner v. Super. Ct.*, 58 Cal. App. 3d 525, 531 (1976).  Were this not the case, a plaintiff who seeks leave to file an amended or supplemental complaint before the statute of limitations has run would be at risk of having its claims become time barred if the court does not grant leave before the deadline.  *Id.*  California caselaw prevents this outcome by specifying that the prosecution of new claims commences the moment leave is sought.  *Id.*  Such is the case here, where EHA has already sought leave to file its supplemental complaint, an action that by itself violates the plain terms of the Injunction.

The Court should accordingly make short order of EHA's standing, ripeness, and advisory opinion arguments.  The Court should similarly dispatch EHA's argument that its conduct was based on a "good faith" interpretation of the Injunction.  Rather than obtain clarity from this Court regarding the intent of the Injunction before seeking leave to prosecute its new claims, EHA filed its new claims in Alameda Superior, affirmatively represented that its conduct did not violate the Injunction, and decided to test whether this Court would enforce it.  The Ninth Circuit expressly

---

[1] As noted in PCPC's moving papers, ECF No. 48, at 7:12-24, this Motion will be mooted should the Court grant PCPC's Motion for Summary Judgment, ECF No. 43, which it took under submission seven months ago.  ECF No. 45.

1  disapproves of such "shoot first and ask questions later" tactics when compliance with injunctions
2  is concerned.  *Commodity Futures*, 700 F.2d at 1285 (noting that, "[a]s an officer of the court,
3  appellant was under a duty to inquire as to the exact terms of the district court's decision before"
4  engaging in the violative conduct).  This Court should treat similarly EHA's transparent attempt
5  to avoid complying with this Court's order—of which EHA has been aware since the time it was
6  entered, and which EHA, by its own admission, considered when it moved the state court.

7        Equally clear is the threat that tactics like those employed by EHA pose to the orderly
8  operation of the judiciary.  As this court recognized in a similar case, "[f]ederal courts have indeed
9  enjoined lawsuits preemptively in many circumstances," ranging from class action litigation to
10 filing restrictions on vexatious litigants.  *Cal. Chamber of Com. v. Becerra*, 529 F.Supp.3d 1099,
11 1115 (E.D. Cal. 2021) (citations omitted).  If parties ordered by district courts not to file new
12 lawsuits could simply continue to prosecute new claims via supplemental complaints or other
13 esoteric procedures in other cases, the judiciary's ability to enjoin new lawsuits would be
14 effectively eviscerated.  The "overly technical" legal gamesmanship employed by EHA—a clear
15 attempt to revive a mass of lawsuits that was dismissed due to EHA's failure to comply with simple
16 pre-suit notice requirements—flouts this Court's Injunction and warrants contempt.

17 **II.     THIS COURT HAS AUTHORITY TO SPECIFY THE INJUNCTION'S SCOPE.**

18       EHA repeatedly asserts that Alameda Superior, not this Court, is the proper judicial body
19 to decide whether EHA's conduct violates the Injunction that this Court issued.  *See, e.g.,* Opp. at
20 6:25–27 ("After all, if PCPC's legal interpretation is correct, the state court is more than capable
21 of interpreting this Court's preliminary injunction order."); *id.* 5:22–23 (accusing PCPC of
22 requesting "an impermissible advisory opinion to the state court regarding how to interpret the
23 injunction order").  In EHA's view, this Court's role in halting the violation of PCPC's members'
24 First Amendment rights ended the moment the Court uploaded its order to PACER, and subsequent
25 questions regarding the intent of this Court's injunction are for state courts to decide.

26       EHA's argument misses the mark because district courts, of course, have the inherent
27 authority to clarify and specify the scope of injunctions they issue.  *See, e.g.*, *Conn. Gen. Life Ins.*
28 *Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (district court has authority

to clarify or modify injunction); *Commodity Futures*, 700 F.2d at 1285 (noting that if there is a question about the terms of an injunction, attorney should attempt to clarify with court); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (district courts, in their "sound discretion," may "clarif[y]" their injunctions). Indeed, this Court, as the body who issued the injunction, is clearly best situated to provide instructions "regarding how to interpret the injunction order." *Contrast* Opp. at 13:13–14.

In fact, the Ninth Circuit has made clear that attorneys who are aware of an injunction should seek clarity from the Court before testing its boundaries. In *Commodity Futures*, appellant had received a check for $60,000 from a company accused of violating the Commodity Exchange Act. 700 F.2d at 1282–83. Appellant, who was aware that the Commodity Futures Trading Commission had sought a permanent injunction barring the transfer of the corporation's assets, deposited the check one day after the district court granted the injunction, but arguably before judgment was entered on the same day the check was deposited. *Id.* at 1285. The Ninth Circuit upheld the district court's finding that this conduct was inappropriate and violated the injunction, observing that "[a]s an officer of the court, appellant was under a duty to inquire as to the exact terms of the district court's decision before depositing the check." *Id.* Stated differently, an attorney who is aware that an injunction may apply should seek clarification from the issuing court instead of operating with the mindset that "it is better to ask for forgiveness than permission."

Here, while EHA is not a party to this action, it has been aware of this injunction since the moment it was entered. *See, e.g.,* ECF No. 48-4 (arguing to state court that preliminary injunction does not apply). Rather than proceeding to file a supplemental complaint in state court and telling that court that its conduct was appropriate, the proper course of action would have been for EHA to first seek clarity from this Court. Instead, EHA chose to take its chances by seeking leave to file a supplemental complaint, an action that, by itself, violated the preliminary injunction.

### III. EHA'S VIOLATION OF THE INJUNCTION IS NOT "HYPOTHETICAL" BECAUSE SEEKING LEAVE TO SUPPLEMENT A COMPLAINT IS EQUIVALENT TO PROSECUTING A NEW LAWSUIT.

EHA repeatedly contends that PCPC's motion raises standing issues and is a request for an advisory opinion because EHA's conduct relates to a "hypothetical" harm. *See, e.g.*, Opp. at 5:16–

17 ("[T]here are major threshold justiciability questions considering PCPC seeks relief pertaining to future, hypothetical events."); *id.* at 7:12–13 ("PCPC's motion relates to a hypothetical, rather than 'actual' legal dispute concerning EHA's proposed filing of a supplemental complaint that may or may not be filed in the future."). EHA even posits that, notwithstanding the litigation of this issue both here and in state court, it remains uncertain that "EHA would follow through with filing a supplemental complaint" if its motion is granted. *Id.* at 5:21–22. This is disingenuous.

The issue for EHA is that the violation for which PCPC seeks relief has already occurred because seeking leave to file a supplemental complaint is tantamount to the filing of a new complaint. In *Weiner v. Superior Court*, the California Court of Appeal addressed this issue in the analogous context of amended complaints. 58 Cal. App. 3d 525. There, plaintiff filed a notice of motion for leave to amend, along with a proposed amended complaint, before the statute of limitations had expired for the new claims, but the trial court did not grant leave to amend until after the statute of limitations had run. *Id.* at 527–28. Defendants contended that the new claims were time barred because plaintiff did not "file" them in time, but the Court of Appeal upheld the trial court's rejection of this argument, holding that the plaintiff's notice of motion was equivalent to the filing of a new complaint. *Id.* at 530 ("The filing as part of the notice of motion for leave to amend accomplishes the function of notice no less than the filing of a new complaint."). Stated differently, the prosecution of the new claims commenced the moment plaintiffs sought leave to prosecute this claim, as is the case with the new claims EHA presented to the court in *Lurella*.

Accordingly, because EHA has already prosecuted the new claims in *Lurella*, PCPC's members have suffered a concrete and actual injury, *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992), the challenged action is "final" for purposes of ripeness, *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010), and PCPC has presented an "actual" dispute for the Court's resolution that will not be the subject of an advisory opinion.[2] *Westlands Water Dist. Distrib. v. Nat. Res.*

---

[2] EHA's "hypothetical harm" argument is inconsistent with the First Amendment precedent under which the Injunction was issued. A plaintiff in a compelled speech challenge is entitled to relief where it shows that "its First Amendment rights have been infringed, or are threatened with infringement," and the government does not meet its burden of justifying this restriction on speech. *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (2022) (citation omitted). EHA cannot argue that

*Def. Council, Inc.*, 276 F.Supp.2d 1046, 1050 (E.D. Cal. 2003). EHA cannot have its cake—moving the state court for leave to file a supplemental complaint that it could immediately submit if its motion is granted—and eat it, too—contend that PCPC's motion is "hopelessly premature as it seeks relief pertaining to future, hypothetical events." *See* Opp. at 1:5–6.

### IV. IT IS IRRELEVANT THAT THE PRE-SUIT NOTICES UNDERLYING THE NEW CLAIMS PREDATE THE INJUNCTION BECAUSE NOTICES OF VIOLATION ARE NOT LAWSUITS.

EHA attempts to evade the word "prosecute" from the Court's Injunction by emphasizing that "EHA's investigation/prosecution – of each newly added cosmetic product and manufacturer defendant – began prior to issuance of the injunction." Opp. at 3:10–12. If, however, the dates of issuance of the pre-suit notices were relevant, then EHA would not have needed to try to prosecute its new claims via a supplemental complaint: it could have simply filed new lawsuits. EHA, of course, did not do so—nor did it make this argument to the Alameda Superior. Rather, it represented to that court it was not running afoul of this Court's Injunction because the *Lurella* complaint that it seeks to supplement predates the Injunction. ECF No. 48-4 at 4:25–5:2. The Court's Injunction, by its express terms, does not permit Proposition 65 bounty hunters to file new lawsuits based on "facts that [ ] predate the injunction," Opp. at 9:19–21, but instead bars the *filing and prosecution of new lawsuits*. ECF No. 40 at 19:6.

The California Code of Civil Procedure, as well as this Court's decision in *Cal. Chamber of Com. v. Becerra*, refute EHA's claim that it commenced "prosecution" of the new claims before the injunction. The California Code of Civil Procedure defines an "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Cal. Code Civ. Proc. § 22. California courts interpreting this definition recognize that an "action" is equivalent to a "lawsuit," one that is "brought in a court; a formal complaint

---

the harm to PCPC's members is premature because it is merely "threatened," nor can it contend that this Court cannot clarify the Injunction to address a threatened harm. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) ("[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for that threat.") (emphasis removed).

within the jurisdiction of a court of law[;] . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another . . . ." *Thompson v. Miller*, 112 Cal. App. 4th 327, 337 (2007) (citation omitted); *see also DiPirro v. Bondo Corp.*, 153 Cal. App. 4th 150, 185 (observing in Proposition 65 appeal that "the action in the present case is [plaintiff]'s claim brought under the Act."). EHA never filed "actions" on the bases of the new notices it now seeks to prosecute in *Lurella*; it itself acknowledges that it issued these notices simply to "cure" the pre-suit notice defects that led to the dismissal of more than 80 cases it had filed. ECF No. 48-4 at 3:2–3.

This Court highlighted the difference between pre-suit notices of violation and "lawsuits" in *Cal. Chamber of Com. v. Becerra*, where it similarly enjoined the prosecution of new lawsuits for the chemical acrylamide. There, Chief Judge Mueller rejected a different bounty hunter's argument that an injunction against new lawsuits would constitute an unlawful restraint, reasoning:

> If the Chamber of Commerce were requesting a preliminary injunction against pre-suit demand letters, settlement negotiations, or notices of violation, it would likely be requesting a prior restraint. These are "communications" under *Alexander* (citation omitted). But the Chamber is not asking for that relief . . . [A]t this stage, it is only asking for an injunction against future lawsuits while this case is pending. An injunction barring enforcement through litigation would admittedly dull the teeth of a demand letter or notice for the injunction's duration. Without a legal threat, a recipient may not negotiate or even respond. But the injunction the Chamber requests today would not forbid letters or demands, so it would not be a prior restraint on speech.

*Cal. Chamber*, 529 F.Supp.3d at 1114; *see also id.* at 1122 (observing that bounty hunters could still "send demand letters and notices of violation"). Accordingly, it follows that EHA did not commence the prosecution of the claims it now asserts in *Lurella* before the injunction was issued. No good faith or reasonable interpretation of the injunction supports this willful breach.

V. **EHA DID NOT ACT IN GOOD FAITH IN VIOLATING THE INJUNCTION.**

EHA chose to "ask for forgiveness rather than permission" by moving for leave to file a supplemental complaint that prosecutes claims for 16 notices of violation for which it tacitly has acknowledged that it could not file lawsuits. When PCPC learned of EHA's motion, undersigned counsel met and conferred with counsel for EHA in an attempt to avoid these contempt proceedings. *See* ECF No. 48-1 (Norris Decl.) ¶ 2. Undersigned counsel provided EHA with citations to caselaw establishing that supplemental complaints are tantamount to new lawsuits (*see,*

*e.g., Cohn v. Cohn*, 47 Cal. App. 2d 683, 689 (1941)) and informed EHA that it would not move for a contempt order if EHA withdrew its motion to supplement. Declaration of David M. Barnes ("Barnes Decl.") ¶ 2. Notwithstanding the clear applicability of this caselaw, EHA has contested and continues to contest that its "supplemental complaint facially complies with the four corners of the injunction" because it has not filed a "new lawsuit." Opp. at 1:15–16, 10:16.

As discussed above, EHA's interpretation of the law is incorrect because seeking leave to file a supplemental complaint is akin to commencing the prosecution of a new "action" or lawsuit. Beyond being on the wrong side of the law, however, EHA's conduct is troubling for other reasons. *Commodity Futures* is once again illustrative. There, as the Ninth Circuit observed, appellant's counsel, "as an officer of the court [ ] was under a duty to inquire as to the exact terms of the district court's decision" before taking an action counsel was aware could have violated the injunction at issue. *Commodity Futures,* 700 F.2d at 1285. Moreover, the Ninth Circuit observed that the purpose of the law at issue, Rule 58's procedure for ensuring when judgments have been entered for purposes of filing a notice of appeal, "would not be served by allowing appellant to succeed with such an overly technical argument" that a permanent injunction does not become effective until judgment is entered. *Id.* at 1284–85. By attempting to prosecute in state court new Proposition 65 claims that were not pending in court at the time this Court entered its preliminary injunction—on the grounds that it is not asserting these claims in a "new lawsuit" with a new case number—EHA attempts to capitalize on an "overly technical" reading of the Injunction. It is also irrelevant that other parties, in other cases, for chemicals not subject to injunctions, permitted EHA to submit supplemental complaints, ECF No. 49-2, Exs. C, D, and EHA's citation of two orders issued in March and April 2025 far from shows this practice is one in which EHA "routinely" engages. *See* Opp. at 4:6. To the contrary, it suggests that EHA had the Injunction and its argument at page 4 of its brief in mind when it suddenly resorted to this obscure procedural mechanism.

Crucially, from a policy perspective, as this Court observed in *Cal. Chamber*, "[f]ederal courts have indeed enjoined lawsuits preemptively in many circumstances, for example to quiet post-settlement donnybrooks, to resolve class actions, and multidistrict litigation, to consolidate claims in a single venue, and to sanction vexatious litigants or prevent frivolous lawsuits." 529

F.Supp.3d at 1115 (citations omitted).  If EHA's view were correct, a clever plaintiff who is bound by filing injunctions could skirt them by simply shoehorning claims that could not be prosecuted as new lawsuits into existing actions.  By refusing to withdraw the supplemental complaint in *Lurella*, EHA effectively asks this Court to endorse a position that would eviscerate the federal judiciary's ability to preemptively enjoin new lawsuits.  EHA could have requested clarification from this Court, but EHA elected to take its chances and force this Court to enforce its Injunction.

This troubling conduct on EHA's part illustrates the concerns PCPC highlighted when opposing EHA's proposed intervention, where PCPC discussed some of the tactics financially motivated bounty hunters like EHA have employed in proceedings in this District.  ECF No. 22 at 13:8–14:16.  Although this Court's entry of the Injunction prevents EHA and its counsel from filing and collecting penalties and attorney fees on 80-plus cases for which they likely had anticipated recovering millions of dollars,[3] EHA cannot resort to legal gamesmanship to try to bring these cases back from the dead.  No good faith explanation supports EHA's refusal to seek clarification on the meaning of the Injunction, its decision to file the motion for leave in state court, or its attempted justification that such conduct was acceptable.  Contempt is appropriate.

## VI. PCPC HAS STANDING TO SEEK COMPENSATORY SANCTIONS.

The Court should pay little attention to EHA's argument that "PCPC lacks standing to seek compensatory sanctions on behalf of third parties (its unidentified members)."  Opp. at 12:17–18.  PCPC brought this case on behalf of its members, many of whose First Amendment rights were violated by the enforcement of Proposition 65's warning requirement for Listed Titanium Dioxide.  Bedrock Supreme Court precedent provides that PCPC is not required to disclose the identities of its members.  *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958).  The present case is plainly distinguishable from those cited by EHA, for which plaintiffs could not seek sanctions on behalf

---

[3] The California Attorney General maintains an online database of Proposition 65 consent judgments and out-of-court settlements.  In 2024, EHA entered 12 consent judgments for a total of $485,000, equivalent to an average of $40,417 per settlement.  When multiplied by 84, the number of EHA lawsuits dismissed for EHA's failure to abide by pre-suit notice requirements, the dismissed lawsuits would have been worth $3,395,000 at EHA's average consent judgment value in 2024.  The Attorney General's website also reports that EHA collected north of $3 million in out-of-court settlements in 2024.  The vast majority of monetary payments assessed for both consent judgments and out-of-court settlements is paid to EHA in attorney fees.

of entities with whom they did not have a membership relation implicated by the First Amendment. *See, e.g.*, *New York v. Op. Rescue Nat'l*, 80 F.3d 64, 71–72 (2d Cir. 1996) (state of New York lacked standing to seek civil contempt sanctions on behalf of abortion clinics).

As a direct result of EHA's conduct, PCPC, and by extension its members who belong to PCPC and pay dues, incurred attorney fees in the amount of $32,990, as described below.

## VII. THIS COURT HAS PERSONAL JURISDICTION OVER EHA.

Many courts hold that an intervenor submits itself to the personal jurisdiction of a court by seeking to intervene in an action. *See, e.g., In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006); *Cty. Sec. Agency v. Ohio Dept. of Com.*, 296 F.3d 477 (6th Cir. 2002). The Ninth Circuit approached this issue differently in *S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007). That court held that "a party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties." *Id.* at 1149–50. There, intervention was not a basis for personal jurisdiction because the intervenor intervened solely to challenge personal jurisdiction. *Id.* ("[Intervenor] 'objected to in personam jurisdiction as effectively as [he] could have.'"). But that court did not preclude intervention from ever sufficing for personal jurisdiction, it simply did not see "why an intervenor should be considered to have *automatically* consented to the jurisdiction of the court." *Id.* at 1150 (emphasis added).

Here, EHA filed a motion seeking intervention without stating a challenge to personal jurisdiction. ECF No. 19. The motion was substantive and attacked the merits of the Complaint. *Id.* This, on its own, "invite[s] the court to resolve the dispute between the parties." *Ross*, 504 F.3d at 1149. And after PCPC opposed the motion to intervene, ECF No. 22, EHA filed a reply in support of its motion again without challenging personal jurisdiction. ECF No. 26. EHA did not object to this Court's personal jurisdiction until it had made several appearances, had repeatedly referred to itself as an "intervenor," and had argued intervention was appropriate. *See McCoy v. Fed. Exp. Corp.*, 474 F. App'x 644, 645 (9th Cir. 2012) (rejecting party's "argument that the district court did not obtain personal jurisdiction over him" because he "did not raise his personal jurisdiction objection until he had made numerous appearances before the court," had

"described himself as a 'lienholder and intervenor'" and had "agreed that interpleader was appropriate."). EHA has not only consented to but also actively sought this Court's jurisdiction.

## VIII. SERVICE OF THE MOTION WAS PROPER.

A nonparty may be held in civil contempt for violating an injunction or order "even though he has not been served with process under [FRCP] 4 or 4.1" because "service under [FRCP] 5 is sufficient." *NuScience Corp. v. Henkel*, No. CV 08-2661 R FFMX, 2015 WL 103378, at *2 fn.2 (C.D. Cal. Jan. 5, 2015). FRCP 5(b)(1) provides that service on a represented party must be made on their attorney absent a court order to the contrary, and FRCP 5(b)(2)(E) allows service on "a registered user by filing it with the court's electronic-filing system." Further, Local Rule 135(a) provides that a "Notice of Electronic Filing" is "automatically generated by CM/ECF at the time a document is filed with the system" and "constitute[s] automatic service," which in turn "constitutes service pursuant to [FRCP] 5(b)(2)(E)." Local Rule 135(g)(1) provides that "[r]egistration as a filing user constitutes [. . .] consent to receive service electronically pursuant to [FRCP] 5(b)(2)(E) [. . .] and waiver of the right to receive service by any other means." Service of PCPC's Motion complied with these rules for several reasons.

*First*, PCPC's counsel met and conferred with EHA's counsel before filing this Motion, giving EHA notice. ECF 48-1 ¶ 2. *Second*, two of EHA's attorneys remain listed on PACER's service list and receive docket updates, including when the Motion was filed, so they had actual notice of this Motion. Barnes Decl. ¶ 3 and Ex. A. *Third*, by registering with PACER, EHA's counsel waived service by any other means. Local Rule 135(g)(1). *Fourth*, all of EHA's attorneys were served with the Motion by e-mail on the same day of filing. Barnes Decl. ¶ 4. In an abundance of caution, they were also served personally on April 11. Id. ¶ 5 and Ex. B. *Fifth*, EHA did not allege—much less prove—any prejudice regarding the manner of service. On the contrary, it timely responded to the Motion. Therefore, since the Motion was served in compliance with Rule 5 and Local Rule 135(a), the Court should disregard EHA's objections.

## IX. CONCLUSION

For the foregoing reasons, the Court should grant PCPC's Motion and award PCPC its updated attorney fee request of $73,628.50. Barnes Decl. ¶¶ 4-9.

| | | |
|---|---|---|
| 1 | Dated: April 21, 2025 | Respectfully submitted, |
| 2 | | By: /s/ Trenton H. Norris |
| | | Trenton H. Norris (CA Bar No. 164781) |
| 3 | | HOGAN LOVELLS US LLP |
| | | Four Embarcadero Center, 35th Floor |
| 4 | | San Francisco, CA 94111 |
| | | Tel: (415) 374-2300 |
| 5 | | trent.norris@hoganlovells.com |
| 6 | | Attorneys for Plaintiff |
| | | Personal Care Products Council |